Donald E. J. Kilmer, Jr. (SBN: 179986)
Law Offices of Donald Kilmer, APC
1645 Willow Street, Suite 150
San Jose, California 95125
Phone: (408) 264-8489
Fax: (408) 264-8487
E-Mail: Don@DKLawOffice.com

Attorney for Defendant:
STEVEN VARGEM

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN LEE VARGEM,<br><br>Defendant. | CASE NO.: CR 10-00729 JW<br><br>NOTICE OF MOTION TO SUPPRESS EVIDENCE and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>U.S. CONSTITUTION, AMENDMENT IV<br><br>FEDERAL RULE CRIMINAL PROCEDURE 12 |

To this Honorable Court and to the United States Attorney for the Northern District of California, PLEASE TAKE NOTICE that Defendant STEVEN VARGEM will move the Court for an order suppressing certain evidence in the above-entitled action. This motion is based on this Notice of Motion, this Memorandum of Points and Authorities, any Declarations submitted in support of the Motion and the record in this matter.

Pursuant to a scheduling order by the Court, this Motion will be heard on April 25, 2011, at 1:30 p.m., in Courtroom 8, 4th Floor of San Jose District Courthouse located at 280 S. 1st Street, San Jose, CA 95113.

Respectfully Submitted on March 28, 2011,

/s/
Donald Kilmer
Attorney for Defendant VARGEM

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................3  
STATEMENT OF FACTS......................................................................................4  
ANALYSIS OF FACTS | LAW ............................................................................5  
ARGUMENT | CONCLUSION ............................................................................15  

# TABLE OF AUTHORITIES
### FEDERAL CASES:

*District of Columbia v. Heller*, 128 S.Ct. 2783 (2008).......................................9, 14, 16  
*Fuentes v. Shevin,* 407 U.S. 67 (1972)...........................................................................7  
*Franks v. Delaware*, 438 U.S. 154 (1978)....................................................................17  
*Giordenello v. U.S.*, 357 U.S. 357 (1958)....................................................................15  
*Haynes v. United States*, 390 U.S. 85 (1968)...............................................................10  
*Illinois v. Gates*, 462 U.S. 213 (1983) .............................................................13, 16, 18  
*Lynch v. Household Finance Corp.*, 405 U.S. 540 (1972) .............................................7  
*Mathias v. Bingley*, 906 F.2d 1047 (5th Cir. 1990)........................................................7  
*Massachusetts. v. Upton*, 466 U.S. 727 (1984)............................................................18  
*McDonald v. City of Chicago*, 177 L.Ed 2d 894 (2010)....................................9, 14, 16  
*Texas v. Brown*, 460 U.S. 730 (1983)..........................................................................16  
*United States v. Emerson,* 270 F.3d 203 (5th Cir. 2001)................................................9  
*United States v. Hove*, 848 F. 2d 137 (9th Cir. 1988)..................................................18  
*United State v. Leon,* 468 U.S. 897 (1984).........................................................2, 17, 18  
*United States v. Vasey*, 834 F.2d 782 (9th Cir. 1987)..................................................19  

### FEDERAL STATUTES

18 U.S.C. § 922 (o),  18 U.S.C. § 924(a)(2)....................................................................3  
26 U.S.C. § 5841, 26 U.S.C. § 5861(d), 26 U.S.C. § 5871..............................................3  

### STATE CASES

*Bryte v. City of La Mesa*, (1989) 207 C.A. 3d 687........................................................7  
*Kasler v. Lockyer*, (2000) 23 Cal.4th 472....................................................................15  
*People v. Beck*, (1994) 25 C.A. 4th 1095......................................................................7  

### STATE STATUTES

CA Family Code § 6380....................................................................................................9  
CA Family Code § 6383....................................................................................................9  
CA Family Code § 6389................................................................................................6, 11  
CA Penal Code § 1524(a)(9)...........................................................12, 13, 14, 17, 19  
CA Penal Code § 12021(g)..................................................................................6, 10, 11  
CA Penal Code § 12028.5..............................................................................12, 13, 14, 17, 19  
CA Penal Code § 13700...................................................................................................9

## INTRODUCTION

Defendant VARGEM is charged by indictment with illegal possession of a machine gun (18 U.S.C. §§ 922(o) and 924(a)(2)) and possession of an unregistered firearm (26 U.S.C. §§ 5841, 5861(d) and 5871). The firearm in question is a Heckler & Koch SP89, 9mm pistol with a serial number of 21-15341.

This particular firearm was seized from Defendant VARGEM's home where it was stored in a locked gun safe. The affidavit supporting the warrant states that VARGEM was subject to an emergency protective order (EPRO) that was issued by Santa Clara Superior Court Judge Jessica Frischling on June 19, 2010 and that as of June 24, 2010 the police could not verify that VARGEM had relinquished his guns pursuant to state law. The crux of this case is that the policies, procedures and forms that subjected VARGEM to a duty to "surrender" his firearms are so flawed that it should be impossible make out a finding of probable cause that would support a valid warrant under the Fourth Amendment to the United States Constitution.

VARGEM also contends that the EPRO itself was facially defective and more importantly, that the search warrant that relied upon the EPRO that was issued by the Santa Clara Superior Court Judge on or about June 24, 2010 was defective for the following reasons:

1. The warrant itself and the Probable Cause Statement by the affiant – San Jose Police Officer Duane Tuell – are defective on their face and do not establish probable cause under the Fourth Amendment.

2. The issuing judge was not acting as a "neutral and detached magistrate" in that he merely rubber-stamped the request of the police based on a conclusory *legislative* definition of probable cause.

3. The *United States v. Leon*, 468 U.S. 897 (1984) exceptions do not apply to this case.

1 **STATEMENT OF FACTS**

2   1.   Defendant VARGEM got into an altercation with this wife on or about June
3        19, 2010.  VARGEM left the house that day and for the next couple of days
4        called the authorities to inquire if there was a warrant out for his arrest.
5   2.   On June 22, 2010 VARGEM surrendered himself to the authorities. He was
6        booked and released on bond in connection with a charge of domestic
7        violence.
8   3.   On June 24, 2010, VARGEM received a phone call from San Jose Police
9        Officer Duane Tuell at approximately 1:29 p.m.  Officer Tuell identified
10       himself as a police officer and states that he informed VARGEM that since he
11       was subject to a restraining order, "he (VARGEM) had the responsibility to
12       surrender all firearms."
13  4.   During the conversation, VARGEM declined to agree to a consensual
14       search/seizure of his firearms and asked Officer Tuell if he could discuss the
15       matter with his lawyer before going any further with the conversation.
16  5.   Some time after the phone call, Officer Tuell directed a patrol unit to the
17       VARGEM residence with a description of the vehicles VARGEM had access
18       to.  When those units arrived, VARGEM's was loading "unknown items" into
19       one of his vehicles.  VARGEM was detained and eventually arrested for
20       violating the previously issued EPRO.
21  6.   While all of this was going on, Officer Tuell sought and obtained a Search
22       Warrant (# CSW39553) from Santa Clara Superior Court Judge Paul R.
23       Teilh.  The warrant was sworn out and executed by the Judge at 3:00 p.m. on
24       June 24, 2010. [A true and correct copy is attached as Exhibit A]
25  7.   By 4:00 p.m. the authorities, including Officer Tuell, had seized and
26       inventoried guns and gun parts from: (1) VARGEM's vehicle, (2) VARGEM's
27       master bedroom, (3) a safe in VARGEM's living room, and (4) a safe in
28       VARGEM's daughter's bedroom.

8.     The firearm subject to this motion to suppress was located in the living room safe of the VARGEM home. It is item #23 on the SEARCH WARRANT RETURN/RECEIPT.

## ANALYSIS OF FACTS | LAW

9.     The fatal errors in the search warrant/affidavit are both sins of commission, in that Officer Tuell makes at least one affirmatively false statement; and sins of omissions. Additionally, there are numerous statutory violations and failures of logic such that no neutral and detached magistrate, exercising due diligence in this matter, could have issued the warrant; furthermore no police officer would reasonably believe that the facts known at the time of the warrant would support probable cause to believe a crime had been committed or was about to be committed.

10.     Officer Tuell makes a false statement on page 54 [1] of the <u>Statement of Probable Cause</u> that is easily verified as false.

    a.     At line 13 Officer Tuell states: *"VARGEM was the listed restrained party on the EPRO. The EPRO required that VARGEM surrender all firearms in his possession."*

    b.     A blank copy of the Mandatory Judicial Council Form EPO-001 is attached as Exhibit B. [A certified copy of the actual order is being obtained and will be available for the hearing.]

    c.     This is a two page form usually intended to be printed as a single sheet with printing on the front and back of the page.

    d.     Nowhere on this form is there an order, statement, warning or any other information requiring the restrained party to "surrender all firearms in his possession."

---

[1] The last two digits of the Bates-Stamp number is used for reference.

    e.    So unless the EPRO allegedly served on VARGEM contains additional language (other than the particular data for this case) that is not part of the boilerplate language of EPO-001, Officer Tuell misled Judge Teilh when he used VARGEM's alleged failure to surrender firearms as the basis for probable cause to issue a warrant.

    f.    Furthermore, as an exercise in logic consider the following:

        i.    Even if we assume that an EPRO contains language commanding a restrained party to surrender all firearms upon service of the EPRO,

        ii.    And further assuming that the EPRO commands the restrained party to immediately vacate his home and stay 300 yards away from it,

        iii.    And further assuming the restrained party has firearms and they are stored in his home,

        iv.    Unless the EPRO is served on the retrained party at this home, the EPRO makes conflicting orders that are impossible to obey. (i.e., stay away from home vs. go get your guns from your home and turn them into to law enforcement and/or a gun dealer for sale.)

        v.    Defendant contends that the problem stems from the statutory language forbidding a restrained party from **"<u>owning</u>"** firearms during the pendency of a ex parte temporary restraining order. See: California Penal Code § 12021(g) and California Family Code § 6389 *et seq.*[2]

---

[2] Defendant is **not** suggesting that the Government does not have a legitimate public safety interest in forbidding *possession, receipt* and *acquisition* of a firearm while a domestic violence restraining order is pending. But if the restrained party's guns are in his home and he is restrained from entering the home, the public safety objective of separating him from his guns to insure the safety of the protected party has been achieved by the stay-away order. Furthermore,

|   |   |   |   |
|---|---|---|---|
| | vi. | | Guns are "property" governed by the due process clause. |
| | | (1) | *People v. Beck* (1994) 25 C.A. 4th 1095, 1102, *Bryte v. City of La Mesa* (1989) 207 C.A. 3d 687, 689. |
| | | (2) | There is no question but that firearms and weapons are "property" and, accordingly, that the due process clauses of the federal and state Constitutions apply to their seizure. A person's property may not be confiscated by the state "without some kind of notice and opportunity to be heard." See: *Fuentes v. Shevin* (1972) 407 U.S. 67, 79-80 |
| | | (3) | This is acknowledged regarding a seizure of property that included rifles. *Matthias v. Bingley* (5th Cir. 1990) 906 F.2d 1047, 1048, 1051. |
| | vii. | | Due process protects "the rights to acquire, enjoy, own and dispose of property." |
| | | (1) | See: *Lynch v. Household Finance Corp.* (1972) 405 U.S. 540, 544, 92 S.Ct. 1113, 31 L. Ed.2d 424, See also: *Fujii v. State of California* (1952) 38 C.2d 718, 728. |
| | | (2) | Even though a felon has no right to return of confiscated firearm, he does have the right to transfer it to others and/or have it sold to recover its value. "*Nevertheless it is the[y], not the state, who has the right to designate disposition of the title. The successor owner, if qualified, may obtain possession of the firearms.*" *Beck*, supra, 25 C.A. 4th 1095, 1106. |
| | viii. | | Nowhere in his <u>Statement of Probable Cause</u> does Officer Tuell allege that VARGEM is in current possession of a gun, or that |

---

in a community property state like California, the wife has just as much right to the guns as property, and for exercising self-defense, as her pre-EPRO husband.

1                  he in danger of receiving a gun, or has made an attempt to
2                  acquire a firearm.

3        ix.      To the extent that VARGEM's **ownership** of firearms (as evidenced by the registrations) under the circumstances of a validly issued EPRO formed the basis of probable cause to believe a crime had been committed, or was about to be committed – both the warrant the underlying statutes criminalizing **ownership** of firearms offend the Constitution's Second, Fourth, Fifth and Fourteenth Amendments.

       x.      This failure of logic (and policy) regarding conflicting orders and potential statutory flaws regarding the criminalization of **ownership** was pointed out to the Judicial Council by undersigned counsel in a memorandum to that body during the <u>Domestic Violence Practice and Procedure Task Force</u> conducted in 2007. Parts III and VII of the Memorandum specifically addresses this issue. [A true and correct copy of the memo is attached to Counsel's Declaration in Support of the Motion to Suppress.]

       xi.      The Task Force was unable to take a position on this issue as they judged it beyond the purview of their mission. [A true and correct copy of the Task Force Final Report is attached to Counsel's Declaration in Support of the Motion to Suppress. See page 156 of the document, page 85 of the comment section.]

11. Nowhere in the affidavit does Officer Tuell indicate whether a restraining order had been personally served on VARGEM. The closest he comes to making that connection is on page 55, at line 22 wherein he states: *"I verified with VARGEM that he had a restraining order against him."* Officer Tuell's "oral verification" is not proof of service of process.

1       a.    Actual notice that a person is subject to a restraining order and that
2             the restraining order prohibits the restrained party from possession of
3             firearms is essential to due process. And it is a necessary element of
4             any probable cause determination that the crime of prohibited
5             possession has or will occur. See generally: *United States v. Emerson*,
6             270 F.3d 203 (5th Cir. 2001).
7       b.    The EPRO that was issued and allegedly served on VARGEM is of the
8             type that is required to be entered in the California Law Enforcement
9             Telecommunication System (CLETS). That system permits the officer
10            making an electronic inquiry to determine, at a minimum, if: (i) an
11            EPRO is in effect, (ii) the identification of the restrained party and (iii)
12            if the EPRO has been personally served. See California Family Code §
13            6380 *et seq* and California Penal Code §§ 13700 *et seq*.
14       c.    The government will – of course – argue that verbal notice of the terms
15            of an order are sufficient under Family Code § 6383(e). And that this
16            verbal notice is sufficient for purposes Penal Code §§ 273.6 (violation of
17            a restraining order) and 12021(g)(prohibited possession of a gun).
18       d.    Assuming, without conceding, that this policy is not flatly
19            unconstitutional under a heightened standard of review for gun
20            regulations that infringe on fundamental rights [See: *District of*
21            *Columbia v. Heller*, 128 S. Ct. 2783 (2008) and *McDonald v. City of*
22            *Chicago*, 177 L. Ed. 2d 894 (2010)] – this means that the government is
23            stuck with the verbal notice they gave.
24       e.    Which means that VARGEM was under a ill-defined duty to surrender
25            his firearms pursuant to Officer Tuell's commandment. And
26            furthermore that VARGEM's failure to surrender his guns after being
27            commanded to do so by Tuell formed the basis for probable cause to
28            issue a warrant to seize the firearms. But that thinking is also flawed.

12. Compounding the flawed EPRO procedures, and by extension the facts supporting the warrant, is that VARGEM was never given notice that he could surrender his firearms under a grant of immunity. Nor did Officer Tuell offer a grant of immunity under Family Code § 6389(d).

   a. It is well settled law that a person cannot be compelled to take an affirmative act that would violate the right against self-incrimination. *Haynes v. United States*, 390 U.S. 85 (1968).

   b. At page 56, starting at line 2, Officer Tuell states that VARGEM wanted to talk to his lawyer about Tuell's request that VARGEM surrender his firearms to the police.

   c. The failure of the forms and procedures to address this immunity issue were also brought to the attention of the Judicial Council Task Force by the undersigned in the same memo. (See Part II). The Task Force again elected to punt. (See page 87 of the Guideline Comments, page 158 of the document.)

   d. The failure of the judge to consider immunity, when it is statutorily required (on its face and on the facts of this case) is constitutionally fatal to the warrant.

13. Even if we assume that the EPRO was properly served on VARGEM, the Mandatory Judicial Council Form: EMERGENCY PROTECTIVE ORDER (CLETS-EPO) – EPO-001 – is itself facially defective.

   a. California Penal Code § 12021(g)(3) requires that:

   > The Judicial Council shall provide notice on all protective orders that the respondent is prohibited from owning, possessing, purchasing, receiving, or attempting to purchase or receive a firearm while the protective order is in effect. The order shall also state that the firearm shall be relinquished to the local law enforcement agency for that jurisdiction or sold to a licensed gun dealer, and that proof of surrender or sale shall be filed within a specified time of receipt of the order. The order shall state the penalties for a violation of the prohibition. The order shall also state on its face the expiration date for relinquishment.

    b.    California Family Code § 6389(f) also states that:

> The restraining order requiring a person to relinquish a firearm pursuant to subdivision (c) shall state on its face that the respondent is prohibited from owning, possessing, purchasing, or receiving a firearm while the protective order is in effect and that the firearm shall be relinquished to the local law enforcement agency for that jurisdiction or sold to a licensed gun dealer, and that proof of surrender or sale shall be filed with the court within a specified period of receipt of the order. The order shall also state on its face the expiration date for relinquishment. Nothing in this section shall limit a respondent's right under existing law to petition the court at a later date for modification of the order.

    c.    Though not on its face, page 2 of 2 – or the back of the form – does contain a warning to the restrained party that persons subject to restraining orders are prohibited from "*owning, possessing, purchasing, receiving or attempting to purchase or receive a firearm (Penal Code Section 12021(g))*." [Exhibit B]

    d.    However, nowhere on the form is the restrained party instructed that relinquishment may be made to law enforcement agencies and/or that the guns may be sold to a licensed gun dealer.[3]

    e.    This statutory violation by the California Judicial Council to issue facially valid mandatory EPRO forms calls into question whether VARGEM was even subject to a valid restraining order.

14.    In addition to the statutorily deficient EPRO, the local authorities did not even take advantage of local forms intended to remedy this flaw.

    a.    Attached as Exhibit C is a copy of the Santa Clara County local form (FM-1047) giving a restrained party instructions on how, when and where to relinquish firearms.

    b.    Officer Tuell does not say in his <u>Statement of Probable Cause</u> whether VARGEM was served with FM-1047.

---

[3] Though not required by statute, the form also does not put the restrained party on notice that immunity is available for turning in contraband firearms. Family Code § 6389(d).

1  c. Again, undersigned counsel participated in the creation of this form and is familiar with its purpose and flaws. For example, while the form contains a wealth of information about how, when and where to relinquish firearms upon service of a restraining order, it still does not resolve the logical conundrum of how to comply with conflicting orders. (Stay away from your home vs. go to your home and get your guns.)

d. Logically, it must be a violation of substantive due process for the law to require contradictory duties of the restrained party, and then impose criminal sanctions for failing to perform one of those duties.

e. As noted above, the same court order that suspends VARGEM's Second Amendment rights while the EPRO is pending, prohibits him from entering or approaching within 300 yards of his house where the firearms are stored!

f. "*The law never requires impossibilities.*" is a maxim of jurisprudence in our civil law (CA Civil Code § 3531), surely a man facing potential criminal sanctions is entitled to the same common-sense protection from arbitrary and capricious penal statutes that form the basis for probable cause to issue a warrant.

15. One final mixed issue of fact/law goes to whether the magistrate was acting in a neutral and detached manner.

a. The face of the Search Warrant states that the property is being seized pursuant to California Penal Code § 12028.5.

b. The <u>Statement of Probable Cause</u> cites Penal Code § 1524(a)(9) as the legal basis for issuing the warrant.

c. By its own language § 1524(a)(9) relies on § 12028.5(b) – which states:

> [...][A] peace officer, as defined in Section 830.5, who is at the scene of a domestic violence incident involving a threat to human life or a physical assault, shall take temporary custody of any firearm or other deadly weapon in plain sight or discovered pursuant to a consensual or other lawful search as necessary for the protection of the peace officer or other persons present. [...]

d. It is undisputed that the VARGEM home was no longer "the scene of a domestic violence incident." The incident happened on June 19, 2010. Officer Tuell was seeking his warrant on the afternoon of June 24, 2010.

e. Nor did the guns need to be seized "for the protection of the peace officer or other persons present." By June 24, 2010 the EPRO that prohibited VARGEM's return to his house had already been issued, and according to Officer Tuell, VARGEM had notice of the EPRO.

f. Therefore Penal Code § 12028.5 cannot form the basis for a probable cause determination to issue a warrant.

g. Turning to additional language in Penal Code § 1524(a)(9) will not help the government. That code section only adds:

> A search warrant may be issued upon any of the following grounds, [...] When the property or things to be seized include a firearm or any other deadly weapon at the scene of, or at the premises occupied or under the control of the person arrested in connection with, a domestic violence incident involving a threat to human life or a physical assault as provided in subdivision (b) of Section 12028.5.

h. Officer Tuell's assertion that VARGEM had control of the firearms at this house, because he was the only person with the combination to the gun safes, does not pass the "common sense" test. The EPRO excluded VARGEM from the home. And as co-owner of the home, safes and guns, VARGEM's wife has just as much right to the guns and to secure the services of a locksmith to gain access to the guns as her husband would if he forgot the combination to the safes.

i. But this factual analysis misses an important Fourth Amendment concept. While a determination of probable cause made by a neutral and detached magistrate is afforded great deference by a reviewing court, [See generally, *Illinois v. Gates*, 462 U.S. 213 (1983)] there is nothing in Fourth Amendment law that requires the magistrate to give deference to the legislature when issuing a warrant.

    j.    Penal Code §§ 1524(a)(9) and 12028.5 are just conclusory statements by the legislature defining some inchoate probable cause to seize weapons at a "the scene of a domestic violence incident." What if the weapons actually belong to the victim? California can't have a public policy of seizing firearms from someone who may need them for self-defense. See: *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008) and *McDonald v. City of Chicago*, 177 L. Ed. 2d 894 (2010).

    k.    To the extent that Judge Teilh was relying on the conclusory – legislative – definitions of probable cause (i.e., seize guns at the scene of a domestic violence incident), he was not exercising his judicial role under the Fourth Amendment to determine for himself the facts necessary to show probable cause. See: *Giordenello v. U.S.*, 357 U.S. 480, 486. (1958).

16.    If the constitutionally flawed facts (i.e., VARGEM's ownership of guns located at a house he was ordered to stay away from.) are excised from the warrant there is no reasonable evidence to support probable cause to believe a crime had been committed or that a crime is about to be committed that involved firearms. To recap:

    a.    The guns seized pursuant to the warrant were not evidence of the original (alleged) assault. There were no facts set forth in the <u>Statement of Probable Cause</u> that VARGEM used a weapon during the altercation with this wife.

    b.    There were no facts set forth in the <u>Statement of Probable Cause</u> suggesting that VARGEM was attempting to *possess, purchase* or *receive* a firearm.[4]

---

[4] A firearm was recovered from VARGEM's vehicle upon its search and VARGEM's subsequent arrest for violating the EPRO. But that firearm is not the subject of this indictment, nor was its possession charged in the underlying state case. It is an open question at this time whether it would be subject to suppression under the same analysis set forth in this motion.

    c.    The relevant facts available to the magistrate were that VARGEM owned (i.e., had registered to him) firearms that were located in a house that he was forbidden to enter.

    d.    There were no facts in the <u>Statement of Probable Cause</u> alleging that VARGEM was currently in possession of guns that would be found in his vehicle, his place of business or his place of temporary residence.

    e.    VARGEM's wife had exclusive use and possession of the home and all its contents pursuant to the EPRO. And given that the wife had just as much claim to these valuable community property firearms located in the home – what is the rational basis for a finding of probable cause to issue a warrant to seize items in that home?[5] Probable cause is not such a free-floating concept. It describes a reasoned approach for discovering evidence of a <u>crime</u>. If the statutory scheme that defines a crime is so defective that it fails a due process constitutional test, then we end up with a warrant being issued on the basis of probable cause for a non-crime!

## ARGUMENT | CONCLUSION

### A. <u>The Warrant is Not Supported by Probable Cause</u>.

17. Since at least 1924, the State of California has engaged in law enforcement activities that have refused to acknowledge "(...) [T]hat a right to bear arms is one of the rights recognized in the California Constitution's declaration of rights, (...). No mention is made in it of a right to bear arms. (See *In re Rameriz* (1924) 193 Cal. 633, 651 [226 P. 914, 34 A.L.R. 51] ["The constitution of this state contains no provision on the subject."]) *Kasler v. Lockyer*, 23 Cal.4th 472, 481 (2000).

---

[5] Officer Tuell spoke with VARGEM's wife. The <u>Statement of Probable Cause</u> does not indicate that the wife wanted the guns removed from the home or that she consented to a search.

18. Presumably, California's cavalier attitude toward guns and gun owners is partly borne out the recognition that with no fundamental right at stake, any and all regulations impacting a "right to keep and bear arms" is subject to minimal scrutiny.

19. Two U.S. Supreme Court Cases: *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008) and *McDonald v. City of Chicago*, 177 L. Ed. 2d 894 (2010) have shifted that paradigm in a Fourth Amendment context. This Court must take into account the constitutional stature of firearms and of firearm owner's rights. Defendant VARGEM is **NOT** challenging the State's authority to suspend his constitutional "right to keep and bear arms" while a validly issued EPRO is pending. However due process demands that the suspension of those fundamental rights follow some sane protocol for achievable compliance.

   a. The EPRO issued in this case was issued ex parte.

   b. The EPRO issued in this case was statutorily flawed on its face.

   c. Officer Tuell commanded the restrained party to engage in affirmative acts that would be self-incriminating, without providing a process for seeking the statutorily authorized immunity. Indeed, no process exists for obtaining immunity under California Law or by local custom.

   d. The EPRO and Officer Tuell imposed mutually exclusive, simultaneous duties on VARGEM that are impossible to perform. (i.e., stay away from your home AND go to your home to gather your guns for surrender to law enforcement). And now the government wants to use the failure to perform one of these impossible tasks as justification to secure a warrant under the Fourth Amendment.

20. Probable Cause is a fluid concept. *Illinois v. Gates*, 462 U.S. 213, 232 (1983); and it is subject to a flexible, common-sense standards. *Texas v. Brown*, 460 U.S. 730, 742 (1983), but it cannot be infinitely elastic; and common sense

requires that the criminal statutes that support probable cause be of a kind that an ordinary human being can comply with.

21. Additionally, the warrant on its face only purports to be based on a set of statutes (Penal Code §§ 1524(a)(9) and 12028.5(b)) that only permits the taking of weapons in <u>plain sight</u> or subject to a <u>consensual search</u> for the purpose of <u>insuring the safety of officers and the victim while at the scene of a domestic violence incident</u>. No reasonable officer executing the warrant could believe he was "at the scene of an incident" that had occurred five (5) days ago.

B. <u>The U.S. v. Leon Exceptions do no Apply to the Facts of this Case</u>.

22. The "good faith" exceptions to a warrant that is later found to be defective <u>are not applicable</u> in this case. *U.S. v. Leon*, 468 U.S. 897 (1984).

    a. First, it is an open question whether without a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), it can be determined if Officer Tuell "dishonestly or recklessly" mislead the magistrate. But we do know that Judge Teilh was mislead when Tuell stated that the EPRO allegedly served on VARGEM contained instructions that he (VARGEM) surrender his firearms to law enforcement.

        i. It may also an open question whether Officer Tuell even knew the EPRO forms were facially defective, but the forms are obviously available to an officer of Tuell's experience and training. The form only needs to be read to determine that there is no order for the restrained party to relinquish firearms. This makes Tuell's false statement both careless and reckless.

        ii. These falsehoods are uncontroverted and to the extent that Judge Teilh relied on these false statements to make a finding of probable cause, the warrant is invalid.

    b. Under the second test of *Leon*, "the courts must insist that the magistrate purport to perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." *Leon*, at 914.

        i. As noted above, it would appear that Judge Teilh also failed to scrutinize the EPRO for the language Tuell said was there.

        ii. Furthermore, either Judge Teilh rubber-stamped the officer's and the legislatures conclusory arguments about probable cause regarding firearms at the scene of a domestic violence incident;

        iii. Or the Judge himself came to erroneous and patently unreasonable conclusions about the definitions of "in plain sight", "subject to a consensual search" and/or "scene of domestic violence incident."

        iv. The facts compel only one conclusion, there is no substantial evidence in the record supporting probable cause of a crime that would support issuance of a warrant. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

    c. The third test in *Leon* is that "reviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Id.* (citing *Illinois v. Gates*, 462 U.S. at 239). See also: *U.S. v. Hove,* 848 F.2d 137 (9th Cir. 1988).

        i. As noted above, California law cannot criminalize mere "**ownership**" of a firearm when someone is subject to an ex parte restraining order.

        ii. So unless there is substantial evidence on this record that Officer Tuell alleged that VARGEM was in (or attempting to gain) possession of (or otherwise acquire/purchase) a firearm at the time he applied for the warrant, there can be no facts

supporting probable cause to believe a <u>crime</u> had occurred or was imminent.

  iii. Without this objective evidence, the warrant is invalid.

 d. The final *Leon* test is whether "a warrant is so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923. In this case, the cumulative facial deficiencies of the documents supporting probable cause, take it outside of the *Leon* exceptions:

  i. The executing officers cannot reasonably rely upon the "fact" that they are the scene of domestic violence incident. The incident happened on June 19, 2010, they were executing a warrant on June 24, 2010. Cal. Penal Code § 12028.5.

  ii. Nor were they seizing property at the premises occupied by or under the control of the restrained party. Cal. Penal Code § 1524(a)(9).

23. As a final matter, the Government might argue that the officers cannot be blamed for the errors of the issuing judge and the facially illegal EPRO, and furthermore that the exclusionary rule is to deter police misconduct. However, that is not the endpoint of the *Leon* rule in the Ninth Circuit.

> "[T]he exclusionary rule should apply (i.e. the good faith exception should not apply) <u>if the exclusion of evidence would alter the behavior of individual law enforcement officers or the policies of their department</u>. *Leon* at 918. See also *United States v. Whiting*, 781 F.2d 692 (9th Cir. 1986) (finding *Leon* inapplicable to warrantless search). (Underline added)
>
>      *U.S. v. Vasey*, 834 F.2d 782 (9th Cir. 1987)

24. In this case the behavior of the individual law enforcement officers and their departments should be altered by a favorable ruling for VARGEM.

 a. The officers will more carefully scrutinize the EPROs that get issued that form the basis for probable cause in future cases.

    b.    Future officers will refrain from giving restrained parties legal advice about how, when and where to turn in firearms when they are subject to a restraining order.

    c.    Future officers will take into account immunity issues when someone is reluctant to turn in a firearm pursuant to an ex parte EPRO.

    d.    And future officers may be a little more sensitive to the community property aspects of any firearms that the protected party may be in possession of, either to leave them alone or to seek consent from the protected party to avoid the warrant issue altogether.

    e.    And finally, given Officer Tuell's standing in the domestic violence law enforcement community, maybe he can persuade local authorities to simultaneously serve local form FL-1047 along with EPROs and seek modification of the EPRO form itself so that it complies with California law.

25. This Court should find the warrant invalid. It should also find that none of the *Leon* exceptions apply. And finally, this Court should suppress the at trial the Heckler & Koch SP89, 9mm pistol with a serial number of 21-15341 that was seized pursuant to the invalid warrant.

Respectfully Submitted on March 28, 2011,


    /s/

Donald Kilmer, Attorney for Defendant VARGEM