# Exhibit B – Attachment to Atty Declaration

**JUDICIAL COUNCIL OF CALIFORNIA**
**ADMINISTRATIVE OFFICE OF THE COURTS**
455 Golden Gate Avenue
San Francisco, California 94102-3688

**Report Summary**

TO:            Members of the Judicial Council

FROM:          Domestic Violence Practice and Procedure Task Force
               Hon. Laurence Donald Kay (Ret.), Chair
               Bobbie Welling, Supervising Attorney, 415-865-7822,
                    bobbie.welling@jud.ca.gov

DATE:          January 16, 2008

SUBJECT:       Domestic Violence: Final Report of the Domestic Violence Practice and
               Procedure Task Force (Action Required)

Issue Statement
On September 6, 2005, Chief Justice Ronald M. George appointed the Domestic
Violence Practice and Procedure Task Force to recommend changes to improve court
practice and procedure in cases involving domestic violence allegations. The task force
was further instructed that its recommendations should address the fair, expeditious, and
accessible administration of justice for litigants in domestic violence cases.

More specifically, the task force charge included the review and implementation, as
appropriate, of court-related recommendations contained in the June 2005 report to the
California Attorney General from the Task Force on Local Criminal Justice Response to
Domestic Violence, *Keeping the Promise: Victim Safety and Batterer Accountability*.

The task force, in fulfilling its charge, developed and revised a series of 139 guidelines
and recommended practices over the last two years. These guidelines and practices relate
to court leadership, restraining orders under the Domestic Violence Prevention Act
(DVPA), firearms relinquishment, entry of restraining and protective orders in the
Domestic Violence Restraining Order System (DVROS), and criminal law procedures.

The proposals, viewed collectively, fit squarely within the Judicial Council's six strategic
goals of Access, Fairness, and Diversity; Independence and Accountability;
Modernization of Management and Administration; Quality of Justice and Service to the
Public; Education for Branchwide Professional Excellence; and Branchwide
Infrastructure for Service Excellence. They also are guided by the findings contained in

the Judicial Council's study on public trust and confidence in the courts, emphasizing the public's need for an opportunity to be heard and an understanding of court proceedings.

Task force recommendations and highlights from the proposed guidelines and practices are presented in the report to the Judicial Council. Background information, methodology, and the full text of the proposed guidelines and practices are set forth in the final report, *Guidelines and Recommended Practices for Improving the Administration of Justice in Domestic Violence Cases: Final Report of the Domestic Violence Practice and Procedure Task Force.*

Recommendation
The Domestic Violence Practice and Procedure Task Force recommends that the Judicial Council, effective February 22, 2008:

1. Receive and accept the final report from the Domestic Violence Practice and Procedure Task Force;

2. Request appointment of an implementation task force to ensure that the recommendations are referred to the appropriate advisory committees, Administrative Office of the Courts (AOC) division, or other entity for review and preparation of proposed legislation, rules, forms, or educational materials to be considered through the normal judicial branch processes;

3. Direct the implementation task force to work collaboratively with the Judicial Council's Governing Committee of the Center for Judicial Education and Research (CJER) to revise the rules relating to minimum educational requirements so that domestic violence issues are mandatory components of courses that meet the minimum requirements for new judges and judges new to a family law, juvenile law, criminal law, or probate assignment;

4. Direct the implementation task force to undertake a study to determine the additional resources that courts may require to ensure that implementation of the proposed guidelines and practices can be achieved; and

5. Request the implementation task force to report progress to the council on implementation of the recommendations by June 2009.

Rationale for Recommendation

The task force recommends that the Judicial Council receive and accept its report. Many of the proposed guidelines and practices will require specific implementation and oversight. Accordingly, the task force suggests that an implementation task force with budgetary, rule making, legislative, and judicial expertise, monitor implementation of these practices, refer proposals to relevant Judicial Council advisory committees or internal committees for consideration of needed legislation, rules, forms and educational materials. This task force would report progress to the Judicial Council, helping to ensure that the task force proposals become a regular part of practice and procedure in domestic violence cases. The implementation task force should also undertake a study to determine what specific additional resources may be required to implement specific proposals.

Alternative Actions Considered

The task force members determined that, in general, imposing new mandates and requirements without attendant resources would not necessarily improve the administration of justice in domestic violence cases. Rather, the task force believes that the requirements of existing law together with the best practices of those courts with sufficient resources can and have resulted in excellence in the administration of these critical cases. The task force goal is to make these requirements and practices, tailored when necessary to the needs of local jurisdictions, accessible and feasible throughout the state.

Comments From Interested Parties

After developing its draft guidelines and practices, the Domestic Violence Practice and Procedure Task Force engaged in a comprehensive process to obtain statewide comment and evaluation of its proposals. The task force:

- Distributed its draft report for statewide written comment in January 2007, with comments due on June 30, 2007;
- Conducted two public hearings, one in Los Angeles on March 14, 2007, and one in San Francisco on March 21, 2007;
- Conducted three regional court meetings in Santa Rosa (May 14–15, 2007), Burlingame (May 21–22, 2007), and Torrance (June 6–7, 2007); and
- Held interactive meetings with Judicial Council advisory committees.

The task force then engaged in a detailed examination and analysis of the comments received, the public hearing testimony, the regional meeting summaries, and the suggestions derived from other Judicial Council advisory committees. In reviewing this data, the task force focused on the following overarching principles:

- Promote the safety of all court participants;
- Ensure accountability of domestic violence perpetrators;
- Improve accessibility to the courts for the parties by maximizing convenience, minimizing barriers, and ensuring fairness for a diverse population;
- Promote the use of technology to enhance the administration of justice in cases involving domestic violence allegations; and
- Emphasize the need for court leadership and adequate resources.

Implementation Requirements and Costs

*Implementation task force*

Adjudication of domestic violence issues, as well as issuance of domestic violence restraining and protective orders, can occur in an array of substantive proceedings, including those relating to criminal law, family law, proceedings under the Domestic Violence Prevention Act, juvenile dependency, juvenile delinquency, and probate. For this reason, domestic violence overlaps and will involve several Judicial Council advisory committees including the Collaborative Justice Courts Advisory Committee, the Criminal Law Advisory Committee, the Family and Juvenile Law Advisory Committee, and the Probate and Mental Health Advisory Committee. Thus the need for a small coordinating task force going forward.

*Judicial education*

The task force wishes to underscore the importance of ensuring that every judicial officer who may potentially adjudicate these cases has sufficient education about their unique features. Therefore, it recommends that the implementation task force work with the CJER Governing Committee to mandate education as appropriate.

*Resources*

The task force submitted 139 recommendations. Some of them are based on existing legislation and case law. Others go further. Throughout its inquiry, the task force was impressed by the need for appropriate augmentation and allocation of staff resources in these critical cases. On many occasions, those who testified at the public hearings or participated at the regional court meetings spoke about the desire to implement best practices and the barriers presented to achieving goals by a lack of available resources. Accordingly, one of the duties of the implementation task force should be to undertake a staffing study of the resources needed to carry out the best practices recommended in this report.

**JUDICIAL COUNCIL OF CALIFORNIA**
**ADMINISTRATIVE OFFICE OF THE COURTS**
455 Golden Gate Avenue
San Francisco, California 94102-3688

**Report**

TO:          Members of the Judicial Council

FROM:        Domestic Violence Practice and Procedure Task Force
             Hon. Laurence Donald Kay (Ret.), Chair
             Bobbie Welling, Supervising Attorney, 415-865-7822,
                  bobbie.welling@jud.ca.gov

DATE:        January 16, 2008

SUBJECT:     Domestic Violence: Final Report of the Domestic Violence Practice and
             Procedure Task Force (Action Required)

Issue Statement

On September 6, 2005, Chief Justice Ronald M. George appointed the Domestic
Violence Practice and Procedure Task Force to recommend changes to improve court
practice and procedure in cases involving domestic violence allegations. The task force
was further instructed that its recommendations should address the fair, expeditious, and
accessible administration of justice for litigants in domestic violence cases.

More specifically, the task force charge included the review and implementation, as
appropriate, of court-related recommendations contained in the June 2005 report to the
California Attorney General from the Task Force on Local Criminal Justice Response to
Domestic Violence, *Keeping the Promise: Victim Safety and Batterer Accountability*.

The task force, in fulfilling its charge, developed and revised a series of 139 guidelines
and recommended practices over the last two years. These guidelines and practices relate
to court leadership, restraining orders under the Domestic Violence Prevention Act
(DVPA), firearms relinquishment, entry of restraining and protective orders in the
Domestic Violence Restraining Order System (DVROS), and criminal law procedures.

The proposals, viewed collectively, fit squarely within the Judicial Council's six strategic
goals of Access, Fairness, and Diversity; Independence and Accountability;
Modernization of Management and Administration; Quality of Justice and Service to the
Public; Education for Branchwide Professional Excellence; and Branchwide
Infrastructure for Service Excellence. They also are guided by the findings contained in

the Judicial Council's study on public trust and confidence in the courts, emphasizing the public's need for an opportunity to be heard and an understanding of court proceedings.

Task force recommendations and highlights from the proposed guidelines and practices are presented below. Background information, methodology, and the full text of the proposed guidelines and practices are set forth in the attached final report, *Guidelines and Recommended Practices for Improving the Administration of Justice in Domestic Violence Cases: Final Report of the Domestic Violence Practice and Procedure Task Force.* Many of the proposed guidelines and practices will require specific implementation and oversight. As a result, the task force recommends that a new task force be formed to focus on the implementation process, including appropriate referrals to existing Judicial Council advisory committees.

Recommendation

The Domestic Violence Practice and Procedure Task Force recommends that the Judicial Council, effective February 22, 2008:

1. Receive and accept the final report from the Domestic Violence Practice and Procedure Task Force;

2. Request appointment of an implementation task force to ensure that the recommendations are referred to the appropriate advisory committees, Administrative Office of the Courts (AOC) division, or other entity for review and preparation of proposed legislation, rules, forms, or educational materials to be considered through the normal judicial branch processes;

3. Direct the implementation task force to work collaboratively with the Judicial Council's Governing Committee of the Center for Judicial Education and Research (CJER) to revise the rules relating to minimum educational requirements so that domestic violence issues are mandatory components of courses that meet the minimum requirements for new judges and judges new to a family law, juvenile law, criminal law, or probate assignment;

4. Direct the implementation task force to undertake a study to determine the additional resources that courts may require to ensure that implementation of the proposed guidelines and practices can be achieved; and

5. Request the implementation task force to report progress to the council on implementation of the recommendations by June 2009.

<u>Rationale for Recommendation</u>
After developing draft guidelines and practices, the Domestic Violence Practice and
Procedure Task Force engaged in a comprehensive process to obtain statewide comment
and evaluation of its proposals.

The task force then engaged in a detailed examination and analysis of the comments
received, the public hearing testimony, the regional meeting summaries, and the
suggestions derived from other Judicial Council advisory committees. In reviewing this
data, the task force focused on the following overarching principles:

- Promote the safety of all court participants;
- Ensure accountability of domestic violence perpetrators;
- Improve accessibility to the courts for the parties by maximizing convenience,
  minimizing barriers, and ensuring fairness for a diverse population;
- Promote the use of technology to enhance the administration of justice in cases
  involving domestic violence allegations; and
- Emphasize the need for court leadership and adequate resources.

Recently, Judge Leonard P. Edwards (Ret.), an AOC judge-in-residence, expressed
concern that the task force recommendations did not directly address domestic violence
as it relates to child custody mediation, juvenile delinquency court, and juvenile
dependency court. The task force agrees that the issues raised by Judge Edwards are of
critical importance in the domestic violence arena but believes this work is beyond its
charge. The task force notes that the Family and Juvenile Law Advisory Committee is
working on projects that involve these issues.

A discussion of the rationale for the salient proposals, the areas of controversy, and the
task force's response to suggestions derived from the comment process follows.

*Court leadership*
Although the 2005 report to the Attorney General listed a series of problematic practices
relating to courts and other justice system agencies, that report dealt primarily with the
gap between requirements and performance and focused only briefly on the systemic
factors that might be contributing to these questionable practices and the strategies
needed to replace them with more effective procedures. The Judicial Council's task force
found that the absence of effective practices in some courts was primarily due to a lack of
communication and coordination within the various justice system agencies that affect
the administration of justice in domestic violence cases; the need for minimum judicial
education requirements relating to domestic violence; the need for ongoing evaluation
and assessment of practices in domestic violence cases; the need for both the appropriate
allocation and, potentially, the augmentation of resources; and the need for calendaring
mechanisms and court structures that maximize performance.

As a result, the task force proposed that presiding judges, in partnership with court executive officers, should shoulder the responsibility to ensure ongoing monitoring in domestic violence cases, allocate sufficient resources and advocate for increased resources, work with other justice system agencies and community organizations to improve the system of justice in domestic violence cases, and assign to domestic violence cases judicial officers who are required to complete courses that include components about domestic violence. These recommendations were supported by those who commented or testified and by the Trial Court Presiding Judges Advisory Committee. The advisory committee's executive committee, under the leadership of Presiding Judge Nancy Wieben Stock, Superior Court of Orange County, developed a policy statement in support of the task force recommendations and called on court leaders to ensure ongoing assessment of the administration of justice in domestic violence cases.[1]

*Domestic Violence Prevention Act (DVPA) restraining orders*
Recommendations for Domestic Violence Prevention Act (DVPA) orders cover a range of issues, including improving access for those seeking orders, the need to address safety concerns and make referrals or orders to appropriate services, and the importance of crafting safe, effective, and responsive orders. The report to the Attorney General focused on criminal domestic violence matters but in several areas also discussed civil restraining order procedures. The report discussed the importance of maximizing the use of emergency protective orders, which the task force addresses in proposal No. 8 of the restraining order recommendations. The report also recommended that family courts and law enforcement stop requiring domestic violence victims to carry restraining orders to the agency that will enter the orders into DVROS. A recent amendment to Family Code section 6380 now places that responsibility on the court or its designee. The following recommendations highlight several of the areas task force members discussed in detail and that members of the public also addressed in writing or through testimony.

Notice in Ex Parte Proceedings
The task force recommends that no blanket rule or policy regarding notice for every ex parte motion should be required. To some extent, court practice and procedure in this area appears to vary, with some courts always requiring notice and others determining whether notice is needed on a case-by-case basis. As the recommendation indicates, notifying a proposed restrained person about an applicant's request for a restraining order can trigger a significant risk of harm to the applicant, as abuse often increases at the time of separation. As provided in Family Code section 6300, the court should determine on a case-by-case basis whether notice of an application for a temporary restraining order should be required, taking into account the level of danger to the applicant. Additionally, applicants should be referred to appropriate domestic violence services so that they may receive assistance with safety planning or other needs as early in the process as possible.

---

[1] This policy is attached to the final task force report at page 45.

Right to Hearing

The task force discussed the practice in some courts of denying jurisdictionally appropriate requests for temporary orders and then not setting the matter for hearing and the risk this may pose to a petitioner or victim. A related concern arises when temporary orders are denied at the ex parte stage and the petitioner has concerns about the risks associated with providing notice for the upcoming hearing when there is no restraining order in place in the interim. As a result, the task force recommends the following: When a jurisdictionally adequate petition is presented at the ex parte stage, the court may not summarily deny it. The court must either (1) grant the temporary orders requested and set the matter for hearing or (2) defer ruling on the matter pending a noticed hearing, in which case the court should consider whether failure to make any of these orders would jeopardize the safety of the petitioner and children. When no temporary order is issued, some petitioners may be concerned that their safety will be compromised if the court sets the matter for a noticed hearing. Therefore, the court should develop a procedure for informing the petitioner that he or she may withdraw the petition, without prejudice to refiling it at another time.

California Law Enforcement Telecommunications System/Domestic Violence Restraining Order System

As required by Family Code section 6380, each court should ensure that all required domestic violence restraining orders as defined under Family Code sections 6203 and 6320 are entered into the Department of Justice Domestic Violence Restraining Order System (DVROS) via the California Law Enforcement Telecommunications System (CLETS)[2] within one business day and memorialized on mandatory Judicial Council forms. The statutory scheme contemplates that these orders should be entered into DVROS so that law enforcement agencies will have access to the orders, thus maximizing enforcement. Moreover, under federal law (see generally 18 U.S.C. § 922(g)(8)), any order that purports to prohibit specific threatening conduct carries with it mandatory firearms restrictions that should not be obviated by a state court or by stipulation of the parties.

Non-CLETS Domestic Violence Restraining Orders

The task force recommends that courts decline to approve or make domestic violence restraining orders that cannot be entered into DVROS or CLETS, commonly referred to as "non-CLETS" orders. Domestic violence is defined by statute in the civil context as abuse that has been perpetrated against an intimate partner, as defined by Family Code section 6211. Abuse is further defined as types of conduct described in Family Code sections 6203 and 6320. Restraining orders in the family law context that do not fit within these statutory definitions would not be affected by this proposal.

---

[2] CLETS comprises many databases, including but not limited to DVROS for restraining and protective orders, criminal histories, warrants, and registered firearms.

For example, in family law proceedings, parties sometimes request the court to approve agreements for domestic violence restraining orders that are not on Judicial Council forms and are not intended to be entered into CLETS. As a product of settlement negotiations, such proposed orders are sometimes offered by counsel for the parties. Sometimes, the proposed orders are styled as mutual restraining orders in that they purport to bilaterally restrain both parties in exactly the same ways. Family Code section 6305 prohibits mutual restraining orders absent several prerequisites outlined in that section, and the parties may not have complied with these requirements.

Domestic violence restraining orders presented to the court that are not intended to be entered into CLETS create a false sense of security for the protected person and a false expectation of enforcement by police. Since the orders are not in CLETS, law enforcement agencies do not usually enforce them. The only remedy courts can offer for a violation of such orders is contempt of court. This remedy is expensive, time-consuming, and technically difficult to prosecute, offering limited remedial response to the violation.

Since these orders may fail to recite firearms restrictions, even though these provisions may in fact be required by federal law,[3] the orders may leave protected persons exposed to potentially lethal circumstances and restrained persons unaware of the firearms provisions.

The statutory scheme underlying the DVPA does not appear to contemplate a relaxation of its mandatory provisions such as firearms relinquishment under Family Code section 6389, and thus, arguably, non-CLETS orders are not permitted under the existing statutory framework. Moreover, the Department of Justice indicates that when these orders are called to their attention, staff instructs law enforcement to enter the orders regardless of any text on the orders stating that they are  non-CLETS orders.

Although these orders are an outcome of efforts to carefully balance attempts at resolution with the need to have some kind of restraining order in place, the absence of the protections that CLETS orders offer places victims at too great a risk. This risk simply does not justify the advantages, if any, of non-CLETS orders. When parties do seek to stipulate to allowable restrictions on contact, the court should advise the parties of the limitations wherever possible and make reasonable efforts to ensure that such agreements are not entered into as a result of the duress of any party, especially when one or more of the parties is not represented by counsel.

---

[3] See generally 18 U.S.C. § 922(g)(8).

**Court Coordination**

For a given set of facts, several different courts in the same jurisdiction may be involved and may be asked to issue a variety of orders that may duplicate or conflict with each other. Most often, this occurs when a criminal court and a court handling child custody matters both have cases involving the same family. In recognition of this issue, the Judicial Council adopted rule 5.450 of the California Rules of Court, requiring, in part, that courts adopt by local rule a procedure for communication among courts issuing criminal court protective orders and courts issuing orders involving child custody and visitation regarding the existence and terms of these orders. Under rule 5.450, the local rule also must include a procedure for modifying a criminal protective order, in consultation with the court issuing a subsequent child custody and visitation order. The procedures should include methods for safeguarding confidential information and provide a mechanism for researching related cases, orders, court dates, and information regarding children as well as indicate how to best provide appropriate information to judicial officers. If needed, the court should reallocate existing funds or seek new funds to support this activity as a critical function of the court. The information should be integrated into the court's case management system. The task force recommends that courts proceed expeditiously with adoption of their local rules to comply with rule 5.450 and improve coordination among and between criminal courts and those handling child custody matters.

*Firearms relinquishment*

California and federal law prohibit persons subject to restraining orders, as well as defendants convicted of certain crimes, from possessing or purchasing firearms or ammunition.[4] However, the onus is on the restrained person to relinquish any firearms or ammunition to law enforcement or sell them to a licensed gun dealer.[5]

Ultimately, public safety is best served when law enforcement and the entire justice system take immediate action to remove firearms, whether registered or not, from the hands of a person who is statutorily barred from possessing them. The courts have a necessary and important role in achieving this goal, but because the court is not an investigative or enforcement agency, it must rely on justice system entities to provide the necessary information and to enforce compliance with firearms relinquishment orders. However, it is imperative that courts recognize that they have no discretion, except in extremely limited circumstances, to eliminate the mandatory firearms restrictions.[6]

---

[4] See, e.g., Fam. Code, § 6389; Pen. Code, § 136.2; and 18 U.S.C. §§ 922(g)(8)–(9).

[5] *Ibid.*

[6] The 2005 report to the Attorney General found that some judicial officers crossed off the mandatory firearms prohibitions on the Judicial Council forms. Case law clearly prohibits this practice (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275). The 2005 report to the Attorney General also cited as problematic a legal loophole in criminal domestic violence cases that the absence of a court-issued protective order under Penal Code section 136.2 deprives the court of any independent basis to issue a firearms

The task force conducted a chronological assessment of firearms relinquishment procedures in criminal and family law protective order cases. The task force concluded that the key elements of court policies and procedures intended to remove firearms and ammunition from persons who are legally prohibited from owning or possessing them are: local and statewide agency communication, comprehensive inquiry procedures, and compliance review. These elements are reflected throughout the firearms relinquishment proposals and are summarized below.

Local and Statewide Communication About Firearms Relinquishment Procedures
The task force recommends that local courts and the AOC convene local and statewide working groups to develop and monitor firearms relinquishment protocols and procedures. This proposal garnered universal public support. One commentator indicated that this was one of the most important proposals made by the task force. Although not controversial, the proposal will require ongoing leadership, both locally and within the AOC. The task force believes that communication among the various justice system entities is critical to improving public safety.

Inquiry About Ownership or Possession of Firearms
The task force recommends a group of proposals that focus on improving the information available to the court about a prohibited person's possession or ownership of firearms or ammunition in cases where a protective or restraining order was issued. The task force focused on four sources of information: (1) the Automated Firearms System (AFS), administered and maintained by the California Department of Justice (DOJ), (2) the protected person, (3) the restrained person, and (4) the prosecution in a criminal case. All of these sources present challenging issues, which the proposals address.

Most of the public comment on this group of proposals centered on the challenges of asking either the protected person or the restrained person about firearms. Although the protected person may appear to be one of the court's best sources of information about firearms, many victim advocates pointed out that the protected person might not disclose such information in open court due to fear or threats of retaliation by the restrained person. The task force notes that a protected person may choose to disclose the presence of firearms in a DVPA petition, sua sponte in a court hearing, or to the prosecution in a criminal case. The task force recommends that courts consider the evidence provided and make findings accordingly.

The task force and several commentators noted that even before the court issues a protective or restraining order, the defendant or respondent may have a felony conviction

---

relinquishment order. Recent legislation and a new Judicial Council form implementing that legislation have addressed the issue. (Assem. Bill 1288 (Stats. 2005, ch. 702); Pen. Code § 136.2(a)(7)(B); *Order to Surrender Firearms in Domestic Violence Case* (form CR-162).)

or may be otherwise legally prohibited from owning or possessing a firearm or ammunition. Therefore, asking at a hearing whether that person owns or possesses firearms could implicate his or her right against self-incrimination under the U.S. Constitution. The task force concluded that the best approach in a criminal case is for the court to ask the prosecution if there is reason to believe that the defendant owns or possesses a firearm, rather than directly questioning the defendant.

Compliance Review
A proposal for courts to schedule review hearings in all cases where a DVPA order or a criminal protective order has been issued was considered by the courts and the public as overly burdensome on courts' resources. The task force revised the proposals to recommend specific procedures in criminal and civil cases intended to ensure compliance with firearm prohibition and relinquishment orders in those cases where there is reason to believe that firearms have been involved or are accessible to the defendant.

In a criminal case where the court has issued a protective order under Penal Code section 136.2, the task force recommends that a court schedule a review hearing only when the court finds reason to believe that the defendant owns or possesses a firearm or ammunition. The court should order the defendant to personally appear at the review hearing unless a sale or relinquishment receipt, or the DOJ *Notice of No Longer In Possession* form (NLIP) or other DOJ-approved notice is filed with or provided to the court within the statutory time frame. If no receipt or DOJ-approved document is filed or presented to the court by the hearing date, the proposals provide guidance for appropriate court orders.

In a family law case where the court has issued a temporary restraining order under the DVPA, the first opportunity for the court to review compliance with the firearms relinquishment order is at the noticed hearing. On the date of the hearing, the restrained person already should have relinquished any firearms or ammunition and filed a receipt or DOJ-approved nonownership notice with the court. The task force recommends that the court determine whether the restrained person owns or possesses a firearm and—if the requisite receipt or notice was not filed by the time of the noticed hearing, or if the court nevertheless finds reason to believe that the restrained person owns or possesses firearms or ammunition—notify law enforcement for appropriate action.

*Access to and entry of orders into Domestic Violence Restraining Order System (DVROS)*
By law, courts are required to ensure that restraining and protective orders are entered into DVROS within one business day (Fam. Code, § 6380; Pen. Code, § 136.2). Courts may enter those orders directly with approval from the DOJ or may designate local law enforcement as the entering agency.

The 2005 report to the Attorney General cited as a problematic practice the apparent failure of some courts to ensure that all restraining and protective orders are entered into DVROS accurately and in a timely fashion. Moreover, when timely and accurate entry into DVROS does not occur, the enforceability of these critical orders can be compromised.

The task force guidelines and practices relating to the improvement of the domestic violence restraining and protective order system are designed to respond to the concerns expressed in the 2005 report. The ideas underlying the proposals are partially the result of meetings with former Attorney General Bill Lockyer and members of his staff and discussions conducted at a court forum sponsored by the task force. The court forum reflected an understanding of the complexity of the restraining and protective order system and the need to engage justice system entities in a collaborative process to improve the system. The task force proposals in this section reflect the range and diversity of courts and their various approaches to compliance with this statutory duty. The task force recognized that courts may meet these mandates in a variety of ways.

Highlights of several areas discussed in detail and an update on current AOC projects relating to improving the restraining and protective orders system follow.

Restraining Order Registry
The AOC has initiated efforts to develop the California Courts Protective Order Registry (CCPOR), a judicial branch statewide centralized system for viewing the full text of restraining and protective orders and related information. CCPOR will be an effective tool for the judicial branch to reduce conflicting orders and for law enforcement to quickly review and access the orders in the field. When fully implemented, it will provide for timely and accurate entry into DVROS as well. To determine how best to create a statewide registry of restraining and protective orders, an examination of local court methods for entering orders into DVROS and local court registries was conducted. Through written surveys, conference calls, and site visits, information was gathered on local restraining and protective order practices, types of restraining and protective order registries currently in use, and technical requirements. The AOC expects to develop a business model and a deployment plan within the next six months, with full deployment of the pilot courts in late 2009.

Access to CLETS

From the early stages of the task force, members expressed that obtaining access to CLETS from the DOJ can be a long and arduous process. Currently only seven courts are approved by the DOJ to enter restraining and protective orders directly into DVROS. Most courts transmit their orders to one or more local law enforcement agencies for entry by the agencies. For this system to be effective, the courts and law enforcement must work collaboratively to establish procedures and protocols to ensure that the orders are timely and accurately entered as mandated by law. The task force learned that in some courts there is a delay between the date the orders are issued and the date of entry into DVROS. As a result, some courts have assumed the responsibility to enter orders directly in order to improve the timeliness of the system.

To assist in streamlining this process, the AOC applied for and the DOJ approved direct access to CLETS via the California Courts Technology Center and allowed courts the same access through the AOC's portal. However, individual courts are still required to submit an application in order to use the AOC portal.  On the plus side, the complexity of the application process has been reduced because courts can now obtain technical assistance from the AOC.

The task force recommends that all courts have access to DVROS and other databases within CLETS, as deemed necessary. Other databases include, for example, the Automated Firearms System, the firearms registry that lists gun ownership. Through CLETS access, courts will be able to perform data searches and thus support compliance with rule 5.450, the provision that requires a communication protocol among courts issuing criminal protective orders and those issuing orders involving child custody and visitation.

Data Collection

The collection of relevant restraining order data and statistics is important for the judicial branch to support the development of domestic violence policy. In the 2005 report to the Attorney General, restraining and protective orders entered into DVROS were compared in some instances to population data because the number of orders granted by the courts was not readily available. The AOC should provide courts with guidelines to improve collection of this crucial information.

Integration With CCMS

The task force emphasizes that CCPOR is an initial approach and only a segment of the seamless process that ultimately will be incorporated into the statewide California Court Case Management System (CCMS). The task force stresses the extreme importance of including relevant domestic violence information in the CCMS data elements.

*Domestic Violence Criminal Procedure*

The recommended series of guidelines and practices relating to criminal procedure in domestic violence cases essentially tracks the chronology of a criminal proceeding. The recommendations memorialize both statutory requirements and effective procedures. The 2005 report to the Attorney General asserted that criminal protective orders, whether issued pretrial to protect the complaining witness or at the time of disposition as a term of probation, were being entered into DVROS in disproportionately small numbers, that prosecutors were agreeing and judges approving plea bargains that did not uniformly conform to the statutorily mandated terms and conditions of probation,[7] and that systems designed to monitor and enforce probationary terms were lax and inconsistent.

Criminal Protective Orders

The task force learned that prosecutors and defense attorneys were not always present at the time a criminal protective order was issued pretrial. As a result, the order might not necessarily be memorialized on mandatory Judicial Council forms,[8] and thus, the order would not be included in those slated for entry into DVROS. This also could occur at disposition when a criminal protective order is issued as a term of probation. The task force recommends, therefore, that counsel be present at arraignment and whenever a plea is entered to ensure that the proper forms are prepared and entered into DVROS within one business day as required.[9]

Mandatory Terms and Conditions of Probation

In testimony presented to the task force, primarily at the regional court meetings, judicial officers questioned the wisdom of the one size fits all structure of Penal Code section 1203.097 that sets forth the mandatory terms and conditions of probation. Of particular concern to judicial officers was the imposition of attendance at a mandatory 52-week batterer intervention program made more problematic by the asserted lack of research about the efficacy of these programs as a remedial tool. The statute triggers the mandatory terms and conditions not just when a domestic violence offense is the basis for the criminal conviction, but whenever the abusive conduct constituting that offense occurs and the requisite relationship is present. Penal Code section 1203.097(a) provides that a series of mandatory terms and conditions of probation apply "for a crime in which the victim is a person defined in section 6211 of the Family Code." The task force unanimously agreed that under these circumstances, the law clearly requires that the mandatory terms and conditions be ordered. Sometimes, the task force learned, a prosecutor and defense counsel may agree to a plea to a lesser included offense in order to avoid the mandatory terms of probation. The task force believes this to be contrary to the clear intent of the legislation. The task force does agree, however, that there are instances where the rigidity of the statutory scheme may create injustices or be difficult to

---

[7] Pen. Code, § 1203.097.
[8] See Judicial Council form *Criminal Protective Order—Domestic Violence* (form CR-160).
[9] Fam. Code, § 6380(a).

implement in busy misdemeanor calendars. For example, a person may be unsuitable for the batterer intervention programs available in the jurisdiction. The consequences of a conviction for a domestic violence offense with its attendant firearms restrictions and the effect of those restrictions on employment may have the unintended consequence of thrusting a family into poverty.

We note, however, that the AOC Office of Court Research was awarded a research grant from the National Institute of Justice to study batterer intervention systems in California in five counties: Los Angeles, Riverside, San Joaquin, Santa Clara, and Solano. The outcome of the study is anticipated in summer 2008.

Compliance With Mandatory Terms
In addressing concerns that domestic violence probationers comply with the mandatory terms and conditions of probation imposed, the task force emphasized two aspects of its recommended guidelines and practices. First, the task force emphasized the need to conduct a prompt review hearing at which the defendant is required to appear in order to determine compliance with the probationary terms. The review hearing would be followed by periodic progress reports to further monitor compliance. While cognizant that neither the task force nor the Judicial Council has authority over the duties and responsibilities of the probation department, the task force members observed that the entire statutory scheme articulated in Penal Code section 1203.097 relies on the existence of a fully funded probation department with sufficient resources to carry out the functions outlined in the statute. Testimony presented to the task force, and summarized as part of the report to the Attorney General, suggests that this is not universally true in each jurisdiction. As a result, the task force recommends that courts advocate and support efforts to increase resources available to probation and that all necessary services be performed.

Alternative Actions Considered
The task force members determined that, in general, imposing new mandates and requirements without attendant resources would not necessarily improve the administration of justice in domestic violence cases. Rather, the task force believes that the requirements of existing law together with the best practices of those courts with sufficient resources can and have resulted in excellence in the administration of these critical cases. The task force goal is to make these requirements and practices, tailored when necessary to the needs of local jurisdictions, accessible and feasible throughout the state.

Comments From Interested Parties
The task force sought comment on its draft guidelines and recommended practices from a wide array of persons, including judges, commissioners, and referees, practitioners, probation officers, advocates, service providers, and members of the public. The

invitation to comment was posted on the judicial branch Web site, and the comment period was from January to June 2007. Specifically, the task force:

- Distributed its draft report for statewide written comment in January 2007, with comments due on June 30, 2007;
- Conducted two public hearings, one in Los Angeles on March 14, 2007, and one in San Francisco on March 21, 2007;
- Conducted three regional court meetings in Santa Rosa (May 14–15, 2007), Burlingame (May 21–22, 2007), and Torrance (June 6–7, 2007); and
- Held interactive meetings with Judicial Council advisory committees.

The task force received more than 200 comments, all of which were reviewed and analyzed and which, in many cases, led to revisions of the draft guidelines and recommendations. A chart summarizing the comments received follows this report at page 53.

Implementation Requirements and Costs
The following resources will be required to accomplish the task force's recommendations.

*Implementation task force*
Many of the proposed guidelines and practices will require specific implementation and oversight.  Accordingly, the task force suggests that an implementation task force with budgetary, rule making, legislative, and judicial expertise, monitor implementation of these practices, refer proposals to relevant Judicial Council advisory committees or internal committees for consideration of  needed legislation, rules, forms and educational materials.  This task force would report progress to the Judicial Council, helping to ensure that the task force proposals become a regular part of practice and procedure in domestic violence cases. The implementation task force should also undertake a study to determine what specific additional resources may be required to implement specific proposals.

*Judicial education*
The task force wishes to underscore the importance of ensuring that every judicial officer who may potentially adjudicate these cases has sufficient education about their unique features and therefore recommends that the implementation task force work with the CJER Governing Committee to mandate education as appropriate.

*Resources*
The task force submitted 139 recommendations.  Some of them are based on existing legislation and case law.  Others go further.  Throughout its inquiry, the task force was impressed by the need for appropriate augmentation and allocation of staff resources in

these critical cases. On many occasions, those who testified at the public hearings or who participated at the regional court meetings spoke about the desire to implement best practices and the barriers presented to achieving goals by a lack of available resources. Accordingly, one of the duties of the implementation task force should be to undertake a staffing study of the resources needed to carry out the best practices recommended in this report.

Attachment



# Recommended Guidelines and Practices for Improving the Administration of Justice in Domestic Violence Cases

FINAL REPORT OF THE DOMESTIC VIOLENCE PRACTICE AND PROCEDURE TASK FORCE

JANUARY 2008



ADMINISTRATIVE OFFICE OF THE COURTS

CENTER FOR FAMILIES, CHILDREN & THE COURTS

Judicial Council of California
Domestic Violence Practice and Procedure Task Force
Administrative Office of the Courts
455 Golden Gate Avenue
San Francisco, CA 94102-3688
*www.courtinfo.ca.gov*

Copyright © 2008 by the Judicial Council of California/Administrative Office of the
Courts. All rights reserved.

Except as permitted under the Copyright Act of 1976, no part of this publication may be
reproduced in any form or by any means, electronic, online, or mechanical, including the
use of information storage and retrieval systems, without permission in writing from the
copyright owner. Permission is hereby granted to nonprofit institutions to reproduce and
distribute this publication for educational purposes if the copies credit the copyright
holder.

# Judicial Council of California
# Administrative Office of the Courts

Hon. Ronald M. George
Chief Justice of California and
Chair of the Judicial Council

Mr. William C. Vickrey
Administrative Director of the Courts

Mr. Ronald G. Overholt
Chief Deputy Director

Ms. Diane Nunn
Director, Center for Families, Children & the Courts

## Domestic Violence Practice and Procedure Task Force

**Hon. Laurence Donald Kay (Ret.), Chair**
Presiding Justice of the
Court of Appeal
First Appellate District, Division Four

**Hon. Deborah B. Andrews**
Judge of the Superior Court of California,
  County of Los Angeles

**Hon. Jerilyn L. Borack**
Judge of the Superior Court of California,
  County of Sacramento

**Hon. Jeffrey S. Bostwick**
Judge of the Superior Court of California,
  County of San Diego

**Hon. Tani Gorre Cantil-Sakauye**
Associate Justice of the Court of Appeal,
  Third Appellate District

**Hon. Sharon A. Chatman**
Judge of the Superior Court of California,
  County of Santa Clara

**Hon. Katherine A. Feinstein**
Judge of the Superior Court of California,
  County of San Francisco

**Hon. Susan P. Finlay (Ret.)**
Judge of the Superior Court of California,
  County of San Diego

**Hon. Mary Ann Grilli**
Judge of the Superior Court of California,
  County of Santa Clara

**Ms. Tressa S. Kentner**
Executive Officer
Superior Court of California, County of
   San Bernardino

**Hon. Quentin L. Kopp (Ret.)**
Judge of the Superior Court of California,
   County of San Mateo

**Hon. Jean Pfeiffer Leonard**
Judge of the Superior Court of California,
   County of Riverside

**Hon. William A. MacLaughlin**
Judge of the Superior Court of California,
   County of Los Angeles

**Hon. George A. Miram**
Judge of the Superior Court of California,
   County of San Mateo

**Mr. James B. Perry**
Executive Officer
Superior Court of California, County of
   Yolo

**Hon. Rebecca S. Riley**
Judge of the Superior Court of California,
   County of Ventura

**Mr. Alan Slater**
Chief Executive Officer
Superior Court of California, County of
   Orange

**Hon. Dean Stout**
Presiding Judge of the Superior Court of
   California, County of Inyo

<u>**JUDICIAL COUNCIL LIAISONS**</u>

**Hon. Ronald E. Albers**
Commissioner of the Superior Court of
   California, County of San Francisco

**Hon. Thomas M. Maddock**
Judge of the Superior Court of California,
   County of Contra Costa

**Domestic Violence Practice and Procedure Task Force Staff**

**Ms. Bobbie Welling, Lead Staff**
Supervising Attorney
Center for Families, Children & the Courts
Administrative Office of the Courts

**Ms. Carly Lindberg**
Administrative Coordinator
Center for Families, Children & the Courts
Administrative Office of the Courts

**Ms. Tamara Abrams**
Senior Attorney
Center for Families, Children & the Courts
Administrative Office of the Courts

**Ms. Julia Weber**
Supervising Attorney
Center for Families, Children & the Courts
Administrative Office of the Courts

**Ms. Penny Davis**
Senior Court Services Analyst
Center for Families, Children & the Courts
Administrative Office of the Courts

**Mr. Joshua Weinstein**
Former Senior Attorney
Office of the General Counsel
Administrative Office of the Courts

# CONTENTS

**Introduction to Recommended Guidelines and Practices** ...................... **8**

**Court Leadership** .............................................................................. **10**

**Domestic Violence Prevention Act Restraining Orders** ...................... **13**

    **Assistance for Parties (General)** .................................................13

    **Obtaining and Perfecting Orders** ................................................15

    **Hearings and Services** ...............................................................17

    **Court and Case Management** .....................................................18

**Firearms Relinquishment** ................................................................ **21**

    **Communication and Education** ....................................................22

    **Legislation and/or Rules of Court** ...............................................22

    **Procedures** ...............................................................................23

        **Emergency protective orders** .............................................**23**

        **Criminal court protective orders** ........................................**23**

        **Civil court restraining orders** ............................................**24**

        **Forms** ..............................................................................**25**

**Access to and Entry of Orders Into the Domestic Violence**

    **Restraining Order System (DVROS)/California Law Enforcement**

    **Telecommunications System (CLETS)** ............................................ **27**

    **Immediate Proposals** ..................................................................28

    **Interim Proposals** .......................................................................29

    **Long-Term Proposals** ..................................................................30

**Domestic Violence Criminal Procedure** ............................................ **31**

    **Administration Procedures** ..........................................................32

    **Pretrial** ......................................................................................32

        **Bail release considerations** ...............................................**32**

        **Hearing procedures** ..........................................................**32**

        **Arraignment** ....................................................................**33**

        **Setting bail** .....................................................................**34**

        **Release on own recognizance** ...........................................**35**

        **Issuing CPOs pretrial** ......................................................**35**

    **Trial** ...........................................................................................36

        **Trial setting** .....................................................................**36**

        **Continuances** ...................................................................**36**

        **Dismissal/Refiling** ............................................................**36**

        **Evidentiary issues** ............................................................**36**

        **Discovery** .........................................................................**37**

        **Jury selection in domestic violence cases** .........................**37**

        **Victims** ............................................................................**38**

        **Compelling participation or testimony** ..............................**38**

    **Dispositions** ...............................................................................39

**Sentencing** ........................................................................................................**39**

    **Probation** .................................................................................................39

  **Protective Orders Generally** ....................................................................40

  **Postconviction** ........................................................................................42

**Sources Consulted** ................................................................ **44**

**Attachment** ............................................................................. **45**

    **The Presiding Judges' White Paper on Domestic Violence: The Role of the Presiding Judge in the Administration of Domestic Violence Cases**

**Introduction to Recommended Guidelines and Practices**

On September 6, 2005, Chief Justice Ronald M. George appointed the Judicial Council Domestic Violence Practice and Procedure Task Force to recommend improvements to court practice and procedure in cases involving domestic violence allegations. As Chief Justice George stated when he initially appointed the task force members, "Our goals are to ensure fair, expeditious, and accessible justice for litigants in these critical cases and to promote both victim safety and perpetrator accountability."

The task force charge also included the review and implementation, as appropriate, of court-related recommendations contained in the June 2005 report to the California Attorney General from the Task Force on Local Criminal Justice Response to Domestic Violence, entitled *Keeping the Promise: Victim Safety and Batterer Accountability*.

**Areas of Inquiry**

A significant component of the task force's work has involved the development of a series of recommended guidelines and practices. These guidelines and practices were derived from statutory and other mandates as well as suggestions for improvements in the administration of justice relating to cases alleging domestic violence. In general, the guidelines and practices fall into the following categories of inquiry:

- Court leadership;
- Restraining orders;
- Firearms relinquishment;
- Entry of restraining and protective orders into the Domestic Violence Restraining Order System (DVROS) and access to that system; and
- Criminal law procedures.

**Methodology**

Over a period of two years, the task force met eight times and conducted a series of conference calls, both to develop and discuss the proposed guidelines and practices and to review the comments, public hearing testimony, and regional court meeting summaries received. In crafting its recommendations, the task force relied on the expertise and experience of its members, an extensive literature search, recommendations submitted by presiding judges and court executive officers, suggestions from attendees at judicial education programs in subject areas relating to domestic violence, and survey results from court staff and family law judicial officers. In addition, the task force conducted two invitational forums designed to develop proposals in the difficult areas of firearms restrictions and relinquishment and access to and entry of orders into DVROS.

In March 2007, the task force conducted public hearings in San Francisco and Los Angeles. In May and June 2007, Chief Justice George invited local courts to conduct community meetings designed to determine how the proposals would work practically in local jurisdictions. Regional court meetings were then convened in Sonoma, Burlingame, and Torrance to bring court leaders together to share the results of the local meetings and to further develop the proposals. Finally, the task force conducted focus groups with specific stakeholders and interactive meetings with the following Judicial Council

advisory committees: Family and Juvenile Law Advisory Committee, Criminal Law Advisory Committee, Collaborative Justice Courts Advisory Committee, Trial Court Presiding Judges Advisory Committee, and Court Executives Advisory Committee.

## Guiding Principles

Development of the task force proposals was guided by the following key principles, as well as by goals previously established by the Judicial Council:

- Promote the safety of all court participants;
- Ensure accountability of domestic violence perpetrators;
- Improve accessibility to the courts for the parties by maximizing convenience, minimizing barriers, and ensuring fairness for a diverse population;
- Promote the use of technology to enhance the administration of justice in cases involving domestic violence allegations; and
- Emphasize the need for court leadership and adequate resources.

These overarching principles are consistent with and derived from the Judicial Council's strategic plan and three of its primary goals: Access, Fairness, and Diversity; Quality of Justice and Service to the Public; and Modernization of Management and Administration. Moreover, these principles fit squarely within several of the thematic areas targeted by the council as part of its continuing efforts to improve public trust and confidence in the California courts: removing barriers to court access, recognizing the needs of a diverse population, and ensuring fairness in procedures and outcomes.

The task force, in developing its recommended guidelines and practices, recognizes that improving the administration of justice in cases involving allegations of domestic violence must be a systemic endeavor. Many of these proposals are detailed and technical in nature because systemic problems often require a detailed analysis and approach. The task force wishes to emphasize that implementation of some of its proposals will require additional resources. The members believe, however, that scarce resources should not limit the courts in determining how to improve the administration of justice in domestic violence cases, and that courts should be encouraged to examine and evaluate how resources are allocated.

**Court Leadership**

Local court leadership is a critical component of any effort to improve the administration of justice in domestic violence cases. More importantly, court leadership is necessary for both maintaining and institutionalizing improvements that have been already achieved. As stated in the Report to the California Attorney General from the Task Force on Local Criminal Justice Response to Domestic Violence, *Keeping the Promise: Victim Safety and Batterer Accountability:*

> To redress most of the problematic practices we have identified, there must be close collaboration among multiple agencies in each local criminal justice system. In most of those collaborative efforts, perhaps the most significant agency—certainly a necessary agency—is the judiciary.[1]

Cognizant of this crucial court leadership role, the task force consulted with numerous presiding judges and court executive officers and invited testimony on the issue of court leadership at its public hearings. The task force determined that its proposals relating to court leadership in the administration of domestic violence cases should further the following goals:

- Urge allocation of adequate resources to domestic violence cases;
- Provide for ongoing evaluation and monitoring;
- Encourage local court participation in domestic violence councils or court-convened committees made up of all interested justice system entities and community organizations;
- Encourage participation in a statewide registry of protective and restraining orders;
- Recommend that the creation of specialized domestic violence courts or calendars be considered;
- Discourage the use of temporary judges in domestic violence cases; and
- Ensure that judicial officers who perform duties in domestic violence matters receive regular education in this subject area.

The Executive Committee of the Judicial Council's Trial Court Presiding Judges Advisory Committee, on behalf of the full committee, submitted to the task force for consideration a white paper entitled, *The Role of the Presiding Judge in the Administration of Domestic Violence Cases in Our Courtrooms.* In this document, attached at page 45, the advisory committee supported the task force recommendations and emphasized the importance and role of the presiding judges in partnership with court executive officers in ensuring implementation of these recommendations. As stated in the white paper:

---

[1] Report to the California Attorney General from the Task Force on Local Criminal Justice Response to Domestic Violence, *Keeping the Promise: Victim Safety and Batterer Accountability* (June 2005), p. 84.

To ensure that courts comply with mandates promulgated to increase safety and accountability, the presiding judge and court executive officer should maintain a system of internal self-assessment and audits so that the court is continuously monitoring its own progress. Perhaps more important, the local courts themselves, if they pursue a course of internal assessment, will be able to develop sound practice and procedures to voluntarily improve the administration of justice in these cases consistent with unique local structure and needs.

Task force recommendations relating to court leadership are as follows:

1. ***Court leadership.*** In order to improve public safety and promote public trust and confidence in the justice system, the presiding judge and court leaders should allocate adequate resources, including those for staffing and education, to ensure the fair and accessible adjudication of cases involving domestic violence allegations. The courts should engage in an ongoing process to develop, monitor, and evaluate procedures and protocols designed to improve the administration of justice in these critical cases.

2. ***Working with justice system entities and community organizations.*** As ethically appropriate, the court should participate in domestic violence coordinating councils or court-convened committees that provide an opportunity for justice system agencies and community organizations to comment on court practices and procedures relating to domestic violence cases, as well as providing a mechanism for improving these practices and procedures. Ethically appropriate councils or committees, at a minimum, (1) are inclusive in that representatives from all interests and sides of the litigation are invited to participate, (2) do not involve discussion of pending cases, (3) do not involve judicial officers in fundraising, and (4) do not involve judicial officers in lobbying for the adoption of legislative measures.

3. ***Use of temporary judges.*** To the extent feasible, the use of temporary judges to adjudicate cases that typically involve domestic violence allegations is discouraged. In no event should temporary judges preside over such cases unless they have received education concerning domestic violence cases.

4. ***Judicial education.*** Presiding judges should ensure that judges and subordinate judicial officers who perform duties in domestic violence matters receive regular training and education in this subject area. They should also ensure, under rule 10.462 of the California Rules of Court, that (1) each new trial court judge and subordinate judicial officer with an assignment in criminal, family, juvenile delinquency, juvenile dependency, or probate attend an orientation course in his or her primary assignment that contains a domestic violence session within one year of taking the oath of office and (2) unless he or she is returning to an assignment after less than two years in another assignment, each judge or subordinate judicial officer who is beginning a new primary assignment in criminal, family, juvenile delinquency, juvenile dependency, or probate complete a course in the new primary assignment that contains a domestic violence session within six months of beginning the new assignment.

5. ***California Courts Protective Order Registry (CCPOR).*** Each presiding judge and court executive officer should make accessible to judges the CCPOR, a Web-based, statewide centralized system for viewing protective and restraining orders and related information.[2]

6. ***Court structure and calendars***. Each court should consider whether to create dedicated domestic violence courts or specialized calendars based on the unique circumstances and characteristics of that jurisdiction and the resources available to it. In making the determination, the court should consider the optimal ways to:

   a. Ensure ongoing evaluation and monitoring of practice and procedure in domestic violence cases;
   b. Provide for trained staff and judicial officers;
   c. Foster collaborative efforts to improve the administration of justice in domestic violence cases within the court and among other justice system agencies;
   d. Promote procedural consistency; and
   e. Enhance and increase accessibility to services for victims of domestic violence.

---

[2] A project under way at the Administrative Office of the Courts, the CCPOR is designed to make the full text of restraining and protective orders easily accessible to the judiciary, law enforcement, and other justice system partners.

**Domestic Violence Prevention Act Restraining Orders**

The task force circulated for comment draft recommended guidelines and practices for Domestic Violence Prevention Act (DVPA) restraining orders, focusing on those civil restraining orders issued by family courts in California. In some cases, juvenile and probate courts have issued DVPA orders. Additionally, civil restraining orders may be issued under other code sections, including Welfare and Institutions Code section 213.5.

Under the DVPA, a civil domestic violence restraining order can be a powerful tool to deter future violence, secure safe child custody and visitation arrangements, and provide temporary financial stability. However, a litigant must take numerous steps to secure and enforce a restraining order. Effective court practices play a crucial role in enhancing the ability of parties to obtain, understand, and comply with the orders. Additionally, courts need to ensure that these orders are issued in a timely manner, are accurate, and can be immediately entered into the California Law Enforcement Telecommunications System (CLETS) to assist in enforcement. Without focused attention on the development and implementation of effective court practices, courts can unwittingly be a barrier to instead of a facilitator of public safety.

The practices outlined below were developed from a review of national, state, and local publications; a review of existing court practices around the state; comments received through the public comment and hearing process; and discussions among members and staff of the task force.

The proposals address the restraining order process from the viewpoint of litigants, the court, and law enforcement with the goals of simplifying and streamlining procedures for litigants, improving communication within the court, increasing the availability of information to the judicial officer, and enhancing the enforceability of court orders.

Ultimately, the success of domestic violence restraining orders in reducing violence and increasing public safety depends on the efforts of California's network of public and private agencies. The proposals described here reflect that interdependency and encourage each agency to take steps to promote the courts' ability to improve the administration of justice.

**Assistance for Parties (General)**

1. ***Removal of barriers.*** Each court should review its practices and procedures generally and make changes designed to reduce barriers to court access for litigants in restraining order proceedings**.** Each court may consider working with community agencies in identifying barriers and developing practices.

2. ***Access to restraining orders.*** Courts should ensure that only those eligibility requirements required by statute or rule are imposed upon a litigant seeking to obtain a restraining order. To ensure public safety, any person can request a restraining order regardless of unrelated factors such as immigration status or alleged criminal conduct.

3. ***Information/resources for the parties.*** The court should inform the parties about resources that are available in restraining order proceedings in accordance with their requests and needs and under Family Code section 6343. That section requires courts, in consultation with local domestic violence shelters and programs, to develop a resource list of appropriate community domestic violence programs and services. The list must be provided to each applicant for a domestic violence restraining order. The resources should be available in English and other languages to the extent feasible and could include:

   a. Legal services agencies and pro bono legal resources;
   b. Child support services;
   c. Administrative Office of the Courts (AOC) informational pamphlet and video;
   d. Available victim-witness services or funding;
   e. Appropriate referrals to community domestic violence programs and services, including batterer intervention programs;
   f. Self-help services;
   g. Other community services, including those providing immigration information.

4. ***Legal services.*** Each court should provide information to all parties about the availability of legal services and should explore options with the bar and other agencies to foster increased representation for parties in domestic violence restraining order cases.

5. ***Family law facilitator/self-help center.*** Additional funding should be provided for the family law facilitator or self-help center, if appropriate, to furnish services to all parties beyond those provided by the federally funded child support program. The facilitators and self-help centers should provide information and appropriate assistance to litigants on court practice and procedure in domestic violence cases. So that the parties have access to electronic domestic violence self-help software, facilitators and self-help centers should make every effort to make computers available for use by the parties in restraining order proceedings.

6. ***Counseling.*** Individuals seeking protection in domestic violence cases should not be ordered to attend counseling without careful consideration. Under existing law, a court may not order a protected party to obtain counseling without the consent of the party unless there is a custody or visitation dispute. (Fam. Code, § 3190.) In the event that the court orders counseling under Family Code section 3190, the court must make the requisite findings and should order separate counseling sessions under Family Code section 3192. Nonmandatory referrals to counseling or related services may be made and should be provided under the requirement of Family Code section 6343, which requires that courts develop resource lists for referrals to appropriate community domestic violence programs and services.

7. ***Confidentiality.*** Courts should (1) inform parties that most filed documents are public records and (2) provide information on how to safeguard certain kinds of information

14

such as addresses or confidential locations. (See for example, the Secretary of State's Safe at Home Program, *www.ss.ca.gov/safeathome*.)

**Obtaining and Perfecting Orders**

8. ***Emergency protective orders (EPOs).*** Each court should have a workable practice for obtaining EPOs to maximize accessibility. Each court should ensure that a judicial officer is available to law enforcement during both business and nonbusiness hours for review of applications for EPOs. Each court should also encourage and support law enforcement's use of the after-hours procedure for EPOs by using a duty judge system of rotation.

9. ***Reasonable and timely access to review of applications for temporary restraining orders.*** Each court should have a mechanism for reviewing each application for a restraining order "on the same day that the application is submitted to the court, unless the application is filed too late in the day to permit effective review, in which case the order shall be issued or denied on the next day of judicial business in sufficient time for the order to be filed that day with the clerk of the court." (Fam. Code, § 6326.) Courts should develop procedures to (1) ensure timely access at convenient court locations so that travel to the appropriate courthouse will not unduly burden the party seeking review of the application and (2) develop electronic mechanisms such as fax, e-mail, or videoconferencing to facilitate prompt review of the application.

10. ***Notice in ex parte proceedings.*** Courts should not have a blanket rule or policy regarding notice for every request for an ex parte restraining order. Notifying a proposed restrained person about an applicant's request for a restraining order can trigger a significant risk of harm to the applicant. As provided in Family Code section 6300, the court should determine *on a case-by-case basis,* depending on the circumstances, whether notice of an application for a temporary restraining order should be required, taking into account the level of danger to the applicant. In all cases, applicants should be referred to community services and should be advised of the National Domestic Violence Hotline (1-800-799-SAFE).

11. ***Right to hearing.*** A jurisdictionally adequate petition for an ex parte temporary restraining order under the DVPA may not be summarily denied. The court must either (1) grant the temporary orders requested and set the matter for a noticed hearing or (2) defer ruling on the matter pending a noticed hearing, in which case the court should consider whether failure to make any of these orders would jeopardize the safety of the petitioner and children. (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327.) When no temporary order is issued, some petitioners may be concerned that their safety will be compromised if the court sets the matter for a noticed hearing. Therefore, the court should develop a procedure so that the petitioner is informed that he or she may withdraw the petition without prejudice to refiling it at another time.

12. **Background checks.** To enhance public safety, wherever possible each court should conduct timely criminal background checks on the restrained party and conduct checks for other restraining and protective orders, involving either party, that can be considered by the judicial officer, both at the temporary restraining order stage and at the hearing on the application, as described in Family Code section 6306. However, lack of sufficient resources makes it impossible for some courts to conduct these checks, and significant challenges are associated with accessing and navigating the California Department of Justice's (DOJ) databases. Therefore, the DOJ should work with the courts to make records easily accessible and reduce the length of time needed to check records. Courts should access the CCPOR, the statewide database containing images of restraining and protective orders.[3]

13. **Service of process.** Each court should collaborate with law enforcement and processing services to ensure timely and effective personal service of process of restraining orders and entry of proof of service into DVROS.

14. **Preparation and provision of restraining orders.** The court should ensure that an order is prepared and provided as soon as possible to all parties who are present at the proceeding.

15. **Past acts.** In reviewing applications for temporary restraining orders, there should be no rigid time frame for determining what constitutes a relevant "past act of abuse." Such determinations should be made on a case-by-case basis.

16. **Availability of child and spousal support orders.** In a DVPA proceeding when child or spousal support is requested and financial documentation is submitted, the court should consider the request and order appropriate support at the same time as the restraining order request is considered or as soon thereafter as possible to ensure safety. (Fam. Code, § 6341(a) and (c).) Each court should establish a cooperative relationship with the Department of Child Support Services and take reasonable steps to expedite the award of child and spousal support in domestic violence cases.

17. **Availability of custody and visitation orders.** In a DVPA proceeding when child custody and visitation are requested and appropriate documentation is submitted, the court should consider the request and order custody and visitation to a party who has established a parent-child relationship under Family Code section 6323, as appropriate, at the same time as the restraining order. (Fam. Code, § 6340.) The court must consider whether failure to make any of these orders may jeopardize the safety of the petitioner and the children for whom the custody or visitation orders are sought. Each court should take reasonable steps to expedite the determination of custody and visitation in domestic violence cases.

---

[3] See footnote 2.

18. ***Additional protected persons.*** When the court issues a restraining order, it should consider whether the order should apply to other named family or household members if good cause is demonstrated. (Fam. Code, § 6320.)

19. ***Supervised visitation.*** There is a need for greater availability of affordable supervised visitation and safe exchange programs. As a result, every court should encourage the establishment of a facility or provider of supervised visitation and safe exchange services in the county so that in appropriate cases, each party to a restraining order proceeding who has children has access to supervised visitation and safe exchanges. To the extent feasible, the number of multilingual and multicultural programs should be increased.

20. ***Orders generally.*** The court shall consider the application for a DVPA restraining order and may issue all appropriate orders without requiring corroborating evidence. As long as the court does not issue a conflicting order, it should consider the application even when a criminal protective order (CPO) exists. This maximizes safety and enables the court to consider custody and visitation.

21. ***Residence-exclusion orders.*** When a court issues a residence-exclusion order, the court should consider implementing a protocol that allows the respondent to collect his or her belongings without violating the order.

22. ***Termination or modification of a restraining order.*** If a litigant requests termination or modification of a restraining order, the court should conduct a hearing to determine if the request is entirely voluntary and not a result of coercion or duress and to make sure the person making the request is in fact the protected party. The court should consider deferring ruling on the request to allow the protected person time to discuss the request for termination or modification with a support person.

**Hearings and Services**

23. ***Staffing.*** The court should assign and manage appropriate staff in domestic violence cases to perform the following duties:

   a. Streamline procedures;
   b. Promote safety in the courthouse;
   c. Coordinate court processes and case information;
   d. Provide information to the court regarding existing protective orders and orders in cases involving child custody or visitation;
   e. Serve as liaison with law enforcement, treatment services, Children's Protective Services, victim assistance, advocates, probation departments, and other relevant agencies; and
   f. Participate as ethically appropriate in local family violence coordinating councils or court/community practice and procedure committees.

24. ***Court interpreters.*** Each court should provide interpreters in domestic violence cases, in family court services mediation sessions, and in self-help centers.[4] Each court should analyze its calendaring mechanisms to maximize the availability of court interpreters in domestic violence cases.

25. ***Training for court interpreters.*** Each court should ensure that training for court interpreters includes information about the nature of domestic violence cases and the need for unbiased handling of interpretation in these cases. The AOC should provide support and curricula for developing the training.

26. ***Services.*** The court, in collaboration with community justice partners, should assess community resources, examine any gaps in resources, and inform appropriate officials accordingly, with the goal of increasing available resources for litigants in domestic violence cases.

27. ***Self-represented litigants.*** Each judge hearing domestic violence restraining order proceedings should conduct appropriate dialogue with self-represented litigants to clarify facts and explain the court's procedures as necessary in the specific case.

28. ***Scheduling hearings.*** The court should adhere to the statutory time periods for setting hearings on restraining orders, should endeavor to expedite these proceedings whenever possible to promote public safety, and should avoid unnecessary delays and continuances.

**Court and Case Management**

29. ***Local procedures.*** To the extent that a court promulgates policies or procedures relating to restraining order proceedings, the procedures should be in written form and made accessible to the public.

30. ***Calendar management.*** If a court determines that a dedicated DVPA calendar is not warranted in the jurisdiction, the court should ensure that:
    a. There is a mechanism to identify all domestic violence cases to better provide services and staff; and
    b. Domestic violence matters are given calendar priority to ensure safety and convenience of litigants.

31. ***Court coordination.*** Each court must develop a local rule, as required by rule 5.450 of the California Rules of Court, providing a procedure for communication among courts issuing criminal court protective orders and courts issuing orders involving child custody and visitation. Under rule 5.450, the local rule also must include a procedure for modification of a CPO in consultation with the court issuing a

---

[4] Courts should access the Administrative Office of the Courts grant program to fund interpreters in these proceedings. The task force acknowledges the that there is a lack of certified interpreters for some languages in some locations.

subsequent child custody and visitation order. The procedures should include methods for safeguarding confidential information and provide a mechanism for identifying related cases, orders, court dates, and information regarding children and for determining how to best provide appropriate information to judicial officers. The information should be integrated into the court's case management system.

32. ***Court communication.*** Each court should have a mechanism for internal court communication on practice and procedure in domestic violence cases suitable for the court size and caseload. For example, courts may conduct meetings of judicial officers with criminal, juvenile, and family law assignments.

33. ***Training.*** Each court should endorse and ensure periodic training for all court personnel and judicial officers who are involved in domestic violence cases appropriate to their assignments. The court should also regularly provide information to bench-bar groups about court practice and procedure relating to domestic violence cases.

34. ***Statistics.*** Each court should maintain domestic violence statistics, including the number of EPOs issued, temporary restraining orders requested and granted, orders granted after hearing, children involved, reissuances, and proofs of service filed. Court case management systems should support collection of this data.

35. ***Facility security.*** To handle those cases involving domestic violence, each court should develop reasonable safety procedures. These procedures should address, but are not limited to, the following: (1) making reasonable efforts to keep residential addresses, work addresses, and contact information—including but not limited to telephone numbers and e-mail addresses—confidential in all appropriate cases and on all appropriate documents; (2) ensuring that a trained security officer is present in the courtroom; (3) providing safe ways to depart from the courthouse, such as safe waiting areas, elevators, stairwells, hallways, entrances and exits, and parking; and (4) providing escorts for victims when needed and as feasible. Courts should consider the requirements of Government Code section 69920 et seq. and rule 5.215(i)(2) of the California Rules of Court when designing facilities.

36. ***CLETS/DVROS.*** As required by Family Code section 6380, each court should ensure that all required domestic violence restraining orders and proofs of service as defined under Family Code sections 6218 and 6320 are entered into the DVROS via CLETS within one business day and memorialized on mandatory Judicial Council forms. The statutory scheme contemplates that these orders should be entered into DVROS so that law enforcement agencies will have access to the orders, thus maximizing enforcement. Moreover, under federal law (see generally 18 U.S.C. § 44), any order that purports to prohibit specific threatening conduct carries with it mandatory firearms restrictions that should not be obviated by a state court or by stipulation of the parties.

19

37. ***Non-CLETS domestic violence restraining orders.*** Courts should decline to approve or make domestic violence[5] restraining orders that cannot be entered into DVROS or CLETS, commonly referred to as "non-CLETS" orders.

---

[5] Domestic violence in the civil context is defined as abuse or conduct that is described in Family Code sections 6203 and 6320 that has been perpetrated against an intimate partner, as defined by Family Code section 6211.

**Firearms Relinquishment**

California and federal law bars persons subject to restraining orders, as well as defendants convicted of certain crimes, from possessing or purchasing firearms or ammunition,[6] and compliance with these laws can reduce domestic violence homicides.[7] Court orders to relinquish firearms, however, are not self-implementing. Persons protected by restraining orders may erroneously believe that when the court orders the restrained person to relinquish firearms, either law enforcement or the courts will take steps to ensure that the order is followed. But under California law, the onus is on the restrained person to comply by relinquishing firearms to law enforcement or selling them to a licensed gun dealer.[8] Experts report that some gun owners are extremely reluctant to comply.[9]

The following proposals were developed by the task force from a review of national and state publications; task force staff discussions with law enforcement officials; and a colloquium held in April 2006 by the California AOC involving judicial officers and court staff, justice system entities, and domestic violence victim advocates. The proposals reflect the limited reach of the courts, particularly in family law cases.

Clearly, implementation of these proposals and, for that matter, enforcement of firearm prohibition laws will require the concerted actions of law enforcement officers, prosecutors, the defense bar, the courts, probation and parole officers, and victim advocates. It is important to note, however, that California's courts are severely circumscribed by legal and practical considerations in their ability to ensure that restrained persons do not possess or have access to firearms or ammunition.

Ultimately, public safety is best served when law enforcement and the entire justice system take immediate action to remove firearms, whether registered or not, from the hands of a person who is statutorily barred from possessing them. The courts have a necessary and important role in achieving this goal, but because they are not investigative or enforcement agencies, the courts must rely on justice system entities to provide necessary information and to enforce compliance with firearm relinquishment orders.

It is with these factors in mind that the task force proposes the following guidelines and practices.

---

[6] See, for example, Family Code section 6389; Penal Code section 136.2; 18 U.S.C. 922(g)(8); and 18 U.S.C. 922(g)(9).

[7] Saltzman, L. et al. "Weapon involvement and injury outcomes in family and intimate assaults" (1992) *Journal of the American Medical Association* 267(22):3,042–3,047.

[8] See section 6389(c)(2) of the Family Code.

[9] Testimony provided at the task force public hearing on March 14, 2007.

**Communication and Education**

1. ***Communication with local justice system entities.*** Each court should regularly communicate with appropriate local justice system entities, including law enforcement, prosecutors and defense attorneys, domestic violence victim advocates, and the bar, to develop and monitor local firearm relinquishment protocols and procedures.

2. ***Communication with state justice system entities***. The AOC should establish an ongoing working group with appropriate statewide justice system entities to communicate about and support improvements to statewide and local firearm relinquishment forms, protocols, and procedures.

3. ***Identification of law enforcement and gun dealer policies.*** Courts should make reasonable efforts to learn about the existence and location of local gun dealers and about local law enforcement's relinquishment policies and gun dealers' sale policies, including fees for storage.

4. ***Court access to state and federal firearms databases.*** The DOJ should make every effort to encourage and improve court access to state and federal firearms databases.

**Legislation and Rules of Court**

5. ***Firearms search in Automated Firearms System (AFS) conducted by the prosecutor.*** Legislation should require prosecutors to perform a database search of the defendant's registered firearms and provide that information to the court as currently set forth in Penal Code section 273.75.

6. ***Firearms search in AFS conducted by the court.*** Family Code section 6306 should be amended to provide express authority for the courts to search the firearms database. Funding should be made available to the courts for implementation.

**Procedures**

**Emergency protective orders**

7. ***Court inquiry.*** Prior to issuing an EPO under Family Code section 6240 et seq., the on-call judge should ask the law enforcement officer who is requesting the order if the officer has inquired of the victim, alleged abuser, or both, whether a firearm is present at the location. (Pen. Code, § 13730.)[10]

**Criminal court protective orders**

8. ***Firearms inquiry conducted by the prosecutor in conjunction with law enforcement.*** At or before the time of arraignment, the prosecutor and law enforcement should conduct a firearms search on the defendant through AFS and any other appropriate databases and sources and provide the results to the court at arraignment.[11] Any inability to provide the court with timely information should not delay the issuance of an order. If the court finds reason to believe that the defendant owns or possesses a firearm, the court should instruct the prosecutor to make reasonable efforts to notify the victim or witness of the court's finding.[12]

9. ***Oral advisement of firearm restrictions.*** The court should orally advise the defendant about state and federal firearms and ammunition prohibitions and the requirement for timely relinquishment.

---

[10] Penal Code section 12028.5 requires a law enforcement officer to take temporary custody of any firearm or other deadly weapon in plain sight or discovered as the result of a consensual or other lawful search as necessary for the protection of the peace officer or other persons present, when the officer is at the scene of a domestic violence incident involving a threat to human life or a physical assault. Moreover, if the court issues an EPO, the law enforcement officer who requested the order is required to serve the EPO on the restrained person, if the restrained person can reasonably be located, and then use every reasonable means to enforce the EPO, including firearms restrictions. (See Fam. Code, §§ 6271, 6272; Pen. Code, § 12021(g)(2).)

[11] Section 273.75 of the Penal Code currently requires the district attorney or prosecuting city attorney to perform a database search of the defendant's history, including but not limited to prior convictions for domestic violence, other forms of violence or weapons offenses, and any current protective or restraining order. The information shall be presented for consideration by the court (1) when setting bond or when releasing a defendant on his or her own recognizance and (2) upon consideration of any plea agreement. The databases include the Violent Crime Information Network, the Supervised Release File, state summary criminal history information maintained by the DOJ, the Federal Bureau of Investigation's nationwide database, and locally maintained criminal history records. The statute should be revised to require a search in the AFS database.

[12] Section 11106(d) of the Penal Code authorizes prosecutors to release AFS information to victims of domestic violence in some cases.

10. ***Set review hearing.*** The court should ask the prosecutor if he or she has reason to believe that the defendant owns or possesses a firearm or ammunition. If the court finds there is reason to believe that the defendant owns or possesses a firearm or ammunition, the court should set a review hearing within 48 hours of service of the protective order on the defendant to determine whether a relinquishment or sale receipt was filed. (Code Civ. Proc., § 527.9.) The court may wish to set the review hearing within 24 hours of service when logistically feasible. The court should order the restrained person to personally appear at the review hearing unless a sale or relinquishment receipt is filed within the statutory time frame.[13] If the restrained person indicates under oath that he or she no longer owns or possesses any firearms that are entered in his or her name in the AFS database, the court should order the restrained person to submit form FD 4036, *Notice of No Longer in Possession* (NLIP), to the DOJ. The court should order the restrained person to submit a report of an allegedly lost or stolen firearm to local law enforcement and present proof of the report to the court. When the court has reason to believe that the defendant still owns or possesses a firearm or ammunition, even if the restrained person has filed a receipt, NLIP, or other type of sale or relinquishment notice, the court should consider holding a review hearing.

11. ***Appropriate orders at the hearing.*** If no receipt, NLIP, or other notice has been filed or provided and the defendant appears in court at the scheduled hearing, the court should hold a hearing on the firearms issue and (1) issue a search warrant if one is requested, provided the court finds probable cause, (2) increase bail, (3) revoke release on own recognizance (OR), or (4) set a probation revocation hearing. If no receipt, NLIP, or other notice has been filed or provided and the defendant does not appear for the court hearing, the court should issue a no-bail bench warrant.

## Civil court restraining orders

12. ***Database search for registered firearms conducted by the court.*** The court (through sheriff, court, or pretrial services) should conduct a firearms search on the proposed restrained person through AFS or another appropriate database prior to issuing a restraining order (including a temporary restraining order). However, failure or inability to conduct the firearms search should not delay issuance of an order.

13. ***Note of reported firearms on restraining order.*** If firearms, whether registered or not, are reported to the court through an AFS database search or by the protected party, the court should so indicate on the temporary restraining order and order after hearing.

14. ***Oral advisement about firearm restrictions.*** The court shall inform parties of the terms of the restraining order, including notice that the restrained person is prohibited

---

[13] This proposal would necessitate an evidentiary hearing to determine whether the defendant owns or possesses a firearm. The defendant could invoke the Fifth Amendment right not to incriminate himself or herself.

from owning, possessing, purchasing, receiving, or attempting to own, possess, purchase, or receive a firearm or ammunition, including notice of the penalty for violation. (See Fam. Code, § 6304.)[14]

15. ***Development of Failure to Relinquish or Sell Firearms notification form.*** Upon the court's issuance of a DVPA order at a hearing where the respondent has been provided notice and an opportunity to be heard, the court should determine whether the restrained person owns or possesses firearms or ammunition. If the court finds that the restrained person does own or possess a firearm or ammunition, the court should notify law enforcement for appropriate action.[15] The AOC, in consultation with the DOJ and other agencies as appropriate, should develop a form and procedure to ensure the timely notification of law enforcement entities about the court's finding.

**Forms**

16. ***Firearm relinquishment information sheet.*** The Judicial Council of California has developed a statewide information sheet to explain to restrained persons how to safely and legally relinquish or sell firearms when so ordered. To encourage the widest possible use of this form, the AOC should revise the form so that it is locally modifiable and can be used with all types of protective orders, as well as for criminal sentencing following convictions for offenses that require firearm relinquishment.[16] The form should include information about the requirement to file a relinquishment or sales receipt with the court, and it should explain the NLIP form and the method to report a lost or stolen firearm. The court should provide the information sheet to all persons who are prohibited from owning or possessing firearms or ammunition because of a court order or criminal sentence.

---

[14] The firearms prohibition of Family Code section 6389(a) "*automatically* activates . . . when a court imposes or renews any of the enumerated forms of protective orders." (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, pp. 1,294–1,295.) The court is "[unable] to eliminate the firearm restriction while a protective order remains in place" except in very limited circumstances that are specifically authorized by Family Code section 6389(h). (*Id.* at 1,300.)

[15] This practice is intended for a DVPA-noticed hearing that is held after the court has issued temporary restraining orders on *Temporary Restraining Order and Notice of Hearing* (form DV-110). Where the court has not issued temporary orders but has issued restraining orders only after a noticed hearing, the court (at the noticed hearing) should determine whether the restrained person owns or possesses a firearm or ammunition. If the court finds that the restrained person owns or possesses a firearm or ammunition, the court should set a compliance hearing to determine whether the restrained person has sold or relinquished the firearm or ammunition. If the restrained person does not comply with the court's relinquishment order, the court should notify law enforcement for appropriate action.

[16] See Judicial Council form, *What Do I Do With My Gun or Firearm? (Domestic Violence Prevention)* (form DV-810).

25

17. ***Revision of restraining and protective order forms to add check box for reported firearms.*** All temporary and permanent restraining and protective orders should indicate whether firearms were reported and whether the report was obtained through a database search or from a protected person's declaration or other information presented at a hearing.

18. ***Revision of EPO form to indicate reported firearms.*** The EPO form should be revised to include a check box for law enforcement to indicate whether firearms were reported by any person at the scene (under Pen. Code, § 13730) or discovered in a database search.

**Access to and Entry of Orders Into the**
**Domestic Violence Restraining Order Systems (DVROS)/**
**California Law Enforcement Telecommunications System (CLETS)**

Courts are required either to transmit criminal and DVPA restraining orders to a local law enforcement agency or to directly enter the orders into DVROS within one business day. (Fam. Code, § 6380; Pen. Code, § 136.2.) DVROS is a statewide database maintained by the DOJ that is designed to store restraining and protective order information. DVROS is one of many databases housed in CLETS, and when approved by DOJ, it is accessible by law enforcement personnel, court personnel, and other appropriate agencies 24 hours a day, seven days a week.

The DOJ controls access to CLETS and thus to DVROS, and each superior court must apply to the DOJ for access. Currently, only seven trial courts have direct entry access to DVROS via CLETS. Early in the task force's work, members of the task force expressed concerns about the arduous application process. This process has been somewhat streamlined since the AOC obtained approval from the DOJ to access DVROS and other CLETS databases. However, each court is still required to submit an application requesting access via the AOC's portal. To date, four courts have gained access to DVROS/CLETS in this manner. The AOC will continue to help facilitate the application process to reduce processing time.

The 2005 report from the California Attorney General's Task Force on Local Criminal Justice Response to Domestic Violence, *Keeping the Promise: Victim Safety and Batterer Accountability,* notes that law enforcement cannot enforce a criminal or DVPA restraining order if it cannot determine at the time of an alleged violation whether the order is still in effect. Thus it is imperative that all orders are entered into DVROS accurately and in a timely manner. Because few courts have access to DVROS, the courts, local law enforcement, prosecutors, and probation departments must work together to ensure that restraining orders are entered into DVROS.

In response to the Attorney General's task force report, on June 21, 2006, the AOC hosted a CLETS Access Forum. This forum provided an opportunity for the courts entering restraining orders to demonstrate their individual operations and to explain the obstacles, challenges, and achievements they experienced during the process of obtaining CLETS approval. To maintain a representative balance, additional small, medium, and large courts were invited. Each participating court was encouraged to send a team consisting of the executive officer and representatives from information systems and operations. Information was distributed to the program participants about the role of the AOC in providing technical assistance to the courts interested in improving CLETS access as well as the long-term objective of automating the process of entering orders into CLETS via the case management system.

At the forum, the Superior Court of Orange County presented a Web-based restraining order registry that it has developed. The task force found this registry of particular interest, and as a result, the AOC began an inquiry to determine whether a similar registry could be launched statewide. The AOC is now developing the California Courts Protective Order Registry (CCPOR), a centralized system designed to allow bench officers and law enforcement to view protective and restraining orders and related information. Many other courts have developed countywide restraining order registries, some components of which will be incorporated into the statewide system.

The presentations, small group discussions, and large group plenary sessions in the CLETS Access Forum served as a foundation for the proposals set forth below, which are presented as immediate, interim, and long-term goals. These goals encompass the vast array of ideas, concepts, and needs as discussed by the courts. Courts are encouraged to adopt as many goals as necessary for their operational needs.

### Immediate Proposals

1. ***Access to CLETS.*** Each court must have access to the DVROS database and to other databases within CLETS, such as AFS and the firearms registry, as deemed necessary by the court or as required by statute for the purpose of performing data searches and to ensure compliance with rule 5.450 of the California Rules of Court.

2. ***Needs assessment.*** Each court should evaluate current procedures, protocols, and timelines for processing restraining orders, from the granting of the order to its entry into DVROS, and whether the court enters the orders directly or transmits the orders to law enforcement for entry into DVROS. The court should ensure that all orders are being entered into DVROS promptly and are consistent with all statutory requirements. If delays or inconsistencies are discovered, the court should take all necessary steps to eliminate them by enhancing procedures and protocols. Courts should periodically review the assessments to ensure that procedures and protocols remain current.

3. ***Communication: Court and justice partners.*** Courts should hold regular meetings with local law enforcement and other related justice partners to monitor procedures and to review operations to ensure consistency and accountability in handling restraining orders. The courts and the law enforcement agencies responsible for entering the orders into DVROS should develop plans to ensure that orders, proofs of service, and modifications are entered into DVROS promptly and are consistent with all statutory requirements.

4. ***Communication: AOC and DOJ.*** The AOC and the DOJ should establish a user group that conducts regular meetings to review policy and practices regarding entry of restraining orders. This review team could also assist in establishing standards for training, audit practices, and implementation.

5. ***Implementation standards.*** The AOC and local courts should recommend that the DOJ streamline the CLETS application process and establish implementation standards statewide to eliminate barriers to court access to DVROS.

6. ***Audit standards.*** Courts that have access to CLETS are subject to periodic audits by the DOJ to monitor how the court safeguards the database information. The AOC and local courts should recommend that the DOJ standardize CLETS audit procedures statewide.

7. ***Training standards.*** The AOC and local courts should recommend that the DOJ establish a training program unique and specific to the needs of court staff who handle restraining orders. Local courts should ensure that staff receive adequate training, including access to CLETS-related training and informational Web sites.

8. ***Data collection.*** The AOC should provide the courts with guidelines for collecting domestic violence statistics. Each court should maintain domestic violence statistics to better inform the justice system and to support the development of domestic violence policy. Statistical information should be available regarding the number of EPOs issued, the number of temporary restraining orders requested and granted, the number of restraining orders granted after hearing, the number of children involved, proofs of service filed, and the number of reissuances. The AOC should encourage participation in its Judicial Branch Statistical Information System (JBSIS), and design of the California Court Case Management System (CCMS) should incorporate the required statistical information.

**Interim Proposals**

9. ***Restraining order registry.*** Courts are encouraged to participate in the CCPOR when it becomes available.[17] This will provide the judicial branch and law enforcement with the ability to access and view full-text orders issued throughout the state. CCPOR should be included in the design of the CCMS.

10. ***Computer-generated orders.*** The AOC should continue to explore the design of computer-generated orders that will be able to interface with the CCMS, and it should also evaluate existing forms for ease and accuracy of data entry. Local courts are encouraged to explore the feasibility of using the Judicial Council's Family and Children's Court Technology (FACCTS) to produce computer-generated orders after hearing.

11. ***Service of orders.*** Using a collaborative process with justice system partners, each court should evaluate ways to improve procedures for prompt and effective service of orders and take steps to facilitate prompt service and entry of service into DVROS.

---

[17] See footnote 2.

**Long-Term Proposals**

12. ***Integration with CCMS.*** The AOC and local courts should work together to establish a seamless process from the point that the order is granted to its entry in DVROS, using an automated process that is integrated into the CCMS. AOC staff should work together to ensure that relevant domestic violence information is included in the CCMS data elements.

**Domestic Violence Criminal Procedure**

The June 2005 report to the California Attorney General from the Task Force on Local Criminal Justice Response to Domestic Violence, entitled *Keeping the Promise: Victim Safety and Batterer Accountability,* outlines a series of problematic practices and recommendations relating to the adjudication of criminal domestic violence cases. Among these are the following highlights, which point out systemic problems but also pertain primarily to court practice and procedure:

- Arraignment, plea, and sentencing without prosecutors in attendance;
- Sentences that appear to be out of compliance with Penal Code section 1203.097 relating to mandatory terms and conditions of probation;
- Widespread apparent failure to complete batterer intervention programs; and
- Asserted inadequacy of monitoring and follow-up regarding compliance with terms and conditions of probation.

The task force looked at the entirety of criminal procedure in domestic violence cases, from filing through postconviction proceedings. The following proposals are the result of the task force inquiry. They seek to address issues raised in the 2005 report and to improve practices in these cases generally. The proposals include mandatory provisions required by statute or rule as well as advisory practices. The proposals, taken as a whole, form a useful chronology of required and aspirational practices for the criminal law judicial officer in domestic violence cases.

We note that implementation of the statutory framework underlying Penal Code section 1203.097 depends on adequate funding and full functioning of county probation departments as necessary to ensure the defendant's opportunity to successfully complete probation. Because the successful completion of probation directly and positively affects public safety and the safety of domestic violence victims, the presence of fully funded probation services in each jurisdiction is a necessary element of an effective criminal justice response to domestic violence. Although neither the Judicial Council nor the task force has direct authority for the funding of probation services, the task force submits that without increased and adequate funding of this vital component, full accountability for domestic violence offenders placed on probation will remain elusive.

Recommended guidelines and practices in the area of criminal procedure follow.

**Administration Procedures**

1. ***Administration of criminal domestic violence cases.*** Each court should ensure that the following administrative procedures are followed with respect to domestic violence cases:

   a. The judicial review of the bail schedule should include consideration of issues relating to domestic violence;

   b. The court should collaborate with the chief probation officer to ensure that the functions of probation delineated in Penal Code section 1203.097 are adequately

performed, including duties to monitor the defendant's compliance with the terms and conditions of probation and to certify batterer intervention programs; and

c. In conjunction with the duties enumerated in rule 227.8 of the California Rules of Court, the court should ensure that issues relating to practice and procedure in domestic violence cases are identified and discussed in regular meetings with criminal justice agencies. Additional participants in the regular meetings should include both victim advocacy organizations and local batterer intervention programs to ensure communication and consultation between the court and the organizations involved in probation of convicted batterers.

d. In accordance with Penal Code section 136.2(e)(1), the court's records of all criminal cases involving domestic violence shall be marked to clearly alert the court to consider issuance of a protective order on its own motion.

**Pretrial**

**Bail release considerations**

2. ***Bail schedule.*** Every county must adopt and review a bail schedule. (Required by Pen. Code, § 1269c.)

3. ***Standardized procedure.*** To enhance public safety in domestic violence cases, local courts should work with probation, pretrial services, and law enforcement agencies to develop a standardized procedure for setting bail so that the court receives the following information: (1) requests for increased bail, (2) indication of relationship between defendant and victim, (3) indication of whether a firearm was involved, (4) description of weapons seized, (5) sources of information regarding crime and firearms present, and (6) indication of whether children were involved or were witnesses.

4. ***Law enforcement policy.*** For all domestic violence arrests, law enforcement should adopt a policy that does not allow own recognizance (OR) or cite and release procedures unless a court hearing is conducted. (Pen. Code, § 1269c, requests for increased bail.)

**Hearing procedures**

5. ***Hearing purposes.***
   a. Under Penal Code section 1270.1(a), at arraignment or at any other stage of the proceedings, bail must not be reduced and release on OR must not be granted without a hearing for any person charged with:

   - Penal Code section 136.1: Intimidating a witness;
   - Penal Code section 243(e)(1): Battery against a spouse, cohabitant, person who is the parent of the defendant's child, noncohabiting former spouse, fiancée, or a person with whom the defendant currently has or has previously had a dating relationship;
   - Penal Code section 262: Spousal rape;
   - Penal Code section 273.5: Corporal injury;

32

- Penal Code section 273.6: Knowing violation of a protective order under specified circumstances;
- Penal Code section 422: Felony violation of a threat to an immediate family member; or
- Penal Code section 646.9: Stalking.

b. The prosecution must be afforded two court days' written notice of the hearing and an opportunity to be heard. (Pen. Code, § 1270.1(b).)

c. If bail is otherwise set than is provided in the bail schedule, the record must reflect the reasons for the court's decision and address the issue of threats to the victim and victim safety. (Pen. Code, § 1270.1.)

6. *Local variations.* The timing and procedures for setting bail and the bail amount may vary from jurisdiction to jurisdiction, but the court should nevertheless obtain all relevant information.

7. *Appearance within 48 hours.* If bail is posted, the defendant should be directed to appear within 48 hours for arraignment.

## Arraignment

8. *Defendant's appearance.* Defendant's presence at arraignment is mandatory. (Required by Pen. Code, § 977.)

9. *Procedures.* Practices recommended to assist the court in determining whether to issue a CPO and in setting bail include the following:
   a. Defense counsel and prosecution should be present at arraignment;
   b. All probation violations should be calendared with the arraignment to ensure that the court revokes probation as appropriate;
   c. Prosecution, OR services, or the probation department, as appropriate, should contact the victim prior to arraignment;
   d. Gun ownership should be determined from DOJ records;
   e. Issuance of a CPO should be considered; and
   f. Firearms relinquishment should be ordered. (Pen. Code, § 136.2(7)(B).)

## Setting bail

10. *Bail sufficient to ensure appearance and protect victim.* If the defendant is arrested for violating a domestic violence restraining order, the court may deny bail or set bail at any amount that it deems sufficient to ensure the defendant's appearance or the protection of the victim or the victim's family members. (Pen. Code, § 1269c.)

11. *Notice to prosecutor.* When a defendant charged with Penal Code section 646.9 is released on bail, the sheriff must notify the domestic violence unit of the prosecutor's office in the county where the victim resides. (Pen. Code § 646.9(a).)

12. ***Notice to victim.*** If there is a request to lower bail, the prosecutor must make all reasonable efforts to notify the victim, and the victim is entitled to attend the hearing. The court should inquire whether the prosecutor has been successful in notifying the victim. (Pen. Code, § 646.93(b).)

13. ***Additional conditions.*** The court may consider imposing additional conditions. For example:
   a. Defendant cannot initiate contact with the victim;
   b. Defendant cannot initiate contact with the children;
   c. Defendant must not knowingly go within a specified distance of the victim or his or her workplace or home;
   d. Defendant must not knowingly go within a specified distance of the children's school;
   e. Defendant must not possess a firearm;
   f. Defendant must obey all laws;
   g. Defendant may be obligated to wear an electronic monitoring device;
   h. Defendant must notify the court of his or her address and telephone number at home and work (Pen. Code, § 646.93(c));
   i. Defendant must refrain from the use of alcohol or other drugs; and
   j. Defendant must report to the court all law enforcement contacts.

14. ***Factors in setting, modifying, or denying bail.*** The court should consider the following factors:
   a. Seriousness of offense charged;
   b. Defendant's character (previous criminal record);
   c. Probability of defendant appearing at hearing or trial;
   d. Alleged threats to the victim or to a witness to the crime charged;
   e. Alleged use of a firearm or other deadly weapon in the commission of the crime charged; and
   f. Alleged use or possession of a controlled substance by the defendant. (Pen. Code, § 1269b.)

15. ***Relevant information.*** Whenever bail is set, reduced, increased, or denied, the court should attempt to obtain and review all relevant information. This includes:
   a. All other pending cases, including probation violations as a result of this case;
   b. Rap sheet and probation or parole status;
   c. Existing and previously issued protective or restraining orders where the defendant is the restrained party;
   d. Any prior failures to appear;
   e. Statements by victims;
   f. Whether children were present or if there are visitation issues;
   g. All information about the status of family, juvenile, probate, or other court orders that may exist;
   h. Firearms registry information from AFS;
   i. Prior unreported incidents of domestic violence; and
   j. Use of alcohol or drugs or prior history of mental illness.

34

**Release on own recognizance (OR)**

16. ***Investigative report.*** In all cases involving violent felonies, if there is an investigative staff, a written report is required to be given to the court concerning outstanding warrants, any prior failures to appear, the criminal record of the defendant, and the defendant's residences during the last year. (Pen. Code, § 1318.1.) Funding for such staff should be provided.

17. ***Reasons for deviation from schedule.*** If bail is set in an amount other than that provided for in the bail schedule, the record must reflect the reasons for the court's decision.

**Issuing CPOs pretrial**

18. ***Grounds for order.*** A stay-away order should be issued when it is shown that there is good cause to believe that harm to, intimidation of, or dissuasion of a victim or witness has occurred or is likely to occur. The order should be issued on the required Judicial Council form (CR 160). (Pen. Code, § 136.2.) (Note that in *People v. Stone* (2004) 123 Cal.App.4th 153, the court required additional evidence that a victim or witness had been intimated or dissuaded from testifying or that there was a likelihood that it would occur. It is not clear whether this would apply in a case involving a domestic violence crime. Although *People v. Stone* may be distinguishable in domestic violence cases, the question has yet to be addressed in a published opinion.)

19. ***Reasonable restrictions.*** The court must consider issuing protective orders on its own motion. The court may impose reasonable restrictions, including restricting the defendant's access to the family residence and barring communication by the defendant or defendant's agent with the victim, except through an attorney. (Pen. Code, § 136.2(d).)

20. ***No-contact orders.*** No-contact orders may be issued in domestic violence cases as a condition of release on OR and as an independent order. (Pen. Code, §§ 1275, 1318 (a)(2), or 136.2.)

21. ***Additional considerations.*** In addition to the considerations listed above in "Setting bail," the court should consider the following:
    a. Ascertain whether the defendant has any firearms;
    b. Determine if the CPO conflicts with the family court order and advise the defendant that the criminal order controls;
    c. Serve the CPO on the defendant and the victim, if present, in open court. If the protected party is not present in court, the court should request the prosecutor to mail a copy of the order to the protected party; and
    d. Advise the defendant that violation of the CPO may result in additional charges and in immigration consequences.

**Trial**

**Trial setting**

22. ***Case management.*** After arraignment, the court should set a pretrial conference, at which the court should consider the following:

    a.  Settlement;

    b.  Issuance of a stay-away order under Penal Code section 136.2 if there have been new threats or intimidation;

    c.  Changes in bail, if appropriate;

    d.  Any new information disclosed by counsel; and

    e.  Setting the case for preliminary hearing or misdemeanor jury trial.

**Continuances**

23. ***Good cause.*** Good cause for continuance in domestic violence cases includes unavailability of the prosecutor because of a conflict with another trial, preliminary hearing, or motion to suppress. The continuance must be limited to a maximum of 10 additional days. (Pen. Code, § 1050(g)(2).)

24. ***Facts supporting good cause.*** The court must state on the record facts constituting good cause for a continuance. (Pen. Code, § 1050(f).)

25. ***Continuances are discouraged.*** Domestic violence cases should have high priority. Continuances are strongly discouraged, and motions for continuances must comply with the requirements of Penal Code section 1050.

**Dismissal/Refiling**

26. ***Refiling within six months.*** If the court dismisses a misdemeanor domestic violence case because the victim failed to appear in response to a subpoena, the case may be refiled within six months. This section may be invoked only once in each action. (Pen. Code, § 1387(b).)

**Evidentiary issues**

27. ***Confidential communications.*** Communications between the victim and the domestic violence counselor are confidential. The following factors are to be considered by the court to determine whether a person qualifies as a domestic violence counselor:

    a.  Is the person: employed by an organization under Welfare and Institutions Code section 18294?

    b.  Does the person have any of the following:

- Master's degree in counseling or a related field;
- One year of experience in counseling (a minimum of six months must be in domestic violence counseling);
- Credentials as a psychotherapist under Evidence Code section 1010; or
- Experience as an intern, trainee, or other person with a minimum of 40 hours of domestic violence training under someone with a master's degree in counseling or a related field or someone who has one year of counseling

experience, of which a minimum of six months is in domestic violence counseling. (Evid. Code, § 1037–1037.7.)

28. ***Evidentiary exclusion of privileged information.*** At the trial or preliminary hearing, the court may exclude privileged information from a domestic violence counselor on its own motion if neither the witness nor the party can claim the privilege. (Evid. Code, § 916.) The court should ask the prosecutor if there is any undisclosed statement for which the privilege is asserted. If the victim has not authorized the prosecutor to assert the privilege or is not present to make the assertion, the prosecutor can assert the privilege under Evidence Code section 916. (Evid. Code, § 1040(b)(2).)

29. ***Burden of proof.*** The claimant of a privilege has the burden of proving (a) the existence of the relationship, (b) standing to claim the privilege, and (c) that the offered evidence is a confidential communication within that relationship. (Evid. Code, § 1037.)

30. ***Disclosure prohibited.*** Disclosure of the address or telephone number of victims and witnesses is prohibited. (Pen. Code, § 1054.2.)

31. ***Special needs.*** The court should ensure that the special needs of certain victims or witnesses are taken into consideration. Examples might include the needs of the elderly, children, or dependent adults.

**Discovery**

32. ***Medical records.*** In addition to the requirement that the prosecutor turn over all possibly relevant evidence to the defense, any medical record of the victim or defendant related to the domestic violence is discoverable in a domestic violence criminal case. (Pen. Code, §§ 1054–1054.8; Evid. Code, § 998.)

33. ***Protocols for access to information.*** Disclosure to the defendant of the address and contact information of the victim or witness is prohibited. Under Penal Code section 964, courts are to develop protocols with local law enforcement regarding restricting access to victim and witness personal identifying information contained in police reports filed with the courts. (Pen. Code, §§ 841.5(a), 964, and 1054.2.)

**Jury selection in domestic violence cases**

34. ***Larger juror panel.*** The court should consider calling a larger juror panel than in other types of cases because many potential jurors in domestic violence cases may have been victims of or witnesses to domestic violence, or their family or close friends may have been victims or witnesses.

35. ***Juror privacy.*** The court should respect the privacy of jurors in voir dire. For example:

   a. The option of being questioned on the record but outside the presence of other jurors should be offered;

    b. Jurors should be informed that questionnaires, transcripts, and juror records are not confidential unless sealed by court order;

    c. For juror safety, the court should not release juror addresses; and

    d. The court should refer to jurors by number rather than by last name.

**Victims**

36. ***Victim's right to a support person.*** The alleged victim is entitled to have a support person or family member present at the hearing. (Pen. Code, §§ 868, 1102.6.)

37. ***Victim's right to be present.*** The victim has a limited right to be present at all stages of the criminal proceedings except when subpoenaed as a witness. (Pen. Code, § 1102.6(b)(1).)

38. ***Victim protections.*** The court should consider applying the statutory protections available to sexual assault victims to domestic violence cases involving sexual assault charges. If the court does apply these protections, it should state its reasons for doing so on the record.

39. ***Hearsay evidence.*** Each court should be cognizant of the limitations of hearsay evidence under the United States Supreme Court opinion in *Crawford v. Washington* (2004) 541 U.S. 36. Under *Crawford,* statements are generally inadmissible if the declarant is not present, if the statement is "testimonial," and if the victim has not been previously cross-examined. The California Supreme Court has accepted review for numerous cases addressing hearsay issues under *Crawford*.

40. ***Testimony of victim.*** If a victim is reluctant to testify, the court should attempt to discover the reasons for the victim's reluctance and to determine whether the victim has been coerced or intimidated. To assist in this process, the court should consider the strategies and questions outlined in the *California Judges Benchbook: Domestic Violence Cases in Criminal Court* (3rd ed., §§ 4.24 and 4.25, pp. 84–86).

**Compelling participation or testimony**

41. ***Contempt.*** The first time a domestic violence victim refuses to testify in a case, the victim cannot be incarcerated for contempt of court. If the court holds a domestic violence victim in contempt for refusal to testify, the order must be stayed pending filing of a petition for extraordinary relief to determine the lawfulness of the court's order. Such orders are given a three-day stay of execution. (Code Civ. Proc., § 128(e).) The court can also order 72 hours of domestic violence counseling or "appropriate community service." (Code Civ. Proc., § 1219(c).)

**Dispositions**

**Sentencing**

42. ***Fines.*** Courts must consider whether the defendant is able to pay a fine or restitution to the victim or to the Restitution Fund as a condition of probation, and the amount thereof. (Pen. Code, § 1203(b)(2)(D)(ii).)

43. ***Restitution.*** Restitution to the victim is primary even if the defendant is ordered to repay other costs such as public defender and probation fees. (Pen. Code, § 1202.4(f)(2).)

**Probation**

44. ***Probation***. If the defendant is convicted and placed on probation for conduct perpetrated against any of the persons defined in Family Code section 6211 and the conduct could be enjoined under Family Code section 6320, the court must impose all of the terms and conditions of probation set forth in Penal Code section 1203.097. Persons defined under Family Code section 6211 are:

   a.  Spouse or former spouse;
   b.  Cohabitant or former cohabitant;
   c.  Person the defendant is dating or has dated;
   d.  Mother or father of the defendant's child;
   e.  A person related by blood or marriage within the second degree; or
   f.  A registered domestic partner or former registered domestic partner (See Fam. Code § 297.5).

45. ***Discretionary terms and conditions of probation***. The court also may consider imposing additional terms and conditions of probation, such as:

   a.  Prohibiting the use of alcohol and other drugs;
   b.  Permitting law enforcement to search and seize all firearms in the defendant's possession; and
   c.  Requiring attendance at parenting classes.

46. ***Oral advisement.*** At the time a defendant is convicted and placed on probation, the court should orally advise the defendant and explain the specific terms and conditions of probation, including all firearms restrictions. This should occur whether or not the defendant has signed a written probation agreement.

47. ***Batterer's intervention programs.*** A 52-week intervention program must meet the following requirements:

   a.  The program must be approved by the probation department;
   b.  The defendant must enroll within 30 days of sentencing or release date;
   c.  The program must provide periodic progress reports at least every 3 months;
   d.  The defendant must complete the program within 18 months of enrollment;
   e.  The defendant can have only three unexcused absences; and
   f.  The court cannot waive program fees, but the court must consider the defendant's ability to pay and ensure that a program with a sliding fee scale is available. (Pen. Code, § 1203.097.)

48. ***Protective orders.*** A protective order under Penal Code section 1203.097 is mandatory to protect "the victim from further acts of violence, threats, stalking, sexual abuse, and harassment." (Pen. Code, § 1203.097(a)(2).)

49. ***Protective order provisions and procedures.*** The protective order:

    a.  Must prohibit violence, intimidation, or threats;

    b.  May prohibit contact with the victim;

    c.  May allow contact for visitation allowed by custody order;

    d.  Must be issued on the mandatory Judicial Council CPO form, *Criminal Protective Order—Domestic Violence,* (form CR-160) for any order issuing, modifying, extending, or terminating a CPO, including probation conditions; and

    e.  Must be kept by the court in the original in the court file. (Pen. Code, §§ 136.2, 1203.097.)

50. ***Notice.*** Penal Code section 1203.097(a)(3) provides that if probation has been granted, the victim is to be notified of the disposition of the case. Prosecutors should provide this notice because they have (or have access to) the victim's address and the court often does not. Moreover, if the court were to give this notice, the notice, including the victim's address, could become a publicly accessible court record that may jeopardize victim safety.

51. ***Restitution fine.*** On probationary sentences, the court may increase the amount of the restitution fine above the statutory minimum, and if all the conditions of probation are satisfied, the court can then waive the elevated fine. On the other hand, if probation is revoked, the court has the flexibility to impose a restitution fine other than the statutory minimum.

52. ***Review of other orders.*** Before sentencing, the court should review all orders regarding the defendant in any related family law matter and in all other relevant cases.

## Protective Orders Generally

53. ***Firearms restrictions.*** The court must make all applicable firearm restriction orders under state and federal law. (Pen. Code, § 136.2(a)(7)(A).)

54. ***Cases involving children***. In a case involving children, a court that issues a CPO either pretrial or as a term of probation should consider whether to provide for peaceful contact between the restrained person and the protected person for the safe exchange of the children under an existing or future family law order. For this purpose, the court may consider whether to check the appropriate box on the Judicial Council mandatory form, *Criminal Protective Order—Domestic Violence* (form CR-160).

55. ***Entry into DVROS.*** CPOs; orders to modify, extend, or terminate CPOs; and proofs of service of CPOs must be entered in DVROS by the court or its designee within one business day. (Pen. Code, § 136.2(a)(7)(A); Fam. Code, § 6380(a).)

56. ***Copies.*** All interested parties must receive a copy of the CPO. (Pen. Code, § 136.2(e)(1).)

57. ***Procedure to retrieve belongings***. Each court should encourage the establishment of a local law enforcement procedure to allow a restrained person who is restricted from his or her residence to safely retrieve personal belongings.

58. ***Modification or termination of a CPO.*** If a protected person or a defendant requests modification or termination of a CPO, the court should consider referring the protected person to a domestic violence advocate or other support person for the purpose of discussing the safety implications of the request. If the request is submitted to the court after sentencing, the prosecutor must be given an opportunity to respond to the request. (Pen. Code, § 1203.3.) The court should conduct a hearing at which the prosecutor and defense counsel are present to determine whether the person requesting the modification or termination is in fact the protected person, whether there is good cause for the modification or termination, and whether the modification or termination request, if made by the protected person, is voluntary and not a result of coercion or duress. Other factors the court should consider include (1) the reason for the request, (2) the existence of a safety plan for the protected person, (3) whether the defendant is participating in a batterer's intervention program, and (4) the impact on any children who are in the home. The court also may wish to consider conducting its inquiry in an alternate setting, such as requesting a waiver of the defendant's appearance and conducting a reported chambers interview with the victim or requesting a probation officer or domestic violence counselor to conduct the interview. If the court modifies or terminates the order, the court should ensure that the modification or termination is memorialized on the mandatory Judicial Council form, *Notice of Termination of Protective Order in Criminal Proceedings (CLETS),* (form CR-165, and duly entered into DVROS.

59. ***Expiration.*** CPOs issued under Penal Code section 136.2 expire on or before the date that criminal jurisdiction over the defendant terminates. (*People v. Stone* (2004), 123 Cal.App.4th 153.) If criminal jurisdiction over the defendant terminates early, a *Notice of Termination of Protective Order in Criminal Proceedings* (CR-165) must be entered into DVROS within one business day. However, new legislation, effective January 1, 2008, provides for the issuance of a CPO for a period of up to 10 years for conviction of certain specified domestic violence crimes whether or not the defendant is sentenced to probation or state prison. (See Assem. Bill 289; Stats. 2007, ch. 582).

60. ***Local rule for communication.*** The court must promulgate a local rule delineating the procedure for communication among courts issuing or modifying CPOs and courts issuing orders involving child custody and visitation. (Pen. Code, § 136.2(f); Cal. Rules of Court, rule 5.450.) Courts also must delineate a similar procedure for communication among courts issuing or modifying CPOs and courts issuing civil or other restraining orders involving the same parties.

**Postconviction**

61. ***Assessment***. As soon as feasible after a defendant is convicted and placed on probation, the court or a designated justice system agency, such as probation program or

a batterer intervention program, should conduct an initial lethality assessment and should determine whether the defendant's ability to comply with the terms and conditions of probation is affected by mental health or substance abuse problems.

62. ***Progress reports.*** The court should order the defendant to appear at a review hearing within 30 days of placing the defendant on probation, at which time the court should determine whether the defendant is in compliance with the terms and conditions of probation. Further, the court must receive "periodic progress reports . . . every three months or less" regarding the defendant's participation in the batterer intervention program. (Pen. Code, § 1203.097(a)(6) and (c)(1)(O)(ii).) Judicial Council form, *Batterer Intervention Progress Report* (form CR-168,), should be used by the probation department or the program provider to periodically inform the court of the defendant's progress in the program.

63. ***Final evaluation.*** The court must receive a "final evaluation that includes the program's evaluation of the defendant's progress" in the batterer's intervention program and the program should also inform the court as to whether the fees for the program and any restitution have been paid. (Pen. Code, § 1203.097(c)(1)(O)(iii).)

64. ***Defendant's appearance during probation.*** The court should consider requiring the defendant to appear for periodic progress reports during the probationary period. This appearance may help increase compliance with the probationary conditions. After an initial appearance, courts may consider waiving the appearance requirement if the defendant is in full compliance.

65. ***Graduated sanctions.*** The court should consider graduated sanctions for probation violations, including the failure to comply with the condition requiring attendance at a batterer intervention program. Graduated sanctions take into account the totality of the circumstances of the defendant's performance and progress while on probation, as well as the impact on the victim. By using graduated sanctions, the court maintains discretion and flexibility in addressing the unique circumstances in each case.

66. ***Role of probation***. In addition to the statutory duties of the probation department set forth in Penal Code section 1203.097, probation can be helpful to the court in the following ways:

   a. Conducting assessments regarding lethality, mental health, and substance abuse;
   b. Conducting an orientation to the batterer intervention program;
   c. Evaluating the probationer's ability to pay the fee for the batterer intervention program; and
   d. Maintaining regular communication with batterer intervention programs to determine the progress and status of the probationers and to improve the administration of the programs.

The defendant's successful completion of the terms and conditions of probation and therefore the rehabilitation of the defendant, public safety, and the safety of the victim are directly tied to the involvement of the probation department and probation officer.

Accordingly, the court should advocate for adequate funding for probation services needed to appropriately review and certify programs that meet the statutory requirements and those that provide services necessary to monitor, supervise, and counsel the defendant.

## Sources Consulted
### Court Surveys
Center for Families, Children & the Courts (CFCC). Case Flow Management Survey. 2005.

_____. Clerks Survey. 2005.

_____. Family Law Judicial Officer Survey. 2005.

_____. Presiding Judges Survey. 2005.

### Publications
*California Judges Benchbook: Domestic Violence Cases in Criminal Court,* 3rd ed. Berkeley, Calif.: Continuing Education of the Bar, 2003.

Conference of State Court Administrators. *Safety and Accountability: State Courts and Domestic Violence. White Paper on Domestic Violence and the Role of the State Courts.* July 15, 2004.

Judicial College of Arizona. *Benchbook for Orders of Protection and Injunctions Against Harassment in Domestic Violence Cases.* September 1996.

Lovik, Mary M., J.D. *Domestic Violence Benchbook: A Guide to Civil and Criminal Proceedings.* Michigan Judicial Institute. 1998.

National Council of Juvenile and Family Court Judges. *A Guide for Effective Issuance and Enforcement of Protection Orders.* 1999.

_____. *Family Violence: Improving Court Practices—Recommendations From the National Council of Juvenile and Family Court Judges' Family Violence Project.* 1990.

*New Hampshire District Court Domestic Violence Protocols.* 2002.

Sack, Emily, J.D. *Creating a Domestic Violence Court: Guidelines and Best Practices.* Family Violence Prevention Fund. 2002.

State of New Jersey. *Domestic Violence Procedures Manual.* November 1998.

Task Force on Local Criminal Justice Response to Domestic Violence. *Keeping the Promise: Victim Safety and Batterer Accountability. Report to the California Attorney General.* June 2005.

Washington State Supreme Court Gender and Justice Commission. *Domestic Violence Manual for Judges.* 2001.

Attachment:

# THE PRESIDING JUDGES' WHITE PAPER
# ON DOMESTIC VIOLENCE

## The Role of the Presiding Judge in the Administration of
## Domestic Violence Cases
December 13, 2007

> Our goals are to ensure fair, expeditious, and accessible justice for litigants in these critical cases and to promote both victim safety and perpetrator accountability.
>
> Courts must help to ensure that claims of domestic violence can be fully and fairly presented for adjudication, and then, once such claims are found to be true, that victims can receive appropriate assistance, and defendants can be provided the tools to break the cycle.
>
> —Chief Justice Ronald M. George[18]

We commend the Domestic Violence Practice and Procedure Task Force, appointed by Chief Justice Ronald M. George in September 2005, for its leadership and work in developing guidelines and recommended practices and procedures. In the last year the members have done an admirable job of collecting information and input from as many stakeholders as possible from across the state. As presiding judges we support the task force's proposals.[19] We recognize that the proposals, viewed collectively, fit squarely within the Judicial Council's strategic goals of access, fairness, and diversity; independence and accountability; modernization; quality of justice and service to the public; education; and building the requisite infrastructure to support those goals. We also recognize that the proposals are guided by the findings contained in the Judicial Council's study on public trust and confidence in the courts,[20] which emphasize the public's need for an opportunity to be heard and an understanding of court proceedings. In order for the approved task force recommendations to become a reality and achieve implementation in each of our courts, the presiding judges in every county, large and small, must play a leadership role.

---

[18] Judicial Council of California News Release, September 13, 2005, *Chief Justice Names New Statewide Task Force on Domestic Violence.*

[19] See Judicial Council of Cal., Advisory Com. Rep., *Domestic Violence Practice and Procedure Task Force Draft Guidelines and Recommended Practices for Improving the Administration of Justice in Domestic Violence Cases* (Jan. 2007).

[20] David B. Rottman & Nat. Center for State Courts, *Trust and Confidence in the California Courts: A Survey of the Public and Attorneys* (Part I: Findings and Recommendations) (Judicial Council of Cal., Admin. Off. of Cts., 2005).

We believe that presiding judges, in partnership with court executive officers, are willing to accept the leadership challenge to advocate for the proper handling of domestic violence cases in our courts. At the same time, we believe we must provide a view of the regular functions and duties of presiding judges through a new lens—one that focuses on the ways presiding judges can improve the administration of justice in domestic violence cases. We join with the task force in its effort to implement standardized procedures and practices in handling domestic violence cases.

## CRITICAL FOCUS AREAS FOR PRESIDING JUDGES

## Leadership

Many significant legislative and other mandates govern the administration of domestic violence cases. Some of these mandates do not dictate the way in which judicial decisions are made but they do affect court operations. The mandates can range from the duty to ensure that restraining orders are promptly and accurately entered into the statewide Domestic Violence Restraining Order System to the design of court programs that provide adequate self-help services to both parties in a domestic violence proceeding or access to review restraining order applications on a 24-hour basis. Even these few examples demonstrate that the entire administration of the court—from facilities to technology, to employment to security—can be implicated. Mandated responsibilities like these cannot be handled by the individual judge or court employee. Rather, they fall within the authority and responsibility of the court's executive team—the presiding judge and the court executive officer.

As presiding judges we need to be actively involved in key areas. We recognize that each court must select the appropriate way to implement the task-force's proposals and that it is a presiding judge's responsibility to design the court's individual response to domestic violence cases. We suggest that each court's approach should maximize services, allocate resources wisely, and maintain accountability.

To ensure that courts comply with mandates promulgated to increase safety and accountability, the presiding judge and court executive officer should maintain a system of internal self-assessment and audits so that the court is continuously monitoring its own progress. Perhaps more important, the local courts themselves, if they pursue a course of internal assessment, will be able to develop sound practice and procedures to voluntarily improve the administration of justice in these cases consistent with their unique local structure and needs. Critical to this process is the gathering of information on a local level so that sound policy decisions will be made. When local courts' internal monitoring and needs assessments are in place and when they are coupled with communication and outreach to justice system partners, the judicial branch as a whole is in a better position to govern its own affairs in service to the public. Other agencies of government will be far less likely to impose or suggest changes that do not properly or easily fit within the court environment.

## Providing a Feedback Loop on Practice and Procedure Within the Court, the Justice System, and the Greater Community

Presiding judges should ensure that the court and the appropriate judicial officers convene regular meetings with domestic violence community stakeholders. Although the models and titles vary slightly by county, many courts have embraced an active and regular relationship with stakeholders for years.

Generally the counties with experience report that these meetings are a good forum for:

- Facilitating communication;
- Collaborating on innovative ideas;
- Educating stakeholders on procedures in domestic violence court;
- Improving ongoing procedures; and
- Enhancing contributions of resources from other than the court.

Judges must be aware of potential ethical issues, but most who have participated in these collaborative meetings report that ethical pitfalls are easily avoided. Judicial leadership helps ensure that agenda items are appropriate and productive and enhance the public's perception of the court.

As ethically appropriate, the court should participate in domestic violence coordinating councils or court-convened committees that provide an opportunity for justice system partners to comment on court practice and procedure relating to domestic violence cases and that provide a mechanism for improving these practices and procedures.

The leadership of the presiding judge is essential in implementing these vital proposals for working with justice system entities and community organizations.

## Enhancing Courtroom and Court Facility Security

**Courtroom Security**—Presiding judges must recognize that courtroom violence most commonly occurs in the family law court or the domestic violence court. In order to maximize the safety of litigants and court staff, courtroom security must be the highest priority. This requires a team effort, among the presiding judge, the court executive officer, and the law enforcement agencies responsible for courtroom security.

In these high-conflict courtrooms there is a large percentage of self-represented litigants who have no attorney to express or manage their emotions. These courtrooms often have high-volume calendars, so they are packed with litigants who have a large emotional stake in the proceedings with no barriers to the parties being in close proximity to each other. It is important that the law enforcement agencies responsible for courtroom security implement policies and procedures that enhance safety in these courtrooms.

Therefore the domestic violence courtroom team should have information on potential problems in advance of the proceedings. Courts should provide CLETS access to the courtroom so that information about all parties in these high conflict cases is available.

**Facility Security**—The areas outside the courtroom should also be addressed. These areas may include, for example, hallways, family court services offices, and parking lots. The law enforcement agencies responsible for courtroom security should provide staffing to the extent feasible so that "protected persons" remain protected after they leave the courtroom.

One of the most significant contributions that the presiding judge can make to security in high-conflict courtrooms is the selection of the judicial officer. Ensuring fairness, remaining patient, and maintaining the appropriate demeanor are particularly taxing challenges in these courtrooms. In the courtroom itself, the judicial officer sets the tone. The judge must keep control of the courtroom while giving both sides a chance to be heard and treating all litigants with respect.

Part of the judge's team is his or her courtroom staff. The court should consider using law enforcement in domestic violence courtrooms. The bailiff should be empowered to call for extra security when needed. The departure of the parties from the courtroom should be staggered. As resources permit, upon request of a protected party, an escort should be provided for a safe departure.

Adequate funding is essential to these security procedures and may not be readily available in some courts. We urge presiding judges to be prepared to advocate for the necessary funding so that every litigant and each member of the court's staff can have the assurance of safety when they enter the court facility.

## Determining the Appropriate Court Structure—Domestic Violence Courts or Dedicated Calendars

Presiding judges have been responsible for developing court proceedings and calendars that focus directly on domestic violence. Specialized calendars in family law and criminal domestic violence cases are becoming the rule rather than the exception in our counties.

We recognize that domestic violence courts do not warrant a "one-size-fits-all" approach; in some counties a dedicated judge and courtroom handle domestic violence cases; others may best be served by using specialized calendars.

These specialized courtrooms and calendars make it easier to:

- Offer victims and children specialized services at the court;
- Ensure that sentences are consistent;
- Obtain critical information before hearing the domestic violence cases (for example, whether any of the parties has a criminal conviction for family violence,

whether a party is currently on probation, and whether a restraining order is currently in force);
- Implement more effective procedures to ensure compliance with court orders, such as periodic reviews for court-ordered domestic violence classes and firearms relinquishment orders;
- Monitor issuance, compliance, and termination of protective orders; and
- Communicate with and leverage valuable resources and contributions by other justice and social service partners.

The challenge for a presiding judge is to embark on a process of analyzing and reviewing his or her current court practices and to embrace the goal of improving the handling of domestic violence cases. Presiding judges and court executives will have to work closely to manage realistic reforms and ensure prompt implementation.

## Making Appropriate Judicial Assignments and Ensuring Adequate Resources for Judicial Officers Assigned to Domestic Violence Cases

The presiding judge has ultimate authority to make judicial assignments. This duty is especially critical in domestic violence court.

Presiding judges should take into account:

- The needs of the public and the court as they relate to the efficient and effective management of the court's calendar;
- The knowledge and abilities demanded by the assignment; and
- The judges' interests.

No other assignment challenges a judge's skills like presiding over domestic violence cases, in part because they come through many doors of our justice system: criminal court, juvenile delinquency, juvenile dependency, and family law. These cases often present complicated legal issues and *always* present the sensitive emotional issues that accompany families in crisis.

Judges who are selected to preside over domestic violence cases need to be provided with support that will improve the court's response in domestic violence cases. That may include:

- Domestic violence information and self-help programs and services;
- Additional staff to coordinate the families and their cases (i.e. CLETS, other court orders);
- Victim services;
- Court interpreters;
- Probation officers;
- Clinicians for the evaluation of drug, alcohol, and mental health problems;
- Public health nurses; and
- Other relevant agencies.

49

Judges need to have trained back-up judges to cover vacations and emergencies. We recommend that temporary judges not be used in domestic violence calendars.

The task force can be helpful in assuring that funding is linked to all best-practices recommendations.

## Providing Public Information in Response to Press Inquiries Regarding Domestic Violence Cases or Policies

As presiding judges we are mindful that the news media are conduits to our ultimate target audience: the public. It is important that judges continue to respond to inquiries from the media and that they receive education and training on dealing with the media in domestic violence cases. Domestic violence cases often fall into the category of high-profile cases. These cases may have overtones that attract the media, at times they may have tragic outcomes, and often they are the subject of adverse attention for the judicial officers hearing them.

A judicial officer handling domestic violence cases may look to the presiding judge for support when unjust criticism is leveled at him or her after making an unfavorable call in a domestic violence case. It is necessary for presiding judges to develop a media strategy that will assist and support judges who have these difficult assignments.

In order to help create public trust and confidence in our courts, it is critical that as presiding judges we are open to inquiries from the public and the media about our court operations and policies.

## Ensuring the Availability of Judicial and Staff Education

An informed and educated judiciary, assisted by a highly qualified staff, is the cornerstone of ensuring public trust and confidence in our courts. Domestic violence cases, with their unique features, may present challenges to achieving this essential goal. It is with the support and encouragement of both the presiding judge and the court executive officer that the courts can achieve it.

Domestic violence allegations may arise in a wide variety of case types, each with a distinctive statutory scheme and technical requirements. Restraining orders, mandatory terms of probation, child custody and visitation determinations, and child maltreatment issues are all examples of the legal settings in which these allegations arise. Thus, judicial educational needs are comprehensive and interdisciplinary. These needs are rendered even more acute when we consider the varied court calendar mechanisms and judicial assignment procedures that exist and the varied experience of the judicial officers who hear these matters on a daily basis.

Challenges for court staff are equally complex since the litigants in these critical cases are often under stress, may be self-represented, and face safety risks. Because of the prevalence of domestic violence in our society, court personnel themselves may have had

personal experience with domestic violence or know colleagues, friends, neighbors, or family members who have, making the competent and neutral performance of court functions that much more difficult.

With the advent of new educational requirements and expectations recently adopted by the Judicial Council, it is imperative for the presiding judge to support education and enable judicial officers and court staff to participate fully in educational opportunities relating to domestic violence cases. Implementing these vital judicial and staff education proposals will require leadership. While it may require a delicate balancing act to ensure that daily court operations are not compromised when judicial officers and staff are participating in training, the presiding judge and court executive officer should facilitate the achievement of this critical goal.

### Ensuring Adequate Funding and Resources

While we applaud many of the best practices urged by the task force, as presiding judges we understand that the key to improvements in our courts is adequate funding. Our ability to implement improvements could be hindered by lack of resources. Thus, many presiding judges may naturally be reluctant to move forward on certain proposals if judicial, staffing, and facilities resources are insufficient. If we want these best practices to become reality in California, then we will need resources—not only additional funding but also those resources, such as additional education, that will yield the needed judicial officers, support staff, and courtrooms to deal with our ever-increasing caseloads.

As presiding judges we must be willing to advocate for these resources at the national, state, and local level. This will include addressing our communities and providing education about what we need and what it will take to get the job done.

We can provide the leadership, but in order for presiding judges to ensure adequate funding and resources we must rely on others to produce the necessary means. Adequate funding for our domestic violence courts and cases sends a message that domestic violence is a community priority.

### CONCLUSION

As presiding judges we have the responsibility to make sure that our courts work toward the goals set forth in this paper. These guidelines should be more than just a "call to action"; they should become an integral part of our judicial responsibilities as presiding judges. It is our mission to ensure that as a branch we make an overall commitment to work together to eradicate family violence. As Chief Justice Ronald George has said, "Courts alone cannot solve the problem of family violence—but they truly can make a difference." [21]

---

[21] Family Violence and the Courts: 10th Anniversary Conference, San Francisco, CA, September 10, 2004.

*This inaugural white paper was developed by the Executive Committee of the Judicial Council's Trial Court Presiding Judges Advisory Committee. The underlying intent of this document is to provide a statement of leadership and to emphasize for courts the critical need to support best practices designed to improve the administration of justice in domestic violence cases. This white paper also delineates ways to implement best practices in this arena and outlines a guide for courts to assess and monitor their progress. The Executive Committee is cognizant that an individual court's ability to implement these practices may be affected by the resources available to that court.*

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| | List of Commentators | | |
|---|---|---|---|
| | **Commentator** | **Comment on behalf of group?** | **Please see under specific topic headings below** |
| | **Emails/Letters** | | |
| 1 | Marc Angelucci | | General |
| 2 | Nicholas Baran | | General |
| 3 | Tara L. Borelli | Yes | General/Criminal Procedure 44 |
| 4 | Daniel Burke | | General/New/Court Leadership #1, Restraining Orders# 14,31 |
| 5 | Katherine Caballero | | Firearms Relinquishment #3/New |
| 6 | Alicia Cortrite | | Criminal Procedure #1 |
| 7 | Emberly Cross | | General/Court Leadership #1,2,3/Restraining Orders # 1,2,4,5,6,7,8,10,13,15,19,20,21,36,22,35,23,24,25,27,29,31,32,33,34,36,37/ CLETS #8/Criminal Procedure #33 |
| 8 | Hon. Leonard Edwards (ret.) | | General/New |
| 9 | Valerie Fercho-Tillery | Yes | CLETS #4,6,7,9/Restraining Orders #12,36,37/Criminal Procedure  #55,59 |
| 10 | Alicia Garcia | | New |
| 11 | Hon. Mary Ann Grilli | | Restraining Orders/Criminal Procedure #18,20,48 |
| 12 | Hon. Laura Halgren | | Restraining Orders # 11,21,37/ Firearms Relinquishment #10,11/ Criminal Procedure #52 |
| 13 | John Hamel | | New |
| 14 | Hon. Arlan Harrell | | Criminal Procedure # 18,19 |
| 15 | Hon. Peggy Hora (ret.) | | Criminal Procedure #44,47 |
| 16 | Hon. Pamela Iles | | General/Court Leadership # 1,2,3, New/ Restraining Orders #6 |
| 17 | Hon. Elisabeth Krant | | Criminal Procedure #18 |
| 18 | Hon. Thomas Trent Lewis | | General/New/Criminal Procedure #44,47/ Restraining Orders # 19,34 |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

<table>
<tr><td colspan="4">**List of Commentators**</td></tr>
<tr><td></td><td>**Commentator**</td><td>**Comment on behalf of group?**</td><td>**Please see under specific topic headings below**</td></tr>
<tr><td>19</td><td>Merritt McKeon</td><td></td><td>General/New</td></tr>
<tr><td>20</td><td>Fariba Nourdjahan</td><td></td><td>New/ Restraining Orders # 2,4,22</td></tr>
<tr><td>21</td><td>Amy N. Paul</td><td></td><td>Restraining Orders #37</td></tr>
<tr><td>22</td><td>Michael Robinson</td><td></td><td>Restraining Orders/New</td></tr>
<tr><td>23</td><td>Crystal Rose Rolon</td><td></td><td>Firearms Relinquishment</td></tr>
<tr><td>24</td><td>Hon. Robert Schnider</td><td></td><td>Restraining Orders # 10,12,24,37</td></tr>
<tr><td>25</td><td>Danielle Scotia</td><td></td><td>General</td></tr>
<tr><td>26</td><td>Barbara Scramstad</td><td></td><td>Restraining Orders # 37</td></tr>
<tr><td>27</td><td>Judy Sheehan</td><td></td><td>General</td></tr>
<tr><td>28</td><td>Mark Surgett</td><td></td><td>New</td></tr>
<tr><td>29</td><td>Diane Wasznicky</td><td></td><td>Restraining Orders # 11, 37/Firearms Relinquishment #10</td></tr>
<tr><td>30</td><td>Tami M. Warwick</td><td>Yes</td><td>Restraining Orders #37</td></tr>
<tr><td>31</td><td>Hon. Rebecca Wightman</td><td></td><td>Restraining Orders # 3,16,31</td></tr>
<tr><td>32</td><td>Jennifer Wyllie-Pletcher</td><td></td><td>General/Court Leadership # 2 Restraining Orders #3,12,11,22, 33, 37/ Firearms Relinquishment #9,14,11</td></tr>
<tr><td></td><td></td><td></td><td></td></tr>
<tr><td></td><td>**Public Hearings**</td><td></td><td></td></tr>
<tr><td>33</td><td>Victoria Adams</td><td></td><td>Court Leadership # 3/ Restraining Orders General/ Firearms Relinquishment New, #5,10,18</td></tr>
<tr><td>34</td><td>Steve Allen</td><td></td><td>General, Restraining Orders General, New, #36/Criminal Procedure</td></tr>
<tr><td>35</td><td>Thomas Alvina</td><td></td><td>New/Firearms Relinquishment/ Criminal Procedure # 42</td></tr>
<tr><td>36</td><td>Art Atherian</td><td></td><td>General</td></tr>
<tr><td>37</td><td>Katherine Caballero</td><td></td><td>Restraining Orders/Firearms Relinquishment</td></tr>
</table>

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| | List of Commentators | | |
|---|---|---|---|
| | **Commentator** | **Comment on behalf of group?** | **Please see under specific topic headings below** |
| 38 | Karen Cooper | | Restraining Orders #14,27,37 |
| 39 | Frank Del Fiugo | | Court Leadership # 2/Criminal Procedure #62,66 |
| 40 | Hon. Becky Dugan | | Restraining Orders #30/ Criminal Procedure |
| 41 | Rosetta Egan | | New/ Court Leadership # 2/Criminal Procedure #47 |
| 42 | Arturo Faro | | Criminal Procedure #1,15,6 |
| 43 | Laura Fry | Yes | General/New/ Court Leadership #3/ Restraining Orders #2,4,5,15,19,21,30,31,34,47 |
| 44 | Dianna Gould-Saltman | Yes | Restraining Orders #10,11,20,31,37 |
| 45 | Olivia Horgan | | Restraining Orders #14,16 |
| 46 | Ed Johnson | | New |
| 47 | Pamela Kallsen | | Restraining Orders #10,11,22,37 |
| 48 | Kate Killeen | Yes | Criminal Procedure #5,14,33,44,66 |
| 49 | Alyce LaViolette | | Restraining Orders General/ Criminal Procedure #47,62,65,66 |
| 50 | Rick Layon | | Firearms Relinquishment/ Restraining Orders #8,37 |
| 51 | Marivic Bay Mabanag | Yes | Restraining Orders #20 |
| 52 | Alison Merrilees | | Restraining Orders #37/Firearms Relinquishment New #5,8,16,14,15 |
| 53 | Hon. Mary Carolyn Morgan | | Court Leadership # 2/ Restraining Orders #16,27,31/ Criminal Procedure New #44,64,65 |
| 54 | Gladys Nagy | | Criminal Procedure #44,47,66 |
| 55 | Nancy O'Malley | | Restraining Orders General |
| 56 | Sharon Panion | | Criminal Procedure |
| 57 | Hon. Philip Pennypacker | | Court Leadership/Criminal Procedure #9,44,47,65,66 |
| 58 | Susan Shawn Roberts | | Restraining Orders General, # 4,8,13,16,11,24,25 |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

|  |  | List of Commentators | |
|---|---|---|---|
|  | **Commentator** | **Comment on behalf of group?** | **Please see under specific topic headings below** |
| 59 | James Rowland | | Criminal Procedure #47/ Restraining Orders #37 |
| 60 | Julie Saffren | | Restraining Orders #4,37 |
| 61 | Cheryl Segal | | Restraining Orders New, 1,5,10,16,22,37 |
| 62 | Eve Sheedy | | New/General/Court Leadership #1,2/ Firearms Relinquishment/Restraining Orders General/ Criminal Procedure # 44,63 |
| 63 | Niki Solis | | New/ Restraining Orders #36,23,28/Firearms Relinquishment/ Criminal Procedure # 13, 65 |
| 64 | Karen Staples | | Court Leadership/Criminal Procedure #66 |
| 65 | Elaine Tipton | | Firearms Relinquishment New, #10 |
| 66 | Undersheriff Larry Waldie | | Firearms Relinquishment General, CLETS General |
| 67 | Hon. Nancy Wieben Stock | | Restraining Orders New, #10 |
| 68 | Beverly Upton | Yes | Restraining Orders New, #35 |
| 69 | Hon. Colleen Toy White | | New/General/Criminal Procedure #1,64,66 |
| 70 | Gary Windom | | General/ Court Leadership #2/Firearms Relinquishment # 10 |
| 71 | Lauren Zorfas | | Restraining Orders General, New |
|  |  | | |
|  | **Advisory Committees and Other Entities** | | |
| 72 | Criminal Law Advisory Committee | Yes | Firearms Relinquishment General, #1, 11, 15 |
| 73 | Domestic Violence Advocates Meeting | Yes | Restraining Orders #4,8,19,24,33/Firearms Relinquishment #9,14 |
| 74 | Glenn Sacks Website [http://glennsacks.com/blog/?p=870 | No | General |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| GENERAL COMMENTS | | |
| --- | --- | --- |
| | | |
| Commentator | Comment Excerpt or Summary: | Task Force Response |
| **Steve Allen**<br>Director of Legal Services<br>Center for Community Solutions<br>San Diego | There is a gender component to conduct that constitutes domestic violence.  More women than men are victims.  Men need to take a more active role in seeking solutions.  (Los Angeles Public Hearing, p. 42) | The task force determined that the draft proposals are and should be gender neutral. |
| **Art Atherian** | The guidelines and procedures should highlight the needs of male victims, the bias against them, and the lack of availability of services.  (Los Angeles Public Hearing, p. 196) | The task force determined that the draft proposals are and should be gender neutral. |
| **Nicholas Baran**<br>Volunteer Legal Services<br>San Francisco Bar Association | The author supports the proposals. | No response required. |
| **Hon. Leonard Edwards (Ret.)**<br>Judge of the<br>Superior Court of California,<br>   County of Santa Clara<br>Judge-in-Residence<br>Administrative Office of the Courts | The author supports the proposals in general. | No response required. |
| **Laura Fry**<br>Attorney,<br>Legal Aid Foundation<br>Los Angeles | We applaud the hard and careful work of the Domestic Violence Practice and ProcedureTask Force.  We hope that our thoughts and the examples below will assist you in your work to transform the guidelines from proposal to reality. | No response required. |
| **Hon. Pamela Iles**<br>Judge of the<br>Superior Court of California,<br>   County of Orange | This commentator wholeheartedly supports the draft guidelines and recommended practices with some suggestions.  "The rest of the recommendations are exemplary, and taken as a whole, will change the course of the courts in ways that we, even with our expertise in the | No response required. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| GENERAL COMMENTS | | |
|---|---|---|
| | | |
| Commentator | Comment Excerpt or Summary: | Task Force Response |
| | system, cannot forsee." | |
| **Hon. Thomas Trent Lewis**<br>Judge of the<br>Superior Court of California,<br>  County of Los Angeles | This commentator generally supported the draft guidelines and recommended practices with some suggestions. | No response required. |
| **Merritt L. McKeon**<br>Attorney at Law<br>Newport Beach | The commentator supports the proposals and provides an additional recommendation. | No response required. |
| **Website of Glenn Sacks**<br>[http://glennsacks.com/blog/?p=870] | Mr. Sacks noted on his website that the task force report lacked a focus on male victims and failed to address the need to prevent false allegations of domestic violence.  This blog generated approximately 200 comments. | The task force determined that the draft proposals are and should be gender neutral and that the regular procedures for determining credibility that apply in domestic violence cases and other cases are sufficient to determine when allegations are false. |
| **Danielle L. Scotia**<br>Member of the Public | The commentator urges reconsideration of her case and complains about alleged inappropriate removal of her children in the course of a dependency proceeding. | The task force has no authority to intervene in individual cases. |
| **Judy Sheehan**<br>Long Beach | This comment expresses disagreement with the outcome in a particular case in which the author was the subject of a criminal prosecution.  The author submits an account of the alleged facts and asserts that the victim in the case manipulated the system and continues to do so. | The task force has no authority to intervene in individual cases. |
| **Gary Windom**<br>Public Defender, Riverside County | The guidelines and recommendations must be balanced and neutral and must not create the appearance of bias. (Los Angeles Public Hearing, p. 97) | The task force agrees with this principle |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**NEW PROPOSALS**
**(Do not fit within the pre-existing categories)**

| Commentator | Comment Excerpt or Summary: | Committee Response |
|---|---|---|
| **Thomas Alvina**<br>Chief Deputy Public Defender<br>Orange County | The task force should conduct a study interviewing victims of domestic violence six months to one year after the disposition of the proceeding involving the alleged domestic violence to evaluate their experiences relating to the court system.  (Los Angeles Public Hearing, p. 184) | The task force determined that this suggestion was not feasible. |
| **Marc E. Angelucci**<br>Attorney,<br>National Coalition of Free Men<br>Los Angeles | Male victims and their children are too often ignored.  The author submits a list of studies to support the assertion that violence is intergenerational and does not affect one gender more than the other. | The task force determined that its proposals are and should be gender neutral. |
| **Tara L. Borelli**<br>Staff Attorney,<br>Lambda Legal Defense and Education Fund | "…changes in the law relating to domestic partners are so significant that they warrant an independent, dedicated section in the Guidelines and Recommended Practices that explains these changes clearly." Family Code section 297.5 (a).  Because of the incidence of negative comments or actions toward gay men and lesbians in the courts, including on domestic violence proceedings and the reluctance of some judicial officers to apply the protections in the Domestic Violence Prevention Act to same-sex partners, the draft guidelines and recommended practices should include a strong statement that domestic violence victims must be afforded fair and equal access to the courts regardless of their sexual orientation.  Citing "Sexual Orientation Fairness in the California Courts, Final Report of the Sexual Orientation Fairness Subcommittee of the | The task force agreed with this suggestion and revised its proposals accordingly. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| NEW PROPOSALS<br>(Do not fit within the pre-existing categories) | | |
|---|---|---|
| Commentator | Comment Excerpt or Summary: | Committee Response |
| | Judicial Council's Access and Fairness Committee" (January 2001) | |
| **Emberly Cross**<br>Coordinating Attorney<br>Cooperative Restraining Order Clinic<br>San Francisco | The task force should propose draft guidelines and recommended practices under the specific topic of child custody and visitation in cases in which domestic violence is an issue.  This is an important area intertwined with restraining orders and should be addressed by the task force. | Although the task force agreed that these issues are of critical importance, it determined that the issues are beyond the scope of the task force charge. |
| **Hon. Leonard Edwards (Ret.)**<br>Judge of the<br>Superior Court of California,<br>    County of Santa Clara<br>Judge-in-Residence<br>Administrative Office of the Courts | The draft guidelines and recommended practices should be augmented to include those pertaining to juvenile court and specifically include restraining orders issued by a juvenile court. | Although the task force agreed that these issues are of critical importance, it determine that the issues are beyond the scope of the task force charge. |
| **Rosetta Egan**<br>Parent of Victim | The speaker recommends that the task force should do a better job of distributing information to victims about its proceedings and proposals. (San Francisco Public Hearing, p. 198) | The task force agreed to review its public outreach and make changes as appropriate. |
| **Rosetta Egan**<br>Parent of Victim | Public education about domestic violence prevention should start in the schools.  (San Francisco Public Hearing, p. 198) | No response required. |
| **Hon. Pamela Iles**<br>Judge of the<br>Superior Court of California,<br>    County of Orange | More focus should be placed on victims of domestic violence who are elderly or children. They need appropriate services and appropriate programs. | No response required. |
| **Ed Johnson** | The task force should develop a recommendation that would encourage greater use of mediation and restorative justice principles to resolve domestic violence cases. These ideas can provide "dignity, healing, and | Although the task force agreed that these issues are of critical importance, it determined that the issues are beyond the scope of the task force charge. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| NEW PROPOSALS (Do not fit within the pre-existing categories) | | |
|---|---|---|
| Commentator | Comment Excerpt or Summary: | Committee Response |
| | closure for victims and can also lead to reduced recidivism for offenders. " The AOC should fund pilot projects to document the benefits of these techniques. | |
| **Hon. Thomas Trent Lewis** Judge of the Superior Court of California,   County of Los Angeles | Develop statewide protocols and programs to assist children affected by domestic violence where one parent is a perpetrator. Consider creation of a program in after school or school programs. | Although the task force agreed that these issues are of critical importance, it determined that the issues are beyond the scope of the task force charge. |
| **Fariba Nourdjahan** Citizen | The author urges that the courts pay close attention to cultural matters. | Although the task force agreed that these issues are of critical importance, it determined that the issues are beyond the scope of the task force charge. |
| **Niki Solis** Managing Attorney, Domestic Violence and Misdemeanor Unit San Francisco Public Defender's Office | When collecting statistics on domestic violence cases, information should be collected on members of protected classes and the indigent so that we can determine whether court procedures may have a disproportionate impact on these groups. (San Francisco Public Hearing, p. 163) | This suggestion will be referred to the Judicial Council's Access and Fairness Advisory Committee. |
| **Hon. Colleen Toy White** Presiding Judge of the Superior Court of California,   County of Ventura | The task force should consider Ventura's practice of using common waiting areas as a locus of public education. For example, while a defendant on probation is waiting for an assessment, a life skills tape is playing in the waiting area. (Los Angeles Public Hearing, p. 111) | The task force determined that this suggestion could be incorporated in education materials developed as part of the task force implementation phase. |
| **Hon. Rebecca Wightman** Commissioner, Dept. 416 Superior Court of California,   County of San Francisco | The interplay between W & I Code sections 11477.02 and 11477.04 with Family Code Section 6341 create conflicting messages. In the child support arena, there is a "good cause" exception for not cooperating with DCSS based | No response required. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| NEW PROPOSALS | | |
|---|---|---|
| **(Do not fit within the pre-existing categories)** | | |
| Commentator | Comment Excerpt or Summary: | Committee Response |
| | on a sworn statement of abuse or fear of abuse which results in the suspension of DCSS services.  On the other hand, courts are required to consider whether *failure*  to issue spousal or child support orders jeopardizes the safety of the petitioner and the child under that Family Code. The latter provision appears to apply only when the parties are married; query what happens to unmarried individuals who are not on aid? | |
| Members of Public (listed by name on the list of commentators) Responding to article by Glenn Sacks: http://glennsacks.com/blog/?p=870 | The task force should consider addressing alleged gender inequity underlying domestic violence cases since the underlying assumption is that the victim is female.  Male victims are treated unfairly.  There is insufficient focus on the question of false allegation, how to determine when they occur, and ways to deter parties from making them.  False allegations can require large amounts of money to defend or counter and have a profound effect on child visitation and custody. (207 commentators sent emails or letters generally making these assertions)  Additional individuals suggested the following:  that those who allege domestic violence should be required to take a lie detector test (1), that legislation be sought to create penalties, such as the payment of reasonable attorneys fees,  if a court finds that false allegations have been made (1), that victims should be ordered to anger management as well since they may contribute to the conflict (1), and that services for men be augmented especially in | The task force determined that its proposals are and should be gender neutral. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| NEW PROPOSALS | | |
|---|---|---|
| **(Do not fit within the pre-existing categories)** | | |
| Commentator | Comment Excerpt or Summary: | Committee Response |
| | cases where the court orders a residence exclusion (1). | |

| JUDICIAL AND COURT STAFF EDUCATION | | |
|---|---|---|
| **New Proposals** | | |
| Commentator | Comment Excerpt or Summary: | Committee Response |
| **Eve Sheedy** Deputy City Attorney Los Angeles | Annual training for all judges (not just those assigned to domestic violence calendars) on new laws relating to domestic violence  should be required given "the shifting assignments and the likelihood of domestic violence issues arising in a number of different legal contexts".  (Los Angeles Public Hearing, p. 148) | The task force agreed with this suggestion and its proposals include recommendations relating to judicial and staff education.  See Court Leadership Proposal #4. |
| **Hon. Colleen Toy White** Presiding Judge of the Superior Court of California,    County of Ventura | Judges and court staff involved in domestic violence cases should receive regular training and education.  (Los Angeles Public Hearing, p. 115) | The task force agreed with this suggestion and its proposals include recommendations relating to judicial and staff education.  See Court Leadership Proposal #4. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

<table>
<tr><td colspan="4"><strong>COURT LEADERSHIP</strong><br><strong>General Comments</strong></td></tr>
<tr><td>Guideline/Practice</td><td>Commentator</td><td>Comment Excerpt or Summary:</td><td>Task Force Response</td></tr>
<tr><td>Court Leadership<br>General</td><td><strong>Hon. Philip Pennypacker</strong><br>Supervising Judge of the<br>Superior Court of California,<br>   County of Santa Clara</td><td>I believe that our court has been singled out for best practices before because of the leadership of our court. There is a continuous stream of interest in this area from the presiding judges in the past to present, from the bench officers who have served in the Domestic Violence division, and from the tremendous support from the court executive's office in our court. This culture of commitment to the impartial implementation of law surrounding this area is manifested in the court-wide training programs we have had, the staff support for daily tasks, and the scrupulous observance of safety and security needs of the public, staff and most importantly, those who enter our courtrooms as witnesses and litigants. (Comment Letter from San Francisco Public Hearing)</td><td>No response required.</td></tr>
</table>

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| COURT LEADERSHIP New Proposals | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Court Leadership New | **Daniel Burke** Attorney and Counselor At Law California Board of Legal Specialization | The issue of gender bias ought to be included in judicial branch training because of the frequent reference to protected persons as "she" and restrained persons as "he." The author also has noticed a reluctance to make findings of abuse depending on the gender of the bench officer and the party to be restrained. | The task force determined that its proposals are and should be gender neutral. The task force notes that gender fairness is a regular component of judicial and staff education. |
| Court Leadership New | **Hon. Pamela Iles** Judge of the Superior Court of California, County of Orange | Court leadership in public education is also an important element in the long-term development of a system that truly serves the interests of the parties and the public. | No response required. |
| Court Leadership New | **Karen Staples** Chief Probation Officer, Ventura County | Great care should be taken to ensure that judicial officers assigned to domestic violence cases want to be there, have the requisite expertise, receive the necessary training, and will work collaboratively with all justice system partner agencies involved in domestic violence | The task force agreed with this comment and believes its proposals reflect the underlying concept expressed. |

13

**Domestic Violence Practice and Procedure Task Force
Draft Guideline Comments**

| | | cases. (Los Angeles Public Hearing, p. 122) | |
|---|---|---|---|

| **COURT LEADERSHIP**<br>**Specific Comments** | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Court Leadership #1<br>Court leadership<br>p.11 | **Emberly Cross**<br>Coordinating Attorney<br>Cooperative Restraining Order Clinic<br>San Francisco | The author agrees with the proposal but suggests the inclusion of working with local community organizations in this recommendation as well as in the recommendation that follows. | The task force determined that its proposals adequately covered this suggestion. |
| Court Leadership #1<br>Court leadership<br>p.11 | **Hon. Pamela Iles**<br>Judge of the<br>Superior Court of California,<br> County of Orange | "The benefits of court leadership in this area cannot be overestimated. …Before the program envisioned can become truly institutionalized, it must be regarded by court leaders as an important improvement in justice system delivery."<br>Sufficient resources exist to fund best practices in domestic violence cases given strong court leadership. | No response required. |
| Court Leadership #1<br>Court leadership<br>p.11 | **Eve Sheedy**<br>Deputy City Attorney<br>Los Angeles | In Los Angeles, we do not have enough resources to contact victims prior to arraignment, properly fund probation, or | The task force agrees with the assertion that current resources are inadequate and has submitted |

14

**Domestic Violence Practice and Procedure Task Force
Draft Guideline Comments**

| COURT LEADERSHIP Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | prosecute criminal protective order or restraining order violations.  Although providing the necessary funding for these functions is not within the court's purview, the lack of resources profoundly affects how cases are handled.  (Los Angeles Public Hearing, p. 150) | recommendations to the Judicial Council on this issue. |
| Court Leadership #2 Working with justice system entities and community organizations p. 11 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author supports the proposal and also raises the question as to whether a council is "ethically appropriate" if  legislation unrelated to court practice and procedure is discussed at a portion of the meeting where judicial officers are expressly absent and if the proposed legislation is accompanied by a statement that clarifies that judicial officers are not included in this facet of the council's discussions or advocacy. | The task force declined to take action on this suggestion based on its understanding of the ethical limitations involved. |
| Court Leadership | **Frank Del Fiugo** | Court participation in domestic | No action required. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

<table>
<tr>
<td colspan="4"><strong>COURT LEADERSHIP</strong><br><strong>Specific Comments</strong></td>
</tr>
<tr>
<td>Guideline/Practice</td>
<td>Commentator</td>
<td>Comment Excerpt or Summary:</td>
<td>Task Force Response</td>
</tr>
<tr>
<td>#2<br>Working with justice system entities and community organizations<br>p. 11</td>
<td>A Turning Point<br>Santa Clara</td>
<td>violence councils and/or committees is essential. It helps resolve questions and fosters a community-based response to domestic violence. (San Francisco Public Hearing, p. 169)</td>
<td></td>
</tr>
<tr>
<td>Court Leadership<br>#2<br>Working with justice system entities and community organizations<br>p. 11</td>
<td><strong>Frank Del Fiugo</strong><br>A Turning Point<br>Santa Clara</td>
<td>Historically, batterers' intervention programs have been left out of the collaborative process. It is imperative that they be included. (San Francisco Public Hearing, p. 171)</td>
<td>The task force agreed with this comment and revised proposal #1 in its Criminal Procedure section to reflect the need to communicate with batterer intervention programs.</td>
</tr>
<tr>
<td>Court Leadership<br>#2<br>Working with justice system entities and community organizations<br>p. 11</td>
<td><strong>Rosetta Egan</strong><br>Parent of Victim</td>
<td>Inter-jurisdictional communication is needed especially among law enforcement. (San Francisco Public Hearing, p. 192)</td>
<td>No response required.</td>
</tr>
<tr>
<td>Court Leadership<br>#2<br>Working with justice system entities and community organizations<br>p. 11</td>
<td><strong>Hon. Pamela Iles</strong><br>Judge of the<br>Superior Court of California,<br>   County of Orange</td>
<td>Community outreach and participation is essential. It must be institutionalized and monitored on an on-going basis.<br>Community collaboration will increase access to expertise and</td>
<td>No response required.</td>
</tr>
</table>

16

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| COURT LEADERSHIP Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | enhance the community's response to domestic violence. There should be increased focus on rehabilitation and prevention. | |
| Court Leadership #2 Working with justice system entities and community organizations p. 11 | **Hon. Mary Carolyn Morgan** Judge of the Superior Court of California, County of San Francisco | Collaboration with justice system partners, especially the defense, is imperative. The victim needs to see that the perpetrator is being treated fairly by the system. (San Francisco Public Hearing, p. 189) | No response required. |
| Court Leadership #2 Working with justice system entities and community organizations p. 11 | **Eve Sheedy** Deputy City Attorney Los Angeles | Domestic violence councils are essential to fostering a coordinated community response to domestic violence and to ensuring communication among justice system partners. (Los Angeles Public Hearing, p. 145) | No response required. |
| Court Leadership #2 Working with justice system entities and community organizations p. 11 | **Gary Windom** Public Defender, Riverside County | " … when the court starts going to the community and attending DV coordinated council meetings and holding independent meetings of that type, it becomes – or at least | The task force determined that its proposal adequately addressed this concern. |

**Domestic Violence Practice and Procedure Task Force
Draft Guideline Comments**

<table>
<tr><td colspan="4"><strong>COURT LEADERSHIP</strong><br><strong>Specific Comments</strong></td></tr>
<tr><td>Guideline/Practice</td><td>Commentator</td><td>Comment Excerpt or Summary:</td><td>Task Force Response</td></tr>
<tr><td></td><td></td><td>has the appearance of the court being not balanced." (Los Angeles Public Hearing, p. 97)</td><td></td></tr>
<tr><td>Court Leadership<br>#2<br>Working with justice system entities and community organizations<br>p. 11</td><td><strong>Jennifer Wyllie-Pletcher</strong><br>Adjunct Professor of Law<br>Domestic Violence<br>Hastings College of the Law<br>Golden Gate University</td><td>The author strongly supports the recommendation and submits that ensuring fair, expeditious, and accessible justice for domestic violence litigants is only possible with community outreach and communication.</td><td>No response required.</td></tr>
<tr><td>Court Leadership<br>#3<br>Use of temporary judges<br>p. 11</td><td><strong>Victoria Adams</strong><br>Deputy District Attorney<br>Los Angeles County<br>District Attorney's Office</td><td>Temporary judges really should be discouraged at this stage of the proceeding on domestic violence cases.  And to consider that at every stage of the proceeding is critical.  And from bail to sentencing. Temporary judges, we feel at this time are not sufficiently educated in the areas of domestic violence.  And oftentimes judicial efficiency or economy outweighs the protection of the victims.  (Los Angeles Public Hearing, p. 82)</td><td>No response required.</td></tr>
<tr><td>Court Leadership</td><td><strong>Emberly Cross</strong></td><td>The author agrees with the</td><td>No response required.</td></tr>
</table>

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| COURT LEADERSHIP<br>Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| #3<br>Use of temporary judges<br>p. 11 | Coordinating Attorney<br>Cooperative Restraining Order<br>Clinic<br>San Francisco | proposal and suggests that local community justice partners be included in the training of temporary judges. | |
| Court Leadership<br>#3<br>Use of temporary judges<br>p. 11 | **Laura Fry**<br>Attorney,<br>Legal Aid Foundation<br>Los Angeles | The author requests that the proposal be clarified to include only attorneys who are assigned temporarily to fill in for a regularly assigned bench officers.  Commissioners, pursuant to stipulation of the parties, may also be deemed temporary judges and should not be included. | The task force took no action based on this comment. |
| Court Leadership<br>#3<br>Use of temporary judges<br>p. 11 | **Hon. Pamela Iles**<br>Judge of the<br>Superior Court of California,<br>   County of Orange | Discouraging the use of temporary judges is of primary importance.  Criminal cases should be heard on calendars with vertical, long-term judicial assignments.  Such calendars have many benefits including: standardized policies, increased access and accountability, standardized probation expectations, planning, increased service delivery, and better outcomes.  Courts should | No response required. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| COURT LEADERSHIP<br>Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | augment the number of judges who hear domestic violence matters if specialized calendars are used. | |

20

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

**RESTRAINING ORDERS**
**General Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Domestic Violence Prevention Act Restraining Orders | **Victoria Adams** Deputy District Attorney Los Angeles County District Attorney's Office | We would ask that judicial forms be promulgated that would have check boxes on the protective order form that not only would give us a check box regarding the information as to whether there is a registered firearm in the home, but also is there anecdotal evidence or is there evidence from a reliable source of the victim that there are firearms in the home. But also a check box on there regarding whether there are existing restraining orders, under our 273.75 obligation in the Penal Code to advise the court whether the victim is, in fact, in danger.  We would ask that that check box be also included on our request for restraining order.  Or criminal court protective orders.  And that's something that we feel is missing there that would enhance our ability to do our job well. (Los Angeles Public Hearing, p. 81) | The task force determined that this suggestion should be referred to the Restraining Order/Protective Order Forms Working Group. |
| Domestic Violence Prevention Act Restraining Orders | **Steve Allen** Director of Legal Services Center for Community Solutions San Diego | We've got to give some teeth to restraining orders.  (Los Angeles Public Hearing, p. 40) | This proposal is not within the task force's or Judicial Council's purview. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

**RESTRAINING ORDERS**
**General Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Domestic Violence Prevention Act Restraining Orders | **Steve Allen** Director of Legal Services Center for Community Solutions San Diego | If a petitioner seeks a temporary restraining order but is denied at the ex parte level, the proposals indicate that the court must set a hearing. I'm a little bit concerned about an individual being granted the hearing, but I would like to leave it up to the option of the petitioner. (Los Angeles Public Hearing, p. 42) | See Restraining Order Proposal #11 and *Nakamura v. Parker* (2007) 156 Cal. App. 4th 327. |
| Domestic Violence Prevention Act Restraining Orders | **Daniel Burke** Attorney and Counselor At Law California Board of Legal Specialization | The author protests the broad definition of the term "abuse" in the statutory scheme especially when the interplay with the custody presumption is considered.  This interplay may result in reluctance to issue restraining orders or findings to avoid the array of consequences. | This proposal is not within the task force's or the Judicial Council's purview. |
| Domestic Violence Prevention Act Restraining Orders | **Laura Fry** Staff Attorney Legal Aid Foundation Los Angeles | The author agrees with the majority of the proposals. | No action suggested. |
| Domestic Violence Prevention Act Restraining Orders | **Alyce LaViolette** Founder, Alternatives Counseling Association Long Beach | With TROs, I like to see where they hook up with a victim advocate so we have some help with the victim and maybe they go to a personal encounter class. (Los Angeles Public Hearing, p. 137) | See Restraining Order Proposal #3. |
| Domestic Violence Prevention Act | **Nancy O'Malley** | Through video relay, or sort of a | The task force determined that this |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| RESTRAINING ORDERS General Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Restraining Orders | Chief Assistant District Attorney County of Alameda Executive Director, Family Justice Center | higher end of video conferences, we are able to link victims in Livermore and Dublin to services that are being provided in Oakland. This has made a huge difference in the ability of victims countywide to access services. (San Francisco Public Hearing, p. 24) | comment does not require a new proposal. This suggestion may be incorporated in educational materials at the implementation phase. |
| Domestic Violence Prevention Act Restraining Orders | **Susan Shawn Roberts** Staff Attorney Bay Area Legal Aid Richmond | As many of these recommendations as possible should be codified in Rules of Court statute. (San Francisco Public Hearing, p. 66) | Whether the proposals should be codified in rules or statutes will be determined at the implementation stage on a case-by-case basis. |
| Domestic Violence Prevention Act Restraining Orders | **Eve Sheedy** Deputy City Attorney Domestic Violence Legislative and Policy Advisor Los Angeles City Attorney's Office | We have at least one family law judge who will not issue a domestic violence protective order if a criminal protective order is in place. So in the event that the criminal protective order is terminated, the person is without coverage and probably at that point it is too late for that person to obtain a domestic violence protective order in civil court because too much time has passed. (Los Angeles Public Hearing, p. 144) | See Criminal Procedure Proposal #60. |
| Domestic Violence Prevention Act Restraining Orders | **Mark Surgett** Parent | This comment expresses disagreement with the outcome in a particular case and asserts abuse of the restraining order procedures. The author requests strong consequences for alleged abuse | The task force took no action on this comment. The task force has no authority to intervene in individual cases. |

**Domestic Violence Practice and Procedure Task Force
Draft Guideline Comments**

| RESTRAINING ORDERS General Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | of process in restraining order proceedings. | |
| Domestic Violence Prevention Act Restraining Orders | **Lauren Zorfas** Family Law Facilitator Superior Court of California, County of San Mateo | Family Code Section 6389 was amended as of the first of this year, allowing law enforcement upon service of the restraining order to request immediate relinquishment. This new provision is one of the areas we will be looking into with our Department of Justice Project. (San Francisco Public Hearing, p. 106) | Reference to this statute will be made in the section on firearms. |

| RESTRAINING ORDERS New Proposals | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Domestic Violence Prevention Act Restraining Orders | **Steve Allen** Director of Legal Services Center for Community Solutions San Diego | With respect to temporary restraining orders, clearly the legislative intent is to prevent domestic violence. The threshold for issuing them is rather low. Past act or acts of abuse. There should be few denials, in my view of that law. And I think there's some importance in talking about there shouldn't be any time restriction between the most recent event of abuse or violence and the issuance of | Issues raised by this comment are addressed in Restraining Order Proposal #15, Past Acts. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**RESTRAINING ORDERS**
**New Proposals**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | the order.<br>The time between the most recent incident of abuse or violence and the time of filing for the order shall be of no consequence.  And that goes to the importance of having community based organizations, civil legal assistance providers in our communities who can adequately explain if there's been an incident a year, six months ago, adequately explain in the declaration why there is a gap.<br>If it's denied, I submit that it should be left to the option of the petitioner whether or not there should be a hearing on the permanent order or not.  I think there could be some delicacy, some danger involved in giving a hearing, serving the other side but without having that protective order in place.  I have some concerns about that.  (Los Angeles Public Hearing, p. 36) | |
| Domestic Violence Prevention Act Restraining Orders | **Steve Allen**<br>Director of Legal Services<br>Center for Community Solutions<br>San Diego | I think it's important to increase the use of advocates in the courtroom for protected parties who seek dismissal of a restraining order. (Los Angeles Public Hearing, p. 37) | See Proposal #3 for availability of services. |

25

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| RESTRAINING ORDERS New Proposals | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | | |
| Domestic Violence Prevention Act Restraining Orders | **Steve Allen** Director of Legal Services Center for Community Solutions San Diego | Animal abuse can be a precursor to or an actual part of domestic violence. It might be helpful, and there's some pending legislation dealing with this, looking at adding protection of pets on the Judicial Council forms.(Los Angeles Public Hearing, p. 37) | See SB 353 (ch. 205), amending Family Code section 6320, effective January 1, 2008. |
| Domestic Violence Prevention Act Restraining Orders | **Steve Allen** Director of Legal Services Center for Community Solutions San Diego | It would be helpful to use the coercive powers of civil courts to get guns from individuals who are subject to restraining orders. The Special Needs warrant that's been tried and tested in New Jersey and the appellate system there, where on the testimony of the protected party, the court is able to issue a warrant and actually allow law enforcement to retrieve guns from an individual subject to the restraining order. (Los Angeles Public Hearing, p. 38) | See discussion of these issues in firearms section. |
| Domestic Violence Prevention Act Restraining Orders | **Steve Allen** Director of Legal Services Center for Community Solutions San Diego | I think it would be extremely helpful to have 52-week batterer's treatment as a part of the civil restraining order. (Los Angeles Public Hearing, p. 39) | The judge has discretion to order at the time of a hearing. The task force took no further action on this comment. |
| Domestic Violence Prevention Act Restraining Orders | **Steve Allen** Director of Legal Services Center for Community Solutions | In particular where there are children involved, we want to make sure that those children stay safe, give the | Training suggestions will be collected and referred to the Violence Against Women Education Project |

26

**Domestic Violence Practice and Procedure Task Force
Draft Guideline Comments**

**RESTRAINING ORDERS
New Proposals**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | San Diego | individual who's subject to the restraining order an opportunity to slowly but surely integrate with the family and safely integrate the children with the person subject to the restraining order. Family Code Section 3044 And it might be helpful to continue some training in that regard. (Los Angeles Public Hearing, p. 39) | (VAWEP). |
| Domestic Violence Prevention Act Restraining Orders | **Steve Allen** Director of Legal Services Center for Community Solutions San Diego | Possibly change the domestic violence form DV-130. Change language to include "The Court hereby finds that the restrained party has perpetrated domestic violence against the protected party." (Los Angeles Public Hearing, p. 40) | The task force took no action based on this comment. The issue will be referred to the Restraining Order/Protective Order Forms Working Group. |
| Domestic Violence Prevention Act Restraining Orders | **Steve Allen** Director of Legal Services Center for Community Solutions San Diego | There needs to be more effective communications between civil and criminal court. It would be ideal if these could happen in real or near realtime. We're currently doing some fax filing in San Diego. The video conferencing is also an extremely important project that I think should be followed up on. (Los Angeles Public Hearing, p. 41) | Issues raised by this comment are addressed in Restraining Order Proposal #3 |
| Domestic Violence Prevention Act Restraining Orders | **Daniel Burke** Attorney and Counselor At Law | Add a proposal to ensure that all bench warrants, misdemeanor and | The task force determined that this suggestion is outside Judicial Council |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

**RESTRAINING ORDERS**
**New Proposals**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | California Board of Legal Specialization | otherwise, within the county or out-of-county are executed if the bench warrant relates to a violation of a domestic violence restraining order | purview. |
| Domestic Violence Prevention Act Restraining Orders | **Daniel Burke** Attorney and Counselor At Law California Board of Legal Specialization | Amend the DVPA to include the protected party's attorney as a protected party due to the possible anger of the responding party and the potential risk of harm to the attorney. | The task force determined that this suggestion is outside Judicial Council purview. |
| Domestic Violence Prevention Act Restraining Orders | **Katherine Caballero** Member of public | If an order after hearing is granted, the judicial officer should admonish the restrained party, ask him or her to relinquish all firearms, and explain the firearms restrictions.  (San Francisco Public Hearing, p. 204) | See firearms discussion. |
| Domestic Violence Prevention Act Restraining Orders | **Hon. Becky Lynn Dugan** Judge of the Superior Court of California,   County of Riverside | The speaker opposes trailing the temporary order until disposition of a related criminal matter because the court cannot issue support or custody and visitation orders at the temporary stage and this would leave the family without those critical orders. (Los Angeles Public Hearing, p. 168) | Agree but the task force determined that the comment doesn't require a revision. |
| Domestic Violence Prevention Act Restraining Orders | **Laura Fry** Attorney, Legal Aid Foundation Los Angeles | The task force should address the importance of custody and support orders in DVPA proceedings more directly.  "Some judicial officers issue custody and support orders when appropriate testimony and evidence | This proposal is addressed in Restraining Order Proposal #16. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS<br>New Proposals | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | are presented in DVPA proceedings, but other bench officers hearing DVPA calendars routinely refuse to make such orders, either as temporary orders or after a hearing on the request, unless a divorce or paternity action is filed." This practice risks tremendous instability and vulnerability for the children involved. ….."Refusal to address an issue – especially at a noticed hearing – that is a central source of conflict for many, many litigants is poor practice and a potential source of danger." | |
| Domestic Violence Prevention Act Restraining Orders | **Hon. Mary Ann Grilli**<br>Judge of the<br>Superior Court of California,<br> County of Santa Clara | Judge Grilli proposes that the task force consider the issue of continuance/reissuance of restraining orders when the responding party appears at the hearing and requests a continuance to file a response and seek counsel. A question arises as to whether the reissuance form or an Order After Hearing form should be used. The instructions for a reissuance states that the reissuance should be used if the respondent asked for time to get a lawyer. The actual reissuance form, however, does not have that | This issue will be referred to the Restraining Order/Protective Order Forms Working Group. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS | | | |
|---|---|---|---|
| **New Proposals** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | option.<br><br>The Order After Hearing form is also sometimes used when a continuance is requested because that form has a specific place to show continuances. Also, use of this form allows the judicial officer to make any changes in the tro's for the period until the next hearing. If one uses the reissuance form, the orders arguably have to be reserved. So, if a law enforcement person in the field sees a reissuance and no proof of service, he or she will not know if the respondent was in court and got the order. The service of the earlier order may not clear this up.<br><br>I think that this is an issue that needs to be clarified, one way or the other. If the reissuance form is the right form to use, then it needs to have a line on it for the respondent requesting the continuance and a line saying that both parties were present and no further proof of service is required.<br><br>This issue has been of concern around the state for awhile. I believe that | |

**Domestic Violence Practice and Procedure Task Force
Draft Guideline Comments**

| RESTRAINING ORDERS New Proposals | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | some courts use the reissuance and some the order after hearing. | |
| Domestic Violence Prevention Act Restraining Orders | **John Hamel** LCSW John Hamel & Associates National Family Violence Legislative Resource Center Family Violence Treatment & Education Association San Rafael | The author strongly supports increased "communication and cooperation among agencies, so that restraining orders may be more consistently enforced" and further offers the following recommendations: 1. Insert a section in the draft guidelines that addresses the manipulation of restraining order procedures to gain an advantage in custody disputes. 2. Address alleged gender stereotyping that results in the issuance of more restraining orders that protect women than those that protect men. 3. Adopt a mechanism that will help men feel more comfortable in applying for orders of protection such as public education, fact sheets, and judicial education regarding male victims. | The task force took no action based on this comment. Current practices and recommended procedures are sufficient for handling manipulation of the process and false allegations. Neither gender should be afforded a special status. |
| Domestic Violence Prevention Act Restraining Orders | **Rick Layon** Criminal Defense Attorney San Diego | The fact that there is no provision for modifying an emergency protective order is problematic from the perspective of the restrained person | The task force took no action based on this comment. The duration of an EPO is too short to warrant a modification proceeding. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**RESTRAINING ORDERS**
**New Proposals**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | because he or she may have a home business. Consideration should be given to promulgating such a provision. (Los Angeles Public Hearing, p. 153) | |
| Domestic Violence Prevention Act Restraining Orders | **Rick Layon** Criminal Defense Attorney San Diego | A new proposal should be adopted that would permit the family law judge to extend the temporary order before conducting a hearing during the pendency of the criminal matter involving the same alleged perpetrator. (Los Angeles Public Hearing, p. 156) | The task force took no action based on this proposal and determined that the issue should be handled in a local protocol (See Proposal #31) |
| Domestic Violence Prevention Act Restraining Orders | **Merritt L. McKeon** Attorney at Law Newport Beach | The proposals should include a recommended practice relating to domestic abuse cases from other states. Family Code section 3424 (d) grants emergency protection to make a temporary order and communicate with the other state regarding what orders have been made. This section is often misunderstood, so a practice on this issue would be very helpful. | The task force noted that the Judges Guide to Domestic Violence Cases includes a discussion of this issue and determined that the issue should be referred to the Violence Against Women Education Planning Committee for inclusion in judicial education at the implementation phase. |
| Domestic Violence Prevention Act Restraining Orders | **Michael Robinson** Executive Director California Alliance for Families and Children | The task force should recommend a solution for the problem of false claims of violence asserted to obtain a restraining order and thus an advantage in a custody dispute. Resolving these cases and undoing the | The task force took no action based on this comment. Current practices and recommended procedures are sufficient for handling manipulation of the process and false |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS New Proposals | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | effects of false claims is difficult, especially for self-represented parties. Since Fam. Code section 3044 was adopted, due to the effects on custody, false claims of domestic violence have increased.  These claims result in the loss of valuable court time, erroneous data, and the separation of children from their parent.  There should be penalties and sanctions for false claims as there are in child abuse cases.  Florida has a statute providing for criminal penalties.  The author suggests that legislation be proposed as follows:  New Fam. Code section 3044.5  If a court determines that an accusation of domestic violence made by a party seeking custody of a child is false and the person making the accusation knew it to be false a the time the accusation was made, the court shall impose reasonable money sanctions, not to exceed all costs incurred by the party accused as a direct result of defending the accusation, and reasonable attorney's fees incurred in | allegations.  Neither gender should be afforded a special status. |

**Domestic Violence Practice and Procedure Task Force
Draft Guideline Comments**

| RESTRAINING ORDERS New Proposals | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | recovering the sanctions against the person making the accusation.  For the purposes of this section, "person" includes a witness, a party, or a party's attorney. | |
| Domestic Violence Prevention Act Restraining Orders | **Michael Robinson** Executive Director California Alliance for Families and Children | At any hearing where a party is considering agreeing to issuance of a restraining order, the restrained party should be advised about the effects the order may have on custody and about the terms of Fam. Code section 3044. | The task force took no action based on this comment.  This already required by existing law.  See Family Code Section 3022.3. |
| Domestic Violence Prevention Act Restraining Orders | **Cheryl Segal** Attorney at Law Harriett Buhai Center for Family Law | Some judicial officers are refusing to grant restraining orders unless there's been recent violence.  There's been some talk that there may be a chilling effect from Family Code Section 3044 and this is why they don't want to grant the restraining order in the first place, unless there has been very recent violence.  (Los Angeles Public Hearing, p. 57) | Issues raised by this comment are addressed in Restraining Order Proposal #15, Past Acts. |
| Domestic Violence Prevention Act Restraining Orders | **Eve Sheedy** Deputy City Attorney Los Angeles | The task force should consider a proposal that would address the practice of the family law judge refusing to issue a restraining order if a criminal protective order is already in place.  This causes problems in the event the criminal protective order is | See Restraining Order Proposal #20. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| **RESTRAINING ORDERS**<br>**New Proposals** | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | terminated.  The victim may not realize that he or she is unprotected.  Returning to the family law court may not be an option if too much time has elapsed because some judicial officers require very recent conduct to support issuance of a restraining order. (Los Angeles Public Hearing, p. 144) | |
| Domestic Violence Prevention Act Restraining Orders | **Hon. Nancy Wieben Stock**<br>Presiding Judge of the Superior Court of California,  County of Orange<br><br>Chair, Trial Court Presiding Judges Advisory Committee | The first innovation is an arrangement between our family court and the local Sheriff's Department, which upon the issuance of the DVPA TRO in the courtroom; this leads to a faxing of the TRO directly to the Sheriff for service, thus eliminating this particular step for the victim.<br>In the meantime, to fill the gap, we've made the commitment that our staff in the family court area will hand fax and hand feed 12-page or longer TROs into the fax machine, one by one, night after night, to get them over to the Sheriff's office (Los Angeles Public Hearing, p. 16) | This comment illustrates a good practice but does not warrant a proposal since local needs and resources may vary.  The practice may be described in educational materials at the implementation phase. |
| Domestic Violence Prevention Act Restraining Orders | **Hon. Nancy Wieben Stock**<br>Presiding Judge of the Superior Court of California,  County of Orange | Our court has agreed to receive applications for the Domestic Violence Protection Act TROs electronically and to permit video conferencing appearances by victims | This comment illustrates a good practice but does not warrant a proposal since local needs and resources may vary.  The practice may be described in educational |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS | | | |
|---|---|---|---|
| New Proposals | | | |

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | Chair, Trial Court Presiding Judges Advisory Committee | who have reported to the off-site location of the Anaheim City Family Justice Center. The victim is allowed to electronically transmit the TRO application and with the use of video conferencing equipment, able to answer questions live and by the judicial officer in the courthouse 8 miles away, while the respondent does have the opportunity to appear personally at the courthouse, the old-fashioned way at the same time. (Los Angeles Public Hearing, p. 17) | materials at the implementation phase. |
| Domestic Violence Prevention Act Restraining Orders | **Beverly Upton** Executive Director San Francisco Domestic Violence Consortium San Francisco | We're also concerned about the confidentiality, because it's not explained in general to survivors as they're coming in that there is a difference between speaking with an advocate and speaking with court personnel.  So we are looking for ways to create safety and confidentiality by maybe building some bridges with the community-based agencies. Either that, or, they should be notified in the very beginning that this is not an advocate/client relationship.  That this lacks confidentiality, and may be given some resources where they | See Restraining Order Proposal #7 |

36

**Domestic Violence Practice and Procedure Task Force
Draft Guideline Comments**

**RESTRAINING ORDERS
New Proposals**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | could achieve confidentiality and be able to speak more freely.  (San Francisco Public Hearing, p. 50) | |
| Domestic Violence Prevention Act Restraining Orders | **Beverly Upton** Executive Director San Francisco Domestic Violence Consortium San Francisco | I'm just going to say, 3044, again, is probably one of the most unimplemented pieces of legislation that people worked so hard on.  It really would create a safety net for victims of domestic violence and their children if the presumption could be taken seriously, if some deeper work could be done and it could be fully implemented.  (San Francisco Public Hearing, p. 55) | The task force took no action based on this comment because it suggests changes that are beyond the scope of the task force work at this time. |
| Domestic Violence Prevention Act Restraining Orders | **Lauren Zorfas** Family Law Facilitator Superior Court of California,    County of San Mateo | Every civil restraining order, or every civil temporary restraining order that is filed in our court is also filed with the DV-800 form, "What do I do with my Gun or Firearms?"  in both Spanish and English attached to it.  In addition, the DV-810 form, "Proof of Firearms Turned in or Sold" is also attached to the temporary restraining order.  (San Francisco Public Hearing, p. 108) | See firearms discussion.  No action required. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS<br>Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Domestic Violence Prevention Act Restraining Orders<br>#1<br>Removal of barriers<br>p. 13 | **Emberly Cross**<br>Coordinating Attorney<br>Cooperative Restraining Order Clinic<br>San Francisco | The author agrees with the proposal and suggests additional language as follows:  Each court should work with community partner agencies to reduce barriers to court access for litigants in restraining order proceedings. | The use of community agencies varies depending on the environment in each court.  The following language was added:  "Each court may consider working with community agencies in identifying barriers and developing practices." |
| Domestic Violence Prevention Act Restraining Orders<br>#1<br>Removal of barriers<br>p. 13 | **Cheryl Segal**<br>Attorney at Law<br>Harriett Buhai Center for Family Law | I believe one barrier to obtaining a restraining order is the lengthy forms.  I'm concerned particularly with the repetitiveness of the forms and whether or not they can become more concise in the future.  (Los Angeles Public Hearing, p. 52) | The task force took no action.  The issue should be referred to the Protective Order/Restraining Order/Forms Working Group. |
| Domestic Violence Prevention Act Restraining Orders<br>#2<br>Access to Restraining Orders<br>p. 14 | **Laura Fry**<br>Attorney,<br>Legal Aid Foundation<br>Los Angeles | The author supports this proposal. | No action suggested. |
| Domestic Violence Prevention Act Restraining Orders<br>#2<br>Access to Restraining Orders<br>p. 14 | **Fariba<br>Nourdjahan**<br>Citizen | The author opposes this proposal. | No action suggested. |
| Domestic Violence Prevention Act Restraining Orders<br>#3<br>Information/resources for the parties | **Emberly Cross**<br>Coordinating Attorney<br>Cooperative Restraining Order Clinic<br>San Francisco | The author agrees with the proposal and suggests an additional bullet point as follows:  "legal services agencies and pro bono legal resources." | The task force agrees and made appropriate revisions. |

38

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| RESTRAINING ORDERS | | | |
|---|---|---|---|
| **Specific Comments** | | | |

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| p. 14 | | | |
| Domestic Violence Prevention Act Restraining Orders #3 Information/ Resources for the parties p. 14 | **Hon. Rebecca Wightman** Commissioner, Superior Court of California, County of San Francisco | The Department of Child Support Services (hereafter "DCSS") should be a prominently featured "resource" for those individuals who need and want child support services. | The task force agrees and made appropriate revisions. |
| Domestic Violence Prevention Act Restraining Orders #3 Information/ Resources for the parties p. 14 | **Jennifer Wyllie-Pletcher** Adjunct Professor of Law Domestic Violence Hastings College of the Law Golden Gate University | Information and resources should be available in other languages. | The task force agrees and made appropriate revisions. |
| Domestic Violence Prevention Act Restraining Orders #4 Legal Services p. 14 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author objects to the proposal while understanding the need for the task force to be neutral. There is no need for the courts to take an active role in finding legal services or increased representation for batterers. "Providing free legal services to domestic violence survivors is necessary to balance the already unequal power and resource dynamic between the batterer and the less powerful (and usually less-resourced) victim. Providing free legal services to both parties in domestic violence restraining order cases – to both the victim and the perpetrator – in the | The task force added an item in Restraining Order Proposal #3 to list legal services. |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**RESTRAINING ORDERS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | name of "equity" or "neutrality" does not create equality between the parties. In most cases, it merely re-creates the preexisting power imbalance and directs already scarce legal services away from the domestic violence victim who is seeking safety for herself and her children." | |
| Domestic Violence Prevention Act Restraining Orders #4 Legal Services p. 14 | **Domestic Violence Advocates** California | The group disagreed with this proposal. They asserted that the court should not foster increased representation for both parties in light of the lack of resources for the victim and the likelihood that the legal system would be used as a further means of abusing the victim. | The task force added an item in Restraining Order Proposal #3 to list legal services. |
| Domestic Violence Prevention Act Restraining Orders #4 Legal Services p. 14 | **Laura Fry** Attorney, Legal Aid Foundation Los Angeles | Money is being diverted into self-help when some litigants need full representation. This should be clarified. (Los Angeles Public Hearing, p. 190) | The task force added an item in Restraining Order Proposal #3 to list legal services. |
| Domestic Violence Prevention Act Restraining Orders #4 Legal Services p. 14 | **Fariba Nourdjahan** Citizen | The author supports this proposal and urges that counseling, settlement conferences, and mediation be expanded. | The task force took no action based on this comment and determined that the suggested remedies are beyond the scope of the task force charge at this time. |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**RESTRAINING ORDERS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Domestic Violence Prevention Act Restraining Orders #4 Legal Services p. 14 | **Susan Shawn Roberts** Staff Attorney Bay Area Legal Aid Richmond | You'll not be surprised that Bay Area Legal Aid strongly agrees with the importance of the court informing all litigants about the availability of legal services and with expanding access to representation for persons seeking restraining orders. However, the recommendation of fostering representation for both parties in domestic violence restraining order cases is more problematic. Our personal experience has been that when batterers have representation, they are more likely to vigorously contest restraining orders even without legitimate factual defenses. (San Francisco Public Hearing, p. 68) | The task force added an item in Restraining Order Proposal #3 to list legal services. |
| Domestic Violence Prevention Act Restraining Orders #4 Legal Services p. 14 | **Julie Saffren** Attorney at Law Domestic Violence Limited Scope Representation Project San Jose | Our DVLSR Project: I'll start by saying that the concept of providing a free attorney to a batterer is a controversial one. Helping a battered women obtain a restraining order against her non-English speaking partner is not a satisfying legal victory. No one explains the orders, no one explains the consequences, no one counsels the other side to get services, no one | The task force added an item in Restraining Order Proposal #3 to list legal services. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS<br>Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | reminds them of the impact of exposure to DV to their children.  No one hears him at all, and he leaves court as angry as when he got there, and that places my client and her children at risk.<br>I believe I can  be an advocate for victims and their children by helping ensure the other side has access to resources, including an attorney, and I believe my client is safer when a DV-trained attorney represents the other side.  (San Francisco Public Hearing, p. 40) | |
| Domestic Violence Prevention Act Restraining Orders #5 Family law facilitator/self-help center p. 14 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author disagrees with this proposal.  See comment below:<br><br>Family law facilitators and self-help centers have inherent limitations.  They are unable to:<br><u>Give Legal Advice</u><br>(is this the appropriate county in which to file?  Does California have jurisdiction over the batterer?  What do "joint" and "sole" custody mean?  How does California's presumption against joint custody to a batterer affect my particular case?  What rights do I have regarding our home, and | The task force took no action based on this comment.  The task force determined that the level of services available varies from county to county and that these services should be available. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS<br>Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | when is it appropriate to request a residence exclusion order?  Is a restraining order the appropriate remedy given the facts this case?)<br><br>Engage in Safety Planning<br>(Will filing for the restraining order here alert the batterer of the victim's whereabouts?  Is a restraining order the safest legal option in this situation? Is this a situation in which filing for a restraining order will actually *increase* danger to the victim and the victim's children?  What other steps can I take to be safe?)<br><br>Coordinate With the Prosecutor's Office<br>(Is there a concurrent criminal case? Should we consult with the prosecutor's office to ensure no mistakenly inconsistent statements are being made in a civil restraining order request which could result in undermining the credibility of the victim in the criminal trial?  Has the victim been able to apply for Crime Victim's Compensation?  Does the victim need someone to advocate with | |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**RESTRAINING ORDERS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | the prosecutor to prosecute the batterer, or to drop charges against that victim?)<br><br>Make meaningful referrals to specific community-based domestic violence agencies for the victim's other needs<br><br>Facilitators and self-help centers also do not hold confidentiality.  In general, they are not even able to give the victim a private place to talk to someone about what has happened to her.<br><br>Recognizing the limitations of self-help centers, courts should work closely with local community-based organizations to ensure referral of domestic violence victims for legal advice, confidential consultations, and full representation whenever possible. | |
| Domestic Violence Prevention Act Restraining Orders #5 Family law facilitator/self-help center p. 14 | **Laura Fry** Attorney, Legal Aid Foundation Los Angeles | This commentator agrees with the proposal and suggests a modification that would increase the level of assistance to a one-to-one ratio of assistor to litigant. | The task force took no action based on this suggestion.  The level of services varies in different counties. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| RESTRAINING ORDERS Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Domestic Violence Prevention Act Restraining Orders #5 Family law facilitator/self-help center p. 14 | **Cheryl Segal** Attorney at Law Harriett Buhai Center for Family Law | I don't think that funding or referral should be given to self-help centers because I believe that the domestic violence restraining orders are just too complex to handle at self-help centers. I don't think we should be dealing with matters of life and death at self-help centers. It is the opinion of the entire Harriett Buhai Center that we should not be referring people to self-help centers for domestic violence restraining orders.  (Los Angeles Public Hearing, p. 53) | The task force added language referring to the duty of each court to provide an array of services and for coordination of services. |
| Domestic Violence Prevention Act Restraining Orders #5 Family law facilitator/self-help center p. 14 | **Beverly Upton** Executive Director San Francisco Domestic Violence Consortium San Francisco | The family law facilitators, court-based self-help center, we saw this as a huge step forward when it was implemented, and we believe it still has promise. To burden the self-help window with not the collaborative partners at the table to help be culturally competent and linguistically competent, I think we're asking our self-help centers to do a very tall order, and I think that it could put victims at risk.  Not understanding the orders, not speaking to someone who speaks their language. | The task force added language referring to the duty of each court to provide an array of services and for coordination of services. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | (Let's) build a stronger bridge between some community-based organizations and the self-help window. (San Francisco Public Hearing, p. 49) | |
| Domestic Violence Prevention Act Restraining Orders (for former proposal #6) Computers available p. 14 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author disagrees with this proposal for many of the same reasons articulated under proposal #5. The task force must understand the "limitations of self-help centers, family law facilitators, and self-help software, and the understanding that domestic violence victims will benefit more from individualized consultation with and assistance of attorneys at local community-based organizations whenever possible. | The task force deleted this proposal and merged it with proposal #5. |
| Domestic Violence Prevention Act Restraining Orders #6 Counseling pp. 14-15 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author agrees with this proposal and also suggests that judicial training on this issue is advisable. Counseling is often ordered when a judicial officers is frustrated with a victim or by a victim's reconciliations with the batterer. "Judicial training regarding domestic violence and the fact that it is common and normal behavior for victims to reconcile with their batterers might alleviate some of this frustration and enable judicial officers | The task force took no action based on this comment. Judicial education already includes this information about the dynamics of domestic violence. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| RESTRAINING ORDERS<br>Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | to understand why mandatory counseling for domestic violence victims is generally inappropriate, is not helpful for the victim or her children, and does not help achieve the court's goal of increasing safety (particularly since the victim may be reluctant to seek further help from a legal system she perceives as blaming her for her own abuse)." | |
| Domestic Violence Prevention Act Restraining Orders #6 Counseling p. 14 | **Hon. Pamela Iles** Judge of the Superior Court of California, County of Orange | The author agrees with the proposal but also suggests that an education requirement should be imposed on the victim as a prerequisite to terminating a protective order. Education about domestic violence for the victim results in greater protection and participation. | The task force took no action based on this comment. The task force determined that educational requirements for victims should not be imposed. |
| Domestic Violence Prevention Act Restraining Orders #7 Confidentiality p. 15 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author agrees with the proposal subject to suggested modifications. There are many other pieces of information that might increase the dangerousness of the victim's situation.  For example, the pleadings might reveal that she was the one who called the police or that the victim revealed that the restrained person has a cache of guns. The victim may not have had an opportunity to discuss the | The task force took no action on this proposal.  The form already has adequate warning language. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | pleadings with a trained domestic violence attorney or advocate who can assist in identifying the safety issues. Language should be added to the proposal as follows:  "Courts should inform parties, *before their pleadings are filed* that most filed documents are public *(and specifically that a copy of the pleadings will be given to the other party)*, should provide information….. *and should give parties referrals to community-based justice partners to engage in meaningful safety-planning before filing a restraining order request wherever possible."* | |
| Domestic Violence Prevention Act Restraining Orders #8 Emergency protective orders p. 15 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author agrees with the proposal subject to suggested modifications.  In some jurisdictions, EPO's "are routinely denied – or not even considered by judicial officers – if law enforcement requests them during business hours, under the theory that victims can go to the court to apply for DVPA orders.  Such a theory ignores the reality of victims' lives and does not take into consideration everything else a victim must do when law enforcement has been contacted in a domestic violence case."  The author | The task force agrees but no action was requested by the comment. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**RESTRAINING ORDERS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | suggests the following additional language:  Issuance of EPOs should be considered regardless of the time of day and should never be denied on the basis that the court is open for business and therefore available to review DVPA requests. | |
| Domestic Violence Prevention Act Restraining Orders #8 Emergency protective orders p. 15 | **Domestic Violence Advocates** California | The group agreed with this proposal but also suggested that there should be a mechanism for tracking EPO data to ensure that this mechanism for protection is being properly utilized. | The task force agrees and added an EPO tracking provision to Proposal #34 regarding collection of statistics. |
| Domestic Violence Prevention Act Restraining Orders #8 Emergency protective orders p. 15 | **Rick Layon** Criminal Defense Attorney San Diego | Specifically the difficulty with the EPs that are issued—and of course those are issued ex parte, they're issued at a time when a defendant is arrested – and repeatedly what we see in those situations is there is no provision to get them modified.  They issue for a very limited period of time, five judicial days or seven calendar days.  There's absolutely no way to get that order modified.  (Los Angeles Public Hearing, p. 152) | The task force took no action.  EPO's are too short in duration to warrant a modification procedure. |
| Domestic Violence Prevention Act Restraining Orders #8 Emergency protective orders p. 15 | **Susan Shawn Roberts** Staff Attorney Bay Area Legal Aid Richmond | We agree with the recommendation that would ensure maximum accessibility of judicial officers in issuing these orders.  And we've seen this process work well in San | The task force agrees and added an EPO tracking provision to Proposal #34 regarding collection of statistics. |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| RESTRAINING ORDERS Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | Francisco and San Mateo counties, where judges often interrupt active calendars to deal with EPO requests. One other suggestion we would make, however, is to create some sort of a filing system or a system for follow-up and tracking emergency protective orders once they're granted.  Although Family Code Section 62719 (c) requires law enforcement to file a copy of an EPO with the court as soon as it's possible after issuance, and although I heard this morning that there are databases where the information about the issuance of EPOs are entered, our experience is that it's very hard to get access to that information after the issuance of the EPOs.  And in asking the courts for information about EPOs that have been issued, we've encountered great difficulty. We would recommend that those records be periodically reviewed by the courts, District Attorneys' office or others to identify the police departments which don't seem to be requesting EPOs.  (San Francisco Public Hearing, p. 69) | |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**RESTRAINING ORDERS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Domestic Violence Prevention Act Restraining Orders #10 Notice in ex parte proceedings p. 15 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author proposes the addition of some key words as follows:  No blanket rule…. As abuse *and the risk of lethality* often increases ….. applicants should be referred to *local* community services….. | The task force took no action based on this comment.  The task force determined that the language of the proposal is adequate to meet these concerns. |
| Domestic Violence Prevention Act Restraining Orders #10 Notice in ex parte proceedings p. 15 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The first phrase of the recommended practice should read "No blanket rule *regarding* notice for every…"  The author suggests that the word "regarding" be substituted for the word "requiring."  Such a change will emphasize that the judge must make an independent decision regarding notice rather than simply consider whether notice should be waived.  In addition, language should be added as follows:  "the court should also consider its ability to shorten the time for notice (for example, to a six-hour period that would not include an overnight) to reduce the potential danger to the applicant from notice." | The task force agreed with substituting "regarding" for the word "requiring" in the proposal and added the word "policy" to the language.  The proposal now reads:  "No blanket rule or policy regarding notice…"  Otherwise, the task force took no action on the suggested change in language. |
| Domestic Violence Prevention Act Restraining Orders #10 Notice in ex parte proceedings p. 15 | **Dianna Gould-Saltman** Attorney at Law Representative, Los Angeles Bar Association Family Law Section | A balance must be struck, but existing law does provide that balance.  (Los Angeles Public Hearing, p. 63) | Requires no action. |
| Domestic Violence Prevention Act | **Pamela Kallsen** | Fresno County does not hold ex parte | Requires no action. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| RESTRAINING ORDERS Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Restraining Orders #10 Notice in ex parte proceedings p. 15 | Executive Director Marjaree Mason Center Fresno | proceedings, but some of our neighboring rural counties do.  We're pleased that the guidelines recommend giving the court case-by-case discretion in issuing a protective order without notice of service by taking into account the level of danger of the applicant.  (San Francisco Public Hearing, p. 80) | |
| Domestic Violence Prevention Act Restraining Orders #10 Notice in ex parte proceedings p. 15 | **Cheryl Segal** Attorney at Law Harriett Buhai Center for Family Law | I agree with this guideline, that the notice requirements should be determined on a case by case basis. (Los Angeles Public Hearing, p. 54) | Agree; requires no action. |
| Domestic Violence Prevention Act Restraining Orders #10 Notice in ex parte proceedings p. 15 | **Hon. Nancy Wieben Stock** Presiding Judge of the Superior Court of California,   County of Orange Chair, Trial Court Presiding Judges Advisory Committee | One of the short list issues in the task force report that's been identified is whether to require a victim to give notice prior to the obtaining of a civil domestic violence restraining order. However, this issue may be resolved. The Orange County Superior Court's Domestic Violence Prevention Services Program described above provides all respondents with an early opportunity to tell investigators and the court, their side of the story and to provide names of witnesses and other evidence to assist investigators to help prepare for the Order to Show | Agree but requires no action.  This is a good example of local practice that may be incorporated into educational materials at the implementation phase. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**RESTRAINING ORDERS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | Cause.(Los Angeles Public Hearing, pl 15) | |
| Domestic Violence Prevention Act Restraining Orders #11 Right to hearing p. 16 | **Dianna Gould-Saltman** Attorney at Law Representative, Los Angeles Bar Association Family Law Section | The courts shouldn't refuse to set the matter for hearing if the applicant wishes it set for hearing. It's for protection for the applicant at an upcoming event which will have come and gone by the time of the long-term hearing, then the court should not be compelled to set such a hearing. (Los Angeles Public Hearing, p. 65) | The task force revised this proposal in light of *Nakamura v. Parker* (2007) 156 Cal. App. 4th 327. |
| Domestic Violence Prevention Act Restraining Orders #11 Right to hearing p. 16 | **Hon. Laura Halgren** Judge of the Superior Court of California,    County of San Diego | The author objects to the mandatory nature of the proposal and asserts that in some cases "it is quite clear from the TRO application or the court's past dealings with the litigant that the litigant has no basis for an order." Instead, the court should refer the litigant to a self-help clinic or other assistance center.  If the documents still do not pass muster, conducting a hearing will be a waste of court resources and a burden on the opposing party. | The task force revised this proposal in light of *Nakamura v. Parker* (2007) 156 Cal. App. 4th 327. |
| Domestic Violence Prevention Act Restraining Orders #11 Right to hearing | **Pamela Kallsen** Executive Director Marjaree Mason Center Fresno | We agree that this gives the victim a better chance of telling their story, since they often do not understand the requirements of the courts for a | Requires no action. |

53

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**RESTRAINING ORDERS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| p. 16 | | restraining order.  In rural areas where there are fewer advocacy services available, this will be a better opportunity for the judge to solicit the extent of the abuse. | |
| Domestic Violence Prevention Act Restraining Orders #11 Right to hearing p. 16 | **Susan Shawn Roberts** Staff Attorney Bay Area Legal Aid Richmond | Bay Area Legal Aid also supports providing all TRO applicants with a right to a hearing regarding their restraining order request.  (San Francisco Public Hearing, p. 73) | Requires no action. |
| Domestic Violence Prevention Act Restraining Orders #11 Right to hearing p. 16 | **Diane Wasznicky** Liaison to the Family and Juvenile Law Advisory Committee State Bar of California Family Law Section Executive Committee | The committee opposes this recommendation on the grounds that it would constitute a waste of judicial resources.   Whether or not to afford a hearing should be discretionary with the court. | The task force revised this proposal in light of *Nakamura v. Parker* (2007) 156 Cal. App. 4th 327. |
| Domestic Violence Prevention Act Restraining Orders #11 Right to hearing p. 16 | **Jennifer Wyllie-Pletcher** Adjunct Professor of Law Domestic Violence Hastings College of the Law Golden Gate University | The author strongly supports this proposal. | Requires no action. |
| Domestic Violence Prevention Act Restraining Orders #12 Background checks p. 16 | **Valerie Fercho-Tillery** Program Manager Department of Justice, Domestic Violence Restraining Order System | The DVROS unit supports the proposal but asserts that navigating the DOJ databases is not difficult. | The task force took no action based on this comment. |
| Domestic Violence | **Hon. Robert Schnider** | Although the draft guidelines and | The task force submitted a staffing |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**RESTRAINING ORDERS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Prevention Act Restraining Orders #12 Background checks p. 16 and Domestic Violence Prevention Act Restraining Orders #24 Court interpreters p. 18 | Supervising Family Law Judge Superior Court of California, County of Los Angeles | recommended practices indicate that these two proposals may require additional funding, the author recommends that the task force clearly spell out that these two proposals will require legislated financial support. | proposal to address this suggestion. |
| Domestic Violence Prevention Act Restraining Orders #12 Background checks p. 16 | **Jennifer Wyllie-Pletcher** Adjunct Professor of Law Domestic Violence Hastings College of the Law Golden Gate University | Background checks should not be conducted with respect to the protected party because of the: 1. Chilling effect on victims and the resulting diminished safety and 2. The likelihood that the information obtained may be inappropriately considered by judicial officers. | The task force revised the proposal to provide for background checks on the restrained party only. |
| Domestic Violence Prevention Act Restraining Orders #13 Service of process p. 16 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author agrees with the proposal subject to suggested modifications. The author asserts that as a practical matter personal service of process, as distinguished by service by mail or publication or substituted service will not result in a restraining order | Agree, the task force modified its proposal in response to this comment. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| **RESTRAINING ORDERS** **Specific Comments** | | | |
| --- | --- | --- | --- |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | prosecution for violations. These other forms of service create a false sense of security. In addition, the proofs of service must be entered into DVROS/CLETS to maximize the likelihood of enforcement. Additional proposed language follows: Each court should collaborate….. and effective _personal_ service of process ….. _and entry of Proofs of Service into CLETS/DVROS in a timely manner._ | |
| Domestic Violence Prevention Act Restraining Orders #13 Service of process p. 16 | **Susan Shawn Roberts** Staff Attorney Bay Area Legal Aid Richmond | We strongly support the recommendations that are being made, which again are of particular importance to pro per litigants who have difficulties accessing the court. We encourage the task force to specifically adopt a rule of court providing that the time for service of restraining orders should be reduced to allow for service up to 5 days prior to hearing with a response due 2 days prior to hearing. This practice is standard in many, many jurisdictions but not in others. In fact, in some counties, some of the courts in the county will do the 5-day notice; and others, in the same county, say that it must be 10. (San Francisco Public | See Fam. Code Sections 241-242. This issue is already covered and not necessary to restate. The task force took no action based on this comment. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| | | | |
|---|---|---|---|
| **RESTRAINING ORDERS**<br>**Specific Comments** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | Hearing, p. 70) | |
| Domestic Violence Prevention Act Restraining Orders #14 Preparation and provision of restraining orders. p. 16 | **Steve Allen** Director of Legal Services Center for Community Solutions San Diego | It would be extremely helpful so that no protected party ever leaves the courtroom without an actual hard copy of the order, to make service of the restraining order after hearing and the preparation of the restraining order after hearing a court function. And then at the same time, it would also be timely entered into the California Law Enforcement Telecommunications System (CLETS).  (Los Angeles Public Hearing, p. 37) | The task force proposals adequately address this comment. |
| Domestic Violence Prevention Act Restraining Orders #14 Preparation and provision of restraining order p. 16 | **Daniel Burke** Attorney and Counselor At Law California Board of Legal Specialization | A provision should be added to require the parties to remain in the courtroom until the order is prepared, signed, and served because of the difficulty of service when no present address is known. | This suggestion raises safety issues. The task force took no action based on this comment. |
| Domestic Violence Prevention Act Restraining Orders #14 Preparation and provision of restraining order p. 16 | **Karen Cooper, MSW** Executive Director Family Services of Tulare County<br><br>Chair, Board of the California Partnership to End Domestic Violence<br><br>Governor's Appointee, State Domestic Violence Advisory Council | There's quite a bit of concern with the time delays that take place in orders after hearing. And the average is usually about a week, but that can even be problematic in terms of follow-up by law enforcement agencies.  (Los Angeles Public Hearing, p. 47) | Agree, but the comment does not suggest revision or require further action. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**RESTRAINING ORDERS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Domestic Violence Prevention Act Restraining Orders #14 Preparation and provision of restraining orders. p. 16 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author agrees with the proposal and suggests that it be modified to include the following language:  Each court….. such as date of birth or age *(even if the identifiers, are only estimations),* to enhance enforcement of orders.  Petitioners should be encouraged to enter estimates when the actual age and date of birth are unknown.  The author further suggests that it is essential for courts to develop procedures to ensure that Proofs of Service are entered into CLETS/DVROS to maximize the likelihood of enforcement. | The task force took no action based on this comment.  The language of the proposal is adequate to address this concern. |
| Domestic Violence Prevention Act Restraining Orders #14 Preparation and provision of restraining order p. 16 | **Olivia Horgan** Staff Attorney, Community Overcoming Relationship Abuse (CORA) San Mateo County | The speaker, from San Mateo County, fully supports this recommendation. (San Francisco Public Hearing, p. 199) | No action required. |
| Domestic Violence Prevention Act Restraining Orders #15 Past acts p.16 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author agrees with this proposal and asserts that it has particular importance. | No action required. |
| Domestic Violence Prevention Act Restraining Orders #15 | **Laura Fry** Attorney, Legal Aid Foundation | In Los Angeles, it  is often the practice to require "an act of physical violence within the last month or serious threats | The task force revised language to substitute "rigid timeframe for" for the words "a blanket or arbitrary |

58

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

<table>
<tr><td colspan="4"><strong>RESTRAINING ORDERS</strong><br><strong>Specific Comments</strong></td></tr>
<tr><td>Guideline/Practice</td><td>Commentator</td><td>Comment Excerpt or Summary:</td><td>Task Force Response</td></tr>
<tr>
<td>Past acts<br>p.16</td>
<td>Los Angeles</td>
<td>of violence in the past or serious threats currently" to warrant issuance of a restraining order. This provision should be clarified to prohibit this practice. (Los Angeles Public Hearing, p. 188)</td>
<td>timeline of."</td>
</tr>
<tr>
<td>Domestic Violence Prevention Act Restraining Orders<br>#15<br>Past acts<br>p.16</td>
<td><strong>Dianna Gould-Saltman</strong><br>Attorney at Law<br>Representative, Los Angeles Bar Association<br>Family Law Section</td>
<td>We agree that the court should never impose arbitrary or capricious requirements at all. (Los Angeles Public Hearing, p. 64)</td>
<td>Required no action.</td>
</tr>
<tr>
<td>Domestic Violence Prevention Act Restraining Orders<br>#16<br>Child and spousal support orders available<br>pp. 16-17</td>
<td><strong>Olivia Horgan</strong><br>Staff Attorney,<br>Community Overcoming Relationship Abuse (CORA)<br>San Mateo County</td>
<td>The speaker supports this proposal and further asserts that the Department of Child Support Services (DCSS) should be involved in restraining order proceedings and a DCSS attorney should be present. (San Francisco Public Hearing, p. 200)</td>
<td>The task force modified the language of the proposal to state that the court should have a collaborative relationship with DCSS and should take steps to expedite the award of child and spousal support in domestic violence cases.</td>
</tr>
<tr>
<td>Domestic Violence Prevention Act Restraining Orders<br>#16<br>Child and spousal support orders available<br>pp. 16-17</td>
<td><strong>Susan Shawn Roberts</strong><br>Staff Attorney<br>Bay Area Legal Aid<br>Richmond</td>
<td>We strongly support this recommendation.<br>The recommendation could go further, though, by providing that judges handling domestic violence matters should be trained in calculation of support, and if they had courtrooms equipped with the computers needed to make support calculations. Many of our satellite courts do not have any of the systems in place to facilitate</td>
<td>The task force modified the language of the proposal to state that the court should have a collaborative relationship with DCSS and should take steps to expedite the award of child and spousal support in domestic violence cases.</td>
</tr>
</table>

**Domestic Violence Practice and Procedure Task Force
Draft Guideline Comments**

| RESTRAINING ORDERS Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | orders being made. (San Francisco Public Hearing, p. 72) | |
| Domestic Violence Prevention Act Restraining Orders #16 Child and spousal support orders available pp. 16-17 | **Cheryl Segal** Attorney at Law Harriett Buhai Center for Family Law | I would also like to include custody in this discussion. I agree with this guideline. I think custody orders should be included with the restraining order. (Los Angeles Public Hearing, p. 55) | The task force agreed.  See Proposal #17. |
| Domestic Violence Prevention Act Restraining Orders #16 Child and Spousal Support Orders Available pp. 16-17 | **Hon. Rebecca Wightman** Commissioner, Department 416 Superior Court of California,   County of San Francisco | Great care needs to be taken as to procedures and the forms that accompany this recommended practice to ensure that all other child support orders in existence are revealed as well as the extent to which DCSS is involved.  Failure to identify these orders greatly increases the chance of multiple conflicting orders or voidable orders if DCSS was not properly notified. The practice should also ensure that the matters are heard by an AB 1058 commissioner except under exceptional circumstances or later referred to a child support commissioner if an interim order is issued by a judge.  See Family Code Section 4251-4252; California Rules of Court 5.305 (a) and (b). It is often difficult to calculate an | The task force modified the language of the proposal to state that the court should have a collaborative relationship with DCSS and should take steps to expedite the award of child and spousal support in domestic violence cases. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS | | | |
|---|---|---|---|
| **Specific Comments** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | accurate order in a DVPA proceeding if the responding parent's income is estimated but not verified.  Since the court does not have the power to retroactively modify a support order, distorted orders might lead to distorted arrears and possibly increase the risk of conflict and ultimately violence between the parties. The author suggests creation of an interim or temporary order that can be adjusted and are referred to the child support calendar for review or final determination.  All should be encouraged to use the assistance of DCSS for enforcement. The author emphasizes the need for training for the court, family law facilitators, and self-help centers as to the complexities of ensuring that no other support orders exist and that fair and accurate guideline orders are set. | |
| Domestic Violence Prevention Act Restraining Orders #19 Supervised Visitation p. 17 | **Nicholas Baran** Volunteer Legal Services San Francisco Bar Association | Supervised visitation should be provided free of cost to the victim of domestic violence.  It is the batterer who caused the violence, and, thus, it is unfair to impose half the cost on the victim.  If the payments are too costly, the victim may permit violation of the | The task force added a statement acknowledging the need for greater availability of affordable, supervised visitation programs. |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| RESTRAINING ORDERS Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | order, allow the batterer to visit the child at home, and risk another violent incident. | |
| Domestic Violence Prevention Act Restraining Orders #19 Supervised Visitation p. 17 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author suggests that courts consider allocating the fee to the batterer rather than order that the parties split the fee and that security at supervised visitation sites and facilities be enhanced, for example, by requiring staggered arrival and departure times.  Additional language is suggested as follows:  Every court should encourage the establishment of a facility or provider of _reasonably-priced (and low- or no-cost)_ supervised….. | The task force took no action based on this comment.  This is an issue for individual judicial discretion.  The task force added a statement that courts need greater availability of affordable, supervised visitation. |
| Domestic Violence Prevention Act Restraining Orders #19 Supervised visitation p. 17 | **Domestic Violence Advocates** California | The group agreed with this proposal but suggested that language be added to refer to "affordable" supervised visitation and safe exchange services. | The task force took no action based on this comment. This is an issue for individual judicial discretion.  The task force added a statement that courts need greater availability of affordable, supervised visitation. |
| Domestic Violence Prevention Act Restraining Orders #19 Supervised Visitation p. 17 | **Laura Fry** Attorney, Legal Aid Foundation Los Angeles | There is a tremendous need for resources for supervised visitation and safe-exchanges.  (Los Angeles Public Hearing, p. 191) | No action required. |
| Domestic Violence Prevention Act Restraining Orders | **Hon. Thomas Trent Lewis** Judge of the | The author supports this proposal and asserts that bilingual programs should | The task force added the concept of multi-lingual programs to the |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| RESTRAINING ORDERS Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| #19 Supervised visitation p. 17 | Superior Court of California, County of Los Angeles | be increased. | language of the proposal. |
| Domestic Violence Prevention Act Restraining Orders #20 Orders generally p. 17 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author agrees with the proposal and suggests additional modification. In some jurisdictions, "judicial officers expect that a true victim will have called the police about the abuse; these judicial officers then expect petitioners to produce police reports. Police reports have evidentiary problems, can contain inaccuracies, can be written with little preparation time, and can be used to undermine the credibility of the victim at the hearing. The author suggests that the following language be added to the proposal: …. Without requiring corroborating evidence, *including police reports.* The author further suggests that judicial education contain information about why victims may not have any corroborating evidence of the violence because of the private nature of the offense and because they are often instructed by the batterer to tell no one about the incidents. | This issue should be handled in the context of judicial education. The task force took no action based on this comment. |
| Domestic Violence Prevention Act | **Dianna Gould-Saltman** | As worded, this is unclear. (Los | The task force took no action based |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| RESTRAINING ORDERS | | | |
|---|---|---|---|
| **Specific Comments** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Restraining Orders<br>#20<br>Orders generally<br>p. 17 | Attorney at Law<br>Representative, Los Angeles<br>Bar Association<br>Family Law Section | Angeles Public Hearing, p. 66) | on this comment and determined that the language is clear. |
| Domestic Violence Prevention Act<br>Restraining Orders<br>#20<br>Orders generally<br>p. 17 | **Marivic Bay Mabanag**<br>Executive Director<br>California Partnership to End<br>Domestic Violence<br>Sacramento | It's an important recommendation.  So we are so glad that you have included it.<br>Obtaining a copy of the report in a timely manner can be difficult.<br>Family Code Section 6228 requires that law enforcement give one free copy of incident reports to a victim within 5 working days of her request, but allows for good cause delays up to 10 working days.<br>Even with the statute in place, however, victims around the state tell us that their local law enforcement will not provide them with any free copies of the report.<br>Even if they get a free copy, the hearing on their request for a restraining order may have come and gone in the 2 weeks law enforcement is allowed to take before providing a copy.  Even if the victim does obtain a copy in time for the hearing, we all know that police reports often contain inaccuracies simply because of the | The task force took no action based on this comment.  Obtaining incident reports from law enforcement is beyond the purview of the task force. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| RESTRAINING ORDERS<br>Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | conditions under which law enforcement officers work and draft their reports.  (San Francisco Public Hearing, p. 61) | |
| Domestic Violence Prevention Act Restraining Orders #21 Residence-exclusion orders p. 17 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author agrees with the proposal and suggests that language be added to encourage courts to work with local law enforcement to create protocols for the retrieval of belongings.  Some law enforcement agencies will not provide a mechanism for retrieval without a specific court order. | In response to this comment, the task force added a proposal to the Criminal Procedure section.  See Criminal Procedure Proposal #57. |
| Domestic Violence Prevention Act Restraining Orders #21 Residence-exclusion orders p. 17 | **Laura Fry** Attorney, Legal Aid Foundation Los Angeles | The commentator recommends that "a carefully explained order that the restrained person can retrieve specific possessions only with standby from law enforcement would help to reduce" the likelihood that the restrained person violates the terms of the order by returning home to retrieve personal property. | Refer to Restraining Order/Protective Order Forms Working Group. |
| Domestic Violence Prevention Act Restraining Orders #21 Residence-exclusion orders p. 17 | **Hon. Laura Halgren** Judge of the Superior Court of California,    County of San Diego | The author agrees with the proposal and also suggests that the order form be modified to provide space for an order on the topic of  the collection of the personal belongings of the restrained person. | Refer to Restraining Order/Protective Order Forms Working Group. |
| Domestic Violence Prevention Act | **Emberly Cross** | The author agrees with the proposal | The task force revised the language |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| | | | |
|---|---|---|---|
| **RESTRAINING ORDERS**<br>**Specific Comments** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Restraining Orders<br>#22<br>Termination or modification of a restraining order<br>p. 17 | Coordinating Attorney<br>Cooperative Restraining Order Clinic<br>San Francisco | and suggests that it be modified to include the following language:  If a litigant….. or dismissal is in fact the original applicant *(bearing in mind the burdens on access to justice this requirement might create for undocumented immigrants, courts should work with local community partner agencies to overcome such barriers);* and should ~~encourage~~ *set* hearings to determine….. with a support person *if the court believes the protected person might be acting under coercion or duress.*  Requiring proof of identity may raise issues for undocumented immigrants.  The court should consider posting a notice that the court does not work with immigration officials to assist in deportation of undocumented parties.  Hearings should not be automatically continued unless the court determines that there has been duress. | to permit the court to conduct a hearing, but otherwise took no action based on this comment. |
| Domestic Violence Prevention Act<br>Restraining Orders<br>#22<br>Termination or modification of a restraining order<br>p. 17 | **Pamela Kallsen**<br>Executive Director<br>Marjaree Mason Center<br>Fresno | On our family court side, the judge will ask the victims to step out and speak to an advocate so the advocate can explain the situation and what the consequence of lifting that restraining order might be.  (San Francisco Public | The task force revised the language to permit the court to conduct a hearing, but otherwise took no action based on this comment. |

66

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS<br>Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | Hearing, p. 82) | |
| Domestic Violence Prevention Act<br>Restraining Orders<br>#22<br>Termination or modification of a<br>restraining order<br>p. 17 | **Fariba<br>Nourdjahan**<br>Citizen | The author agrees with this proposal<br>and adds that great care should be<br>given to avoid believing false<br>allegations and over-exaggerations. | Required no action. |
| Domestic Violence Prevention Act<br>Restraining Orders<br>#22<br>Termination or modification of a<br>restraining order<br>p. 17 | **Cheryl Segal**<br>Attorney at Law<br>Harriett Buhai Center for Family Law | I agree with this guideline.<br>I think a hearing to determine whether<br>or not the batterer has influenced her<br>in some way is really important.<br>Keep language of proposal as is. (Los<br>Angeles Public Hearing, p. 56) | The task force revised the language<br>to permit the court to conduct a<br>hearing, but otherwise took no action<br>based on this comment. |
| Domestic Violence Prevention Act<br>Restraining Orders<br>#22<br>Termination or modification of a<br>restraining order<br>p. 17 | **Jennifer Wyllie-Pletcher**<br>Adjunct Professor of Law<br>Domestic Violence<br>Hastings College of the Law<br>Golden Gate University | The protected person should not have<br>to show proof of identity when there<br>are other less intrusive ways to ensure<br>that the person seeking withdrawal or<br>termination is in fact the original<br>applicant.  The following language<br>"should require proof of identity…"<br>should be changed to "should make<br>sure that the person requesting the<br>withdrawal or dismissal is in fact the<br>original applicant…" | The task force modified the language<br>of the proposal based on this<br>comment. |
| Domestic Violence Prevention Act<br>Restraining Orders<br>#23<br>Staffing<br>p. 18 | **Emberly Cross**<br>Coordinating Attorney<br>Cooperative Restraining Order Clinic<br>San Francisco | The author agrees with the proposals. | Required no action. |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**RESTRAINING ORDERS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| #24<br>Court interpreters<br>p. 18<br><br>#25<br>Training for court interpreters<br>p. 18 | | | |
| Domestic Violence Prevention Act<br>Restraining Orders<br>#23<br>Staffing<br>p. 18 | **Niki Solis**<br>Managing Attorney,<br>Domestic Violence and<br>Misdemeanor Unit<br>San Francisco Public Defender's<br>Office | The draft guidelines should be revised so that the liaison function mentioned as a staff duty includes the public defender. (San Francisco Public Hearing, p. 163) | The task force took no action based on this comment. The language of the proposal addresses this concern. |
| Domestic Violence Prevention Act<br>Restraining Orders<br>#24<br>Court interpreters<br>p. 18 | **Domestic Violence Advocates**<br>California | The group agreed with this proposal and suggested as well that a Judicial Council form be developed for use in requesting an interpreter. | Refer to AOC court interpreters grant program. |
| Domestic Violence Prevention Act<br>Restraining Orders<br>#24<br>Court interpreters<br>p. 18<br><br>#25<br>Training for court interpreters<br>p. 18 | **Susan Shawn Roberts**<br>Staff Attorney<br>Bay Area Legal Aid<br>Richmond | We strongly support the recommendations regarding the provision of interpreters in domestic violence matters, including the family court services mediation sessions and self-help settings. Many of our clients have run into difficulties in those areas.<br>Needed interpretation be continued throughout the custody and support | Required no action. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

**RESTRAINING ORDERS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | hearings related to the domestic violence case.  (San Francisco Public Hearing, p. 73) | |
| Domestic Violence Prevention Act Restraining Orders #27 Self-represented litigants p. 18 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author agrees with the proposal and suggests that the judicial officers should take a questioning role even when one of the parties is represented. Additional language is suggested as follows:  …. As necessary in the specific case, *including in contested hearings in which one party is self-represented and the other party is represented by counsel.* | No additional change in language is necessary.  The task force took no action based on this comment. |
| Domestic Violence Prevention Act Restraining Orders #28 Scheduling hearings p. 18 | **Niki Solis** Managing Attorney, Domestic Violence and Misdemeanor Unit San Francisco Public Defender's Office | With regard to scheduling hearings on stay-away orders, we do want it to happen expeditiously. But sometimes people can't – they don't have an attorney or they've just been notified or given notice of this hearing, and just to have them be able to get an attorney at the hearing I think would be important.  Again, it would ensure the integrity of the system. (San Francisco Public Hearing, p. 161) | No action required. |
| Domestic Violence Prevention Act Restraining Orders #29 Local procedures p. 19 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author agrees with the proposal and suggests in addition that the policies and procedures be developed in conjunction with community partner agencies.  The following | The task force took no action based on this comment.  The degree to which community agencies are involved in the development of procedures varies in different |

69

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| RESTRAINING ORDERS Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | suggested language is submitted: ….. *the procedures should be created in conjunction with community partner agencies, made available for public comment before going into effect, ….* | counties. |
| Domestic Violence Prevention Act Restraining Orders #30 Calendar management p. 19 | **Hon. Becky Lynn Dugan** Judge of the Superior Court of California, County of Riverside | Each court should consider creation of a dedicated domestic violence court in both family and criminal. The advantage is that there is a "dedicated judge who knows the facts of the case and who sees the same defendant over and over again." (Los Angeles Public Hearing, p. 170) | See Court Leadership, Proposal #6 |
| Domestic Violence Prevention Act Restraining Orders #30 Calendar management p. 19 | **Laura Fry** Attorney, Legal Aid Foundation Los Angeles | The commentator recommends a dedicated domestic violence calendar but asserts as well that such a calendar should ensure that custody, visitation, and support are addressed. | See Court Leadership, Proposal #6 |
| Domestic Violence Prevention Act Restraining Orders #31 Court coordination p. 19 | **Daniel Burke** Attorney and Counselor At Law California Board of Legal Specialization | This recommended practice should be redrafted to eliminate the word "communication" to avoid all possible prohibited ex parte communications. The court can take judicial notice of all proceedings, orders and/or convictions, but should not take evidence or gain information from any source unless the litigants have such information simultaneously available. | The task force modified the language of the proposal to track the language of Rule 5.450. |
| Domestic Violence Prevention Act | **Emberly Cross** | The author agrees with the proposal | The task force modified the language |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS<br>Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Restraining Orders<br>#31<br>Court coordination<br>p. 19 | Coordinating Attorney<br>Cooperative Restraining Order Clinic<br>San Francisco | and suggests in addition that the court, to ensure due process, develop a mechanism for informing the parties of what information the court finds in conducting the recommended research.  The following additional language is suggested:  … and information regarding children, ~~and~~ providing the information to judges in all relevant departments, *and informing the parties of what information the court finds in conducting such research*….. | of the proposal to track the language of Rule 5.450. |
| Domestic Violence Prevention Act<br>Restraining Orders<br>#31<br>Court coordination<br>p. 19 | **Laura Fry**<br>Attorney,<br>Legal Aid Foundation<br>Los Angeles | The commentator strongly agrees with this proposal and notes that in Los Angles as a matter of practice judicial officers rely primarily on information provided by the parties to determine whether there are pending related cases. | Required no action. |
| Domestic Violence Prevention Act<br>Restraining Orders<br>#31<br>Court coordination<br>p. 19 | **Dianna Gould-Saltman**<br>Attorney at Law<br>Representative, Los Angeles Bar Association<br>Family Law Section | The tools should be used to transmit information as fast and accurately as possible. (Los Angeles Public Hearing, p. 66) | Required no action. |
| Domestic Violence Prevention Act<br>Restraining Orders<br>#31<br>Court coordination | **Hon. Mary Carolyn Morgan**<br>Judge of the Superior Court of California,<br>   County of San Francisco | We…routinely check the box that says, "This order can be modified by a subsequent order if the defendant seeks order of the Unified Family | Required no action. |

**Domestic Violence Practice and Procedure Task Force
Draft Guideline Comments**

| | | | |
|---|---|---|---|
| **RESTRAINING ORDERS**<br>**Specific Comments** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| p. 19 | | Court."  That's extremely important. We also tell the defendant, "When you are released from custody, go to the Family Law Court". There's an affirmative encouragement to get people there.  We have a wonderful access center that helps people who do not have lawyers so that they can go before a judge without a lawyer, go to mediation. (San Francisco Public Hearing, p. 185) | |
| Domestic Violence Prevention Act Restraining Orders #31 Court coordination p. 19 | **Hon. Rebecca Wightman** Commissioner, Department 416 Superior Court of California, County of San Francisco | This proposal should be extended to include a search for child support orders both in local databases and within DCSS' statewide system. | The language of the proposal was modified to include information regarding children. |
| Domestic Violence Prevention Act Restraining Orders #32 Court communication p. 19 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author agrees with the proposal and suggests that the language be clarified to ensure that the meetings should include judicial officers from different assignments because of the overlap of domestic violence issues. Suggested language follows:  Each court….. regular domestic violence judges' meetings that include judicial officers from different assignments, including criminal, family, and juvenile departments. | The task force took no action based on this comment.  The language of the proposal adequately addresses this concern. |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**RESTRAINING ORDERS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Domestic Violence Prevention Act Restraining Orders #33 Training p. 19 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author agrees with this proposal and suggests modifications that broaden the scope of the education and training to include a range of judicial assignments and additional topics and to include information sharing with local community agencies in addition to bench/bar groups.  Suggested language follows:  Each court …… to their assignments, _keeping in mind that judicial officers in every assignment are likely to encounter domestic violence in their caseload in some capacity (incuding probate, civil, criminal, family, and juvenile).  Such training should include the topics of domestic violence, sexual assault, stalking, and immigration.   Court policies regarding trainings, days out of court, and judicial assignments – as well as the allocation of court resourses – should be structured so as to encourage all judicial officers to take advantage of opportunities for introductory and advanced training in this area._   The court should also regularly provide information to bench/bar groups _and other local community partner agencies_ about | Training and education suggestions will be referred to the Violence Against Women Education Project Planning Committee as part of the implementation phase. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: court …. | Task Force Response |
| Domestic Violence Prevention Act Restraining Orders #33 Training p. 19 | **Domestic Violence Advocates** California | The group agreed with this proposal and suggested the addition of language as follows:  Each court should endorse and ensure _periodic_ training for all…..” | The task force modified the language based on this comment. |
| Domestic Violence Prevention Act Restraining Orders #33 Training p. 19 | **Jennifer Wyllie-Pletcher** Adjunct Professor of Law Domestic Violence Hastings College of the Law Golden Gate University | Training should include updates; one-time only training is not sufficient. | Training and education suggestions will be referred to the Violence Against Women Education Project Planning Committee as part of the implementation phase. |
| Domestic Violence Prevention Act Restraining Orders #34 Statistics p. 19 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author agrees with this proposal and suggests additional areas where information is needed.  Suggested additional language follows:  The AOC….. of DVPA filings, _the relationships of the parties,_ temporary restraining orders issued, number of children involved, proofs of service filed, number of reissuances, _number of contested hearings versus "default hearings,_ ~~and~~ number of restraining orders after hearing issued, _and length/duration of such orders after hearing._ | The language of the proposal was modified to address these concerns. |
| Domestic Violence Prevention Act Restraining Orders #34 Statistics | **Laura Fry** Attorney Legal Aid Foundation Los Angeles | The author agrees with this proposal and suggests in addition that statistics relating to "child custody orders issued pursuant to DVPA requests" | The language of the proposal was modified to address these concerns. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS | | | |
|---|---|---|---|
| **Specific Comments** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| p. 19 | | and "child and spousal support orders issued pursuant to DVPA requests" be added to the list. Data should be collected about how many parties file dissolution or parentage actions subsequent to DVPA actions and how many of these actions are subsequently consolidated . | |
| Domestic Violence Prevention Act Restraining Orders #34 Statistics p. 19 | **Hon. Thomas Trent Lewis** Judge of the Superior Court of California, County of Los Angeles | The author supports this proposal. | No action required. |
| Domestic Violence Prevention Act Restraining Orders #35 Facility security pp. 19-20 | **Beverly Upton** Executive Director San Francisco Domestic Violence Consortium San Francisco | The community and the bench have been working together for quite some time to try to ensure safety and figure out ways to have victims and perpetrators not standing in the same lines in the morning going into court, not having common waiting areas. (San Francisco Public Hearing, p. 48) | Required no action. |
| Domestic Violence Prevention Act Restraining Orders #36 California Law Enforcement Telecommunications System (CLETS)/Domestic Violence Restraining Order System (DVROS) p. 20 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author agrees with the proposal and suggests that the references in the proposal should be to Family Code sections 6218 and 6320 rather than 6203 and 6320. The author suggests that the proposal also include a reference to the requirement that Proofs of Service must also be entered | The task force modified the proposal based on this comment. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

**RESTRAINING ORDERS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | into CLETS/DVROS to maximize the likelihood of enforcement. | |
| Domestic Violence Prevention Act Restraining Orders #36 California Law Enforcement Telecommunications System (CLETS)/Domestic Violence Restraining Order System (DVROS) p. 20 | **Valerie Fercho-Tillery** Program Manager Department of Justice, Domestic Violence Restraining Order System | The DVROS unit disagrees with this proposal with respect to the deletion of the requirement that the date of birth be provided. The only mandatory data code that will enable the system to distinguish between individuals with the same name is the date of birth. The date of birth should be required. | The task force took no action based on this comment. The date of birth is not always known to the court. |
| Domestic Violence Prevention Act Restraining Orders #36 California Law Enforcement Telecommunications System (CLETS)/Domestic Violence Restraining Order System (DVROS) p. 20 | **Niki Solis** Managing Attorney, Domestic Violence and Misdemeanor Unit San Francisco Public Defender's Office | There's also the flip side of that, when a defendant's restraining order is removed. Who ensures that that is removed out of the system? It has been a problem in a lot of cases. (San Francisco Public Hearing, p. 158) | The language of the proposal addresses this concern. |
| Domestic Violence Prevention Act Restraining Orders Domestic Violence Prevention Act Restraining Order #37 "Non-CLETS" restraining orders p. 20 | **Karen Cooper, MSW** Executive Director Family Services of Tulare County Chair, Board of the California Partnership to End Domestic Violence Governor's Appointee, State Domestic Violence Advisory Council | Non-CLETS restraining orders are ordered by some judges routinely if there is any indication of any violent behavior on the part of the petitioner. To ensure that all requests for restraining orders that are approved are such that they can be entered into CLETS and DVROS. It is an excellent choice for a recommendation and it's based on sound logic. (Los Angeles | Required no action. |

**Domestic Violence Practice and Procedure Task Force
Draft Guideline Comments**

| RESTRAINING ORDERS Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: Public Hearing, p. 48) | Task Force Response |
| Domestic Violence Prevention Act Restraining Orders #37 Non-CLETS restraining orders p. 20 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author disagrees with the proposal and asserts that a blanket ban on non-CLETS restraining orders could have significant unintended consequences that place victims in more danger.  In some cases, the victim may prefer a stipulated order, for example, when a batterer has many more resources and has an attorney that can prolong the litigation and may have the resources to present a more compelling case.  The author suggests instead that the proposal be changed to caution courts about "problems potentially caused by non-CLETS orders and to encourage courts to engage in a voir dire with the parties on the record to ensure that they are aware of their rights to seek CLETS orders, that they have a right to contest issuance of mutual restraining orders under Family Code 6305 in a contested court hearing, that non-CLETS orders will not be enforced by law enforcement, and that they may come back to court in the future to seek CLETS orders if the non-CLETS orders are violated. | The task force took no action based on this comment.  The proposal was streamlined and much of the language was placed in the discussion section of the report. |
| Domestic Violence Prevention Act | **Valerie Fercho-Tillery** | The DVROS unit supports this | No action required. |

**Domestic Violence Practice and Procedure Task Force
Draft Guideline Comments**

| RESTRAINING ORDERS<br>Specific Comments | | | |
| --- | --- | --- | --- |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Restraining Orders<br>#37<br>Non-CLETS restraining orders<br>p. 20 | Program Manager<br>Department of Justice, Domestic Violence<br>Restraining Order System | proposal.  As a matter of policy, even orders not required to be entered into DVROS are accepted. | |
| Domestic Violence Prevention Act<br>Restraining Orders<br>#37<br>Non-CLETS restraining orders<br>p. 20 | **Laura Fry**<br>Attorney<br>Legal Aid Foundation<br>Los Angeles | The author supports this proposal and, although at times an order not intended to be entered into CLETS seems warranted, on balance it is the better practice to avoid such orders. | No action required. |
| Domestic Violence Prevention Act<br>Restraining Orders<br>#37<br>Non-CLETS restraining orders<br>p. 20 | **Dianna Gould-Saltman**<br>Attorney at Law<br>Representative, Los Angeles Bar Association<br>Family Law Section | If parties have entered into an agreement for non-CLETS orders, they understand the limits of those orders, and the court has assured itself that the agreement was not entered into as a product of duress or coercion, then the orders should be granted under appropriate circumstances. (Los Angeles Public Hearing, p. 67) | The task force took no action based on this comment.  The proposal was streamlined and much of the language was placed in the discussion section of the report. |
| Domestic Violence Prevention Act<br>Restraining Orders<br>#37<br>Non-CLETS restraining orders<br>p. 20 | **Hon. Laura Halgren**<br>Judge of the Superior Court of California,<br>   County of San Diego | The author disagrees with the proposal and suggests that a family law judicial officer should have the discretion to issue "orders regarding conduct that are necessary to aid in peaceful resolution of the case."  Such orders may serve "to control the behavior of the parties, while they are going through the emotional process of | The task force took no action based on this comment.  The proposal was streamlined and much of the language was placed in the discussion section of the report. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

**RESTRAINING ORDERS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | dissolving the marriage or working out custody and visitation" and may also be used to "minimize the contact between the parties to avoid escalation of emotions or to reduce the children's exposure to conflict." They should be used when there are no true safety issues. They are enforceable by contempt but also by more restrictive visitation. A blanket ban on such orders is overbroad. | |
| Domestic Violence Prevention Act Restraining Orders #37 Non-CLETS restraining orders p. 20 | **Pamela Kallsen** Executive Director Marjaree Mason Center Fresno | We are in total support. (San Francisco Public Hearing, p. 83) | No action required. |
| Domestic Violence Prevention Act Restraining Orders #37 Non-CLETS restraining orders p. 20 | **Rick Layon** Criminal Defense Attorney San Diego | The speaker objects to this proposal and favors flexibility in issuing "non-CLETS" orders especially for those whose employment depends on being able to possess firearms. (Los Angeles Public Hearing, p. 155) | The task force took no action based on this comment. The proposal was streamlined and much of the language was placed in the discussion section of the report. |
| Domestic Violence Prevention Act Restraining Orders #36 Non-CLETS restraining orders p. 20 | **Amy N. Paul** Leland, Parachini, Steinberg, Matzger & Melnick San Francisco | The author opposes this proposal and believes that stipulated family law no contact orders should be permissible. The author asserts that the parties are in the best position to assess their needs regarding restraining orders and that precluding this option will lead to | The task force took no action based on this comment and believes that the statutory mandates contained in the Domestic Violence Prevention Act preclude "non-CLETS" orders of the sort described in this comment. |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| RESTRAINING ORDERS Specific Comments | | | |
| --- | --- | --- | --- |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | further litigation. | |
| Domestic Violence Prevention Act Restraining Orders #37 Non-CLETS restraining orders p. 20 | **James Rowland** Managing Attorney, Domestic Violence Unit San Francisco District Attorney's Office | Non-CLETS orders can cause a lot of problems and the criminal side as well as on the civil side, and that's a real safety issue, and needs to be emphasized.  I think it would be doing a real service there.  (San Francisco Public Hearing, p. 176) | No action required. |
| Domestic Violence Prevention Act Restraining Orders #37 Non-CLETS restraining orders p. 20 | **Julie Saffren** Attorney at Law Domestic Violence Limited Scope Representation Project San Jose | On the brief topic of non-CLETS orders, I'm in agreement with the concerns the Task Force has outlined.  But despite those concerns, I do not wish them to be altogether prohibited.  I believe that if a victim has DV-trained counsel, there are very rare instances where a non-CLETS order may be an appropriate outcome.  It may be preferable to a hearing where a victim will not meet her burden, or a hearing that stands to expose a victim to extreme humiliation.  It may be a reasonable option in very limited circumstances related to employment or immigration consequences.  Non-CLETS is a problematic gray area, but it should remain gray rather than the black and white options of prohibiting them.  (San Francisco Public Hearing, p. 44) | The task force took no action based on this comment.  The proposal was streamlined and much of the language was placed in the discussion section of the report. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS | | | |
|---|---|---|---|
| Specific Comments | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Domestic Violence Prevention Act Restraining Orders #37 Non-CLETS restraining orders p. 20 | **Hon. Robert Schnider** Supervising Judge Superior Court of California, County of Los Angeles | The author supports the work of the task force generally but submits comments to support modification of the proposal pertaining to "non-CLETS restraining orders." The language that courts "should decline to approve or make" non-CLETS type orders should be removed entirely or the following language should be substituted: Courts should "carefully weigh the decision to approve or make…" non-CLETS type orders. The author asserts that the DVPA did not occupy the field in regulating the issuance of general restraining orders and cites *In re Marriage of Candiotti* (1995) 34 Cal. App. 4th 1718, approving in *dicta* certain types of restraining orders and Family Code section 2047 that distinguishes between protective orders and other types of orders that might constitute restraints against a party. The author also asserts that issuance of orders governing the civility of the parties makes good sense from a policy standpoint. The proposal creates a roadblock for the court to create a normative standard of conduct | The task force took no action based on this comment. The proposal was streamlined and much of the language was placed in the discussion section of the report. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| RESTRAINING ORDERS | | | |
|---|---|---|---|
| **Specific Comments** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | for the parties which might actually lead to greater disputes and escalate violence. The parties have the authority to make agreements regarding these issues, especially in the family law setting, and the State should not abrogate that authority. The proper remedy for ill-advised use of the "non-CLETS" type order is training. The effects of a non-CLETS type order on enforceability is a problem only when a new incident of violence does not occur because the police can respond to a new incident without an order. | |
| Domestic Violence Prevention Act Restraining Orders #37 Non-CLETS restraining orders p. 20 | **Barbara Scramstad** Attorney at Law Scramstad & Bryan Concord | Orders that affect conduct in a family law matter but are not intended to be entered into DVROS and are enforceable by contempt rather than law enforcement are needed by practitioners for the following reasons: 1. They are invaluable as a settlement tool. 2. Protected parties may not have sufficient funds to actually litigate the restraining order and may agree to lesser protection as a result. 3. Certain types of abuse – such | The task force took no action based on this comment. The proposal was streamlined and much of the language was placed in the discussion section of the report. |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**RESTRAINING ORDERS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | as financial abuse – may not be seen as "domestic violence" and litigating the restraining order issue may be risky because no physical abuse occurred. 4. Some parties prefer a private settlement over a public hearing that reveals the underlying facts. 5. Rarely will a party agree to a CLETS order because of the effects under Family Code section 3044. These orders, however, should be issued only when there is a stipulation and never when there is an issue of further physical harm. | |
| Domestic Violence Prevention Act Restraining Orders #37 Non-CLETS restraining orders p. 20 | **Cheryl Segal** Attorney at Law Harriett Buhai Center for Family Law | I concur with this proposal. (Los Angeles Public Hearing, p. 57) | No action required. |
| Domestic Violence Prevention Act Restraining Orders #37 Non-CLETS restraining orders p. 20 | **Tami M. Warwick** Deputy Attorney General | The author supports the proposal and suggests language that would clarify that Fam. Code section 6305 precludes mutual orders unless several prerequisites are met. | The task force clarified the language of the proposal to address these concerns. |
| Domestic Violence Prevention Act | **Diane Wasznicky** | The committee opposes this | The task force took no action based |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| RESTRAINING ORDERS<br>Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Restraining Orders<br>#37<br>Non-CLETS restraining orders<br>p. 20 | Liaison to the Family and Juvenile Law Advisory Committee State Bar of California Family Law Section Executive Committee | recommendation based on the assertion that stipulated orders are a useful settlement tool. The committee would support affording discretion to the court to make an inquiry as to whether a stipulation for a "non-CLETS" order was entered into freely and knowingly. On some occasions, such as when the restraining order is supported by minimal facts and may have been used to manipulate the process, a hearing is not advisable. | on this comment. The proposal was streamlined and much of the language was placed in the discussion section of the report. |
| Domestic Violence Prevention Act Restraining Orders<br>#37<br>Non-CLETS restraining orders<br>p. 20 | **Jennifer Wyllie-Pletcher** Adjunct Professor of Law Domestic Violence Hastings College of the Law Golden Gate University | This proposal should be adopted. So-called "Non-CLETS" orders create a false sense of security, do not adequately inform the restrained party of any limitations, do not meet the federal requirements for full faith and credit, and are not enforced by law enforcement. Any benefits are far outweighed by the negative effects. | No action required. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| FIREARMS RELINQUISHMENT | | | |
|---|---|---|---|
| General Comments | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Firearms Relinquishment General | **Criminal Law Advisory Committee** | The committee discussed many options, including whether it violated the Fifth Amendment for the court to ask an unrepresented defendant about whether they had a gun.  Given this serious concern, the committee decided to recommend to the Domestic Violence Task Force that if there is evidence of a gun, a respondent subject to a restraining order be ordered to file a receipt for relinquishment or a statement that they do not have a gun.  If the respondent does not file, either the receipt or statement, the court should hold an OSC hearing. | The task force agrees in principal with this suggestion and revised the proposal accordingly. |
| Firearms Relinquishment General | **Donald Kilmer, Jr.** Attorney at Law San Jose | Impose some kind of a constructive trust on the firearms to the protected party.  That's the person who has the interest in making sure that those guns don't go anywhere. Then when we get to the hearing, a judge can make an appropriate order for sale or disposition.  But having the gun owner themselves go to their safe, get their guns during that highly emotional period, is just not a good idea. That's all obviated if the restraining order is served by a police officer | The task force does not take a position on this comment because it proposes legislation that is beyond the purview of the task force. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| FIREARMS RELINQUISHMENT | | | |
|---|---|---|---|
| **General Comments** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | who's present and can take possession of the guns.  (San Francisco Public Hearing, p. 131) | |
| Firearms Relinquishment General | **Undersheriff Larry Waldie** Los Angeles County Sheriff's Department | The task force recommended a minimum standard that law enforcement and prosecutors adopt procedures to determine if the batterer possesses firearms, and to seize such firearms in accordance with the requirements outlined in a protective order. We concur with this recommendation.  (Los Angeles Public Hearing, p. 75) | No response necessary. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| FIREARMS RELINQUISHMENT<br>Fifth Amendment Issues | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Firearms Relinquishment<br>Fifth Amendment Issue | **Kate Killeen**<br>Former Deputy Executive Director<br>California District Attorneys<br>Association<br>Sacramento | It does appear that with all consideration in balance, it is important to ask the individual if they have had a firearms not only because on just one occasion, but at multiple occasions, because we all know that people may have a firearm one day and not another day, or they may have come into acquisition of a firearm through a variety of different means. (San Francisco Public Hearing, p. 118) | No response necessary. |
| Firearms Relinquishment<br>Fifth Amendment Issue | **Donald Kilmer, Jr.**<br>Attorney at Law<br>San Jose | If somebody's in possession of an unregistered assault weapon, and illegally bought handgun, a machine gun or any other number of devices that qualify as firearms, and they have to fill out a form to turn in the gun or relinquish it to law enforcement, they're admitting a crime.<br>We have to come up with some mechanism for use immunity for these status crimes. | The task force does not take a position on this comment because it proposes legislation that is beyond the purview of the task force. |
| Firearms Relinquishment<br>Fifth Amendment | **Alison Merrilees**<br>Deputy Attorney General<br>Legal Counsel, Firearms Division<br>California Department of Justice | Absolutely this is appropriate.<br>The Fifth Amendment issue is a very thorny one but it's not quite as clear cut as it may appear.  I think—whether it is a Fifth Amendment violation to inquire of someone about firearms ownership may depend upon the circumstances, the time, the place and manner in which that question is asked | No response required. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**FIREARMS RELINQUISHMENT**
**Fifth Amendment Issues**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | and the legal status of the person. If they are not prohibited already from possessing firearms, it could be very well not a violation of the Fifth Amendment to inquire about firearms ownership.  (Los Angeles Public Hearing, p. 90) | |
| Firearms Relinquishment General | **Niki Solis** Managing Attorney, Domestic Violence and Misdemeanor Unit San Francisco Public Defender's Office | Requiring defendant to submit a declaration as to firearms possession runs afoul of the defendant's Fifth Amendment rights. The resolution to the firearms dilemma is to conform to existing law and require law enforcement to obtain a warrant.  (San Francisco Public Hearing, p. 164) | The task force acknowledges the concern and believes the revised proposal does not violate the defendant's rights. |
| Firearms Relinquishment Fifth Amendment Issue | **Elaine Tipton** Deputy District Attorney County of San Mateo | There are no Fifth Amendment issues triggered by a requirement that a person do one or the other.  Either surrender a weapon that they do have or declare that they don't own or possess weapons.  (San Francisco Public Hearing, p. 90) | The task force agrees that this approach does not implicate the 5th Amendment to the U.S. Constitution. |

88

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| FIREARMS RELINQUISHMENT New Proposals | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Firearms Relinquishment New | **Victoria Adams** Deputy District Attorney Los Angeles County District Attorney's Office | If a victim has identified that there is a weapon in the home, law enforcement does not have the tools in which they can immediately seize it without going through a warrant process. So we really do need to get these warrants.  (Los Angeles Public Hearing, p. 79) | No response necessary. |
| Firearms Relinquishment New | **Steve Allen** Director of Legal Services Center for Community Solutions San Diego | It would be helpful to use the coercive powers of civil courts to get guns from individuals who are subject to restraining orders.  The Special Needs warrant that's been tried and tested in New Jersey and the appellate system there, where on the testimony of the protected party, the court is able to issue a warrant and actually allow law enforcement to retrieve guns from an individual subject to the restraining order. (Los Angeles Public Hearing, p. 38) | The commentator's suggestion would require legislation that is beyond the purview of the task force. |
| Firearms Relinquishment New | **Katherine Caballero** Member of public | If an order after hearing is granted, the judicial officer should admonish the restrained party, ask him or her to relinquish all firearms, and explain the firearms restrictions.  (San Francisco Public Hearing, p. 204) | The task force agrees and confirms its support of the proposals regarding oral advisement of the firearms prohibitions. |
| Firearms Relinquishment New | **Katherine Caballero** Member of the Public | Revise DV-110 to advise the protected person of the rights afforded under Penal Code section 11106 to verify that the abuser has complied with the firearms relinquishment order.  See | The task force will forward this comment to the appropriate Judicial Council Advisory Committee for consideration of whether a new or revised Judicial Council court form is |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| FIREARMS RELINQUISHMENT |||| |
| :-- | :-- | :-- | :-- |
| New Proposals |||| |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | Penal Code section 11106(d)(1)(A) | needed. |
| Firearms Relinquishment New | **Rick Layon** Criminal Defense Attorney San Diego | Legislation should be sought to grant use immunity regarding testimony about firearms possession. The proposals in this area definitely raise 5th amendment issues. (Los Angeles Public Hearing, p. 156) | This comment recommends legislation that is beyond the purview of the task force. |
| Firearms Relinquishment New | **Alison Merrilees** Deputy Attorney General Legal Counsel, Firearms Division California Department of Justice | There is no court order that can or should restore firearms rights to a person who's convicted of a misdemeanor crime of domestic violence, because they are federally prohibited from possessing firearms for life. That's something that people should be told right up front at the time when they plead guilty, because that is a lifetime consequence. (Los Angeles Public Hearing, p. 94) | The task force noted that firearms admonitions are routinely included at the time pleas are entered. |
| Firearms Relinquishment New | **Elaine Tipton** Deputy District Attorney County of San Mateo | Make the 136.2 order an order that would issue in the alternative, where a defendant would be ordered to either show—file with the court within 48 hours proof that he or she had complied with the requirement that he or she relinquish firearms by either surrender or sale; or, in the alternative, file a declaration or verification of non-ownership or possession. (San Francisco Public Hearing, p. 89) | The task force agrees in principle with this comment and has revised the proposal accordingly. |
| Firearms Relinquishment New | **Elaine Tipton** Deputy District Attorney | Consider the possibility of imposing search and seizure on a defendant at | The task force believes that there is no clear authority for this proposal. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| FIREARMS RELINQUISHMENT |||| |
|---|---|---|---|
| **New Proposals** |||| |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|  | County of San Mateo | the time he is arraigned.  Most CPOs are issued at the time of arraignment, when the defendant is ordered to surrender and not own or possess firearms.  The court should also consider imposing search and seizure conditions –whether the defendant's being released on his own recognizance or bail is being set.  (San Francisco Public Hearing, p. 93) |  |
| Firearms Relinquishment New | **Elaine Tipton** Deputy District Attorney County of San Mateo | Emergency Protective Orders: I don't believe most law enforcement officers realize that the issuance of an EPO triggers that same prohibition against owning or possessing weapons. (San Francisco Public Hearing, p. 97) | No response necessary. |
| Firearms Relinquishment New | **Elaine Tipton** Deputy District Attorney County of San Mateo | I suggest that if the EPO form says clearly on its face that the agency who has obtained the EPO from the judge must enter the EPO within one business day into DVROS, which will eliminate any confusion about whether or not it's the police agency's job or the court's job. It makes more sense for the police department to do it. (San Francisco Public Hearing, p. 98) | The comment suggests legislation that is beyond the purview of the task force. |
| Firearms Relinquishment New | **Lauren Zorfas** Family Law Facilitator Superior Court of California,    County of San Mateo | There are many times that a victim may be reluctant to disclose not only the location of firearms, but whether or not the respondent has any firearms at all.  She may have been threatened | The task force has revised the proposal to reflect this suggestion, except as required by statute. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| FIREARMS RELINQUISHMENT<br>New Proposals | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | with those weapons in the past and fear the repercussions of having the batterer have his guns taken away at what will seem like her direction. Careful safety planning should take place before any inquiries are made of the victim as to the location of any firearms. (San Francisco Public Hearing, p. 107) | |
| Firearms Relinquishment<br>New | **Lauren Zorfas**<br>Family Law Facilitator<br>Superior Court of California,<br>    County of San Mateo | What should be developed is a declaration of non-possession, whereby each respondent who does not own or possess firearms is ordered to file this with the court if in fact they do not own or possess a firearm.<br>This tool would narrow the pool of noncompliant respondents.<br>It also does not put the court in the position of asking whether the respondent owns or possesses.(San Francisco Public Hearing, p. 110) | The task force agrees and has revised the proposal accordingly. |
| Firearms Relinquishment<br>New | **Lauren Zorfas**<br>Family Law Facilitator<br>Superior Court of California,<br>    County of San Mateo | The court might take the approach to advise the respondent at the hearing for the permanent restraining order that either of the forms must be filed within 72 hours, and failure to do so will result in a referral to law enforcement and/or the District Attorney's office.<br>The District Attorney's office, a proper investigating agency, could then decide whether the case warrants | The task force has revised the proposal accordingly. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

**FIREARMS RELINQUISHMENT**
**New Proposals**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | prosecution. Also the defendant would be afforded legal representation should a Fifth Amendment issue arise. (San Francisco Public Hearing, p. 112) | |

**FIREARMS RELINQUISHMENT**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Firearms Relinquishment #1 Communication with local justice system entities p. 22 | **Criminal Law Advisory Committee** | Suggested language change: Instead of "each court should have a system is in place to regularly communicate…", say "each court should ensure that a system is…" The advisory committee members questioned the limits of the court role to actually put a system in place and suggest that the court should provide the leadership buy may not actually be in charge of the system. | The task force agrees in principle and has revised the proposal accordingly. |
| Firearms Relinquishment #1 Communication with local justice system entities p. 22 | **Kate Killeen** Former Deputy Executive Director California District Attorneys Association Sacramento | I support this proposal and would encourage the court leadership to work with domestic violence coordinating councils to develop protocols within their local jurisdiction. (San Francisco Public Hearing, p. 115) | No response necessary. |
| Firearms Relinquishment #1 Communication with local justice system entities p. 22 | **Lauren Zorfas** Family Law Facilitator Superior Court of California, County of San Mateo | This is possible one of the most important of these recommendations. The actual relinquishment and the storage of the firearms are strictly within the realm of the criminal justice | No response necessary. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| FIREARMS RELINQUISHMENT<br>Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | partners.  While the court may seek to monitor compliance with the relinquishment orders, again, the bulk of the enforcement of these provisions is likely to fall on law enforcement.   I think it is critical that there be ongoing dialogues among all of the agencies and entities dealing with domestic violence survivors their families, including those agencies that deal with the batterers. | |
| Firearms Relinquishment #4<br>Court access to state and federal firearms databases<br>p. 22 | **Kate Killeen**<br>Former Deputy Executive Director<br>California District Attorneys<br>Association<br>Sacramento | Court access to state and federal firearms databases is a crucial component.  (San Francisco Public Hearing, p. 116) | No response necessary. |
| Firearms Relinquishment #5<br>Prosecutor to conduct firearms search in Automated Firearms System (AFS)<br>p. 22 | **Victoria Adams**<br>Deputy District Attorney<br>Los Angeles County<br>District Attorney's Office | It is a matter that we are certainly going to attempt to implement within the District Attorney's Office relatively soon.<br>One of the concerns or the same concerns that the court has with doing an AFS search, is that unless you have the abuser's true and correct name, you cannot get a hit oftentimes.  And in Los Angeles County, many of our defendants use various names at various different times.  (Los Angeles Public Hearing, p. 80) | No response necessary. |
| Firearms Relinquishment #5 | **Victoria Adams**<br>Deputy District Attorney | We would ask that judicial forms be promulgated that would have check | The task force will forward this comment to the appropriate Judicial |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| FIREARMS RELINQUISHMENT | | | |
|---|---|---|---|
| **Specific Comments** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Prosecutor to conduct firearms search in Automated Firearms System (AFS) p. 22 <br><br> #6 <br> Court to conduct firearms search in AFS p. 22 | Los Angeles County District Attorney's Office | boxes on the protective order form that not only would give us a check box regarding the information as to whether there is a registered firearms in the home, but also is there anecdotal evidence or is there evidence from a reliable source of the victim that there are firearms in the home, but also a check box regarding whether there are existing restraining orders, under our 273.75 obligation in the Penal Code to advise the court whether the victim is, in fact, in danger.  We would ask that that check box be also included on our request for restraining order.  Or criminal court protective orders.  And that's something that we feel is missing there that would enhance our ability to do our job well.  (Los Angeles Public Hearing, p. 81) | Council Advisory Committee to consider forms revisions. |
| Firearms Relinquishment #5 Prosecutor to conduct firearms search in Automated Firearms System (AFS) p. 22 | **Alison Merrilees** Deputy Attorney General Legal Counsel, Firearms Division California Department of Justice | We would support that recommendation. The AFS system is quite flexible as far as recognizing variations on names. The really frustrating thing about is that if there are multiple people with the same name, John Smith, Jane Doe, Jose Gonzalez, you could have many, many hits of the same person and have difficulty figuring out who you're really inquiring about unless you have some additional identifying | No response required. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| FIREARMS RELINQUISHMENT | | | |
|---|---|---|---|
| **Specific Comments** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | information, such as a Social Security Number or a date of birth. (Los Angeles Public Hearing, p. 88) | |
| Firearms Relinquishment #9 Oral advisement of firearms restrictions p. 23 | **Domestic Violence Advocates** Meeting to review proposals California | The group agreed with this proposal and suggested that the language be modified to include both "state and federal" prohibitions. | The task force has revised the proposal accordingly. |
| Firearms Relinquishment #9 Oral advisement of firearms restrictions p. 23  #16 Firearms relinquishment information sheet p. 25 | **Kate Killeen** Former Deputy Executive Director California District Attorneys Association Sacramento | I strongly support the oral advisement. It's clear from working with people over the years that go through a court system that the supplemental oral advisement is really critical to understanding what's going on. (San Francisco Public Hearing, p. 117) | No response necessary. |
| Firearms Relinquishment #9 Oral advisement of firearms restrictions p. 23 | **Jennifer Wyllie-Pletcher** Adjunct Professor of Law Domestic Violence Hastings College of the Law Golden Gate University | The author supports this proposal and suggests that the language should be augmented to read: "state and federal prohibitions." | The task force has revised the proposal accordingly. |
| Firearms Relinquishment #176 Firearm relinquishment information sheet p. 25 | **Alison Merrilees** Deputy Attorney General Legal Counsel, Firearms Division California Department of Justice | The court should distribute an information sheet to inform the restrained person how to safely and legally relinquish his or her firearms. (Los Angeles Public Hearing, p. 89) | No response necessary. |
| Firearms Relinquishment #10 Set review hearing p. 24 | **Hon. Laura Halgren** Judge of the Superior Court of California, County of San Diego | The author agrees if modified and raises a number of questions regarding implementation. In addition to the 5th Amendment issues raised, the | The task force believes that the revised proposal does not violate the defendant's rights, and courts may develop notification procedures that |

96

**Domestic Violence Practice and Procedure Task Force
Draft Guideline Comments**

| FIREARMS RELINQUISHMENT<br>Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Firearms Relinquishment<br>#11<br>At hearing, make appropriate orders<br>p. 24 | | following questions arise: "How will the prosecutor prove there is a firearm in the defendant's possession that needs to be turned over?  What is the burden of proof?  Is hearsay permitted?  Will witnesses need to be subpoenaed?  How will this be accomplished in the time contemplated?  If the defendant is in custody and later posts bond, how will the court know to set a review date and how will the defendant get notice?" | respond to local considerations.  The task force revised the showing as one which would give the court reason to believe that the defendant owns or possesses firearms. |
| Firearms Relinquishment<br>#10<br>Set review hearing<br>p. 24 | **Diane Wasznicky**<br>Liaison to the Family and Juvenile Law Advisory Committee<br>State Bar of California<br>Family Law Section Executive Committee | The committee opposes this proposal because "it is not practical/feasible to have 2—3 hearings on a TRO, or parts of it."  The language is unclear as to when the 48-hours commences – after the initial noticed hearing on the TRO or after the unnoticed ex parte order is granted. | The task force has revised the proposal to encourage hearings only in specific and limited circumstances. |
| Firearms Relinquishment<br>#11<br>At hearing, make appropriate orders<br>p. 24 | **Criminal Law Advisory Committee** | Suggested language change:  Instead of "If no receipt was filed and the defendant does not appear for the court hearing…", "If no receipt was filed, <u>the defendant was ordered to personally appear,</u> and the defendant <u>did</u> not appear…"<br>Refer to Penal Code section 977 - need to make sure the court ordered the defendant to appear. | The task force has revised the proposal accordingly. |
| Firearms Relinquishment | **Domestic Violence Advocates** | The group agreed with this proposal | The task force has revised the |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| FIREARMS RELINQUISHMENT |
| :--- |
| Specific Comments |

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| --- | --- | --- | --- |
| #14<br>Oral advisement about firearms restrictions<br>p. 25 | Meeting to review proposals<br>California | and suggested that the language be modified to include both "state and federal" prohibitions. | proposal accordingly. |
| Firearms Relinquishment<br>#14<br>Oral advisement about firearms restrictions<br>p. 25 | **Jennifer Wyllie-Pletcher**<br>Adjunct Professor of Law<br>Domestic Violence<br>Hastings College of the Law<br>Golden Gate University | The author supports this proposal and suggests that the language should include notice of federal prohibitions. | The task force has revised the proposal accordingly. |
| Firearms Relinquishment<br>#15<br>"Failure to relinquish or sell firearms" notification form<br>p. 25 | **Criminal Law Advisory Committee** | Suggested language change:  Instead of "If the court finds that there is credible evidence that the restrained person has access to or possession of any firearms and has not complied with the relinquishment requirement, the court should consider notifying law enforcement and the prosecutor's office", "If the court finds that no receipt was filed, the clerk should provide notice to law enforcement of that finding.<br><br>Concerns expressed by the advisory committee members include the following:<br>• Fifth amendment rights of the restrained person regarding firearms possession with respect to violating the law by having a gun in violation of the restraining order or, in some cases, when the | The task force believes that the revised proposals, which are different for civil and criminal matters, do not violate the defendant's rights.  The court's communication to law enforcement would be on a Judicial Council form.  Agree that the communication should be to law enforcement only.<br>The task force believes that the revised proposals allow the court flexibility to have the notice to law enforcement come from the court clerk or the judge.<br>The task force agrees that defendants in criminal cases have a right to counsel.<br>In certain family law cases, facts may warrant a request for counsel for a party.  These matters are considered by the court on a case-by-case basis. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| FIREARMS RELINQUISHMENT | | | |
|---|---|---|---|
| **Specific Comments** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | restrained person is restricted for some other reason (e.g. convicted felon)<br>• Ex parte communication concerns if firearms possession is communicated to law enforcement; therefore suggest just the fact of failing to file the receipt should be the only finding communicated to law enforcement.<br>• Suggest communication be limited to law enforcement as investigator body; law enforcement will take to prosecution in an appropriate case.<br>• Ethical concern about the role of the judge – should be clerk's notice of failure to file receipt.<br>• Concerns about right to counsel if subject of hearing is whether restrained person actually has a firearm. | |
| Firearms Relinquishment<br>#15<br>"Failure to relinquish or sell firearms" notification form<br>p. 25 | **Jennifer Wyllie-Pletcher**<br>Adjunct Professor of Law<br>Domestic Violence<br>Hastings College of the Law<br>Golden Gate University | The author supports this proposal and suggests that the court's notice to law enforcement and the prosecutor's office should be required and immediate due to the effects on safety that would result from a delay. | No response required. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| **FIREARMS RELINQUISHMENT** **Specific Comments** | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Firearms Relinquishment #15 "Failure to relinquish or sell firearms" notification form p. 25 | **Alison Merrilees** Deputy Attorney General Legal Counsel, Firearms Division California Department of Justice | The most effective communication really needs to be from the court to the local law enforcement agency, because as a practical matter, they're the ones who are going to hopefully be serving the notice and they're the ones that are going to need to be going after the firearms if the firearms are not relinquished. (Los Angeles Public Hearing, p. 91) | No response required. |

100

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**CLETS**
**General Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Committee Response |
|---|---|---|---|
| CLETS | **Undersheriff Larry Waldie**<br>Los Angeles County Sheriff's Department | We would like to be able to allow our deputies in the field to pull up on the Internet and if we can't use the Internet, from the Internet to our Intranet, to be able to pull up the actual protective order and notice of service that it has been accomplished to be able to act upon it in an appropriate manner.<br>Viewing these documents will enable the deputies to verify all the orders and the current status.  Hopefully in the next six months this will be made available to all the deputies in the field.  (Los Angeles Public Hearing, p. 77) | No action required. |

**CLETS**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Committee Response |
|---|---|---|---|
| CLETS<br>#3<br>Communication: court and justice partners<br>p. 28 | **Valerie Fercho-Tillery**<br>Program Manager<br>Department of Justice, Domestic Violence<br>Restraining Order System | The DVROS unit supports this proposal. | No action required. |
| CLETS<br>#6<br>Audit standards | **Valerie Fercho-Tillery**<br>Program Manager<br>Department of Justice, Domestic | The DVROS unit has augmented its staff and will be auditing both entering and issuing agencies pursuant to | No action required. |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| CLETS Specific Comments | | | |
|---|---|---|---|

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Committee Response |
|---|---|---|---|
| p. 29 | Violence Restraining Order System | standardized criteria. | |
| CLETS #7 Training standards p. 29 | **Valerie Fercho-Tillery** Program Manager Department of Justice, Domestic Violence Restraining Order System | The DVROS unit is always willing to conduct training programs. Attempts to present at statewide clerks trainings have not been welcomed in the past, but this year the unit will participate. | No action required. |
| CLETS #8 Data collection p. 29 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The author agrees with this proposal and suggests additional areas where information is needed. Suggested additional language follows: The AOC….. of DVPA filings, _**the relationships of the parties,**_ temporary restraining orders issued, number of children involved, proofs of service filed, number of reissuances, _**number of contested hearings versus "default hearings,**_ ~~and~~ number of restraining orders after hearing issued, _**and length/duration of such orders after hearing.**_ | The task force determined that gathering this information would be too burdensome. |
| CLETS #9 Restraining order registry p. 29 | **Valerie Fercho-Tillery** Program Manager Department of Justice, Domestic Violence Restraining Order System | The DVROS unit agrees with the proposal but prefers the Los Angeles model managed by the Los Angeles Sheriff's Department because it is a available to any law enforcement nationally. | No action required. |

**Domestic Violence Practice and Procedure Task Force
Draft Guideline Comments**

<table>
<tr><td colspan="4"><strong>CRIMINAL PROCEDURE</strong><br><strong>General Comments</strong></td></tr>
<tr><td>Guideline/Practice</td><td>Commentator</td><td>Comment Excerpt or Summary:</td><td>Task Force Response</td></tr>
<tr>
<td>Domestic Violence Criminal Procedure</td>
<td><strong>Kate Killeen</strong><br>Former Deputy Executive Director<br>California District Attorneys<br>Association<br>Sacramento</td>
<td>Funding is absolutely essential. And it's also essential for the high-risk case loads so that smaller case loads can be assigned to specialized probation officers who can provide intensive supervision and also designate points of contacts for victims and other persons at risk to speaking with a probation officer. (San Francisco Public Hearing, p. 120)</td>
<td>See Proposal #66 regarding adequate funding for probation.</td>
</tr>
<tr>
<td>Domestic Violence Criminal Procedure</td>
<td><strong>Eve Sheedy</strong><br>Deputy City Attorney<br>Los Angeles</td>
<td>Promulgation of the guidelines and recommendations will foster consistency in sentencing and compliance with the mandatory terms and conditions of probation which is to be applauded (Los Angeles Public Hearing, p. 141)</td>
<td>No action required.</td>
</tr>
</table>

<table>
<tr><td colspan="4"><strong>CRIMINAL PROCEDURE</strong><br><strong>New Proposals</strong></td></tr>
<tr><td>Guideline/Practice</td><td>Commentator</td><td>Comment Excerpt or Summary:</td><td>Task Force Response</td></tr>
<tr>
<td>Domestic Violence Criminal Procedure New</td>
<td><strong>Steve Allen</strong><br>Director of Legal Services<br>Center for Community Solutions<br>San Diego</td>
<td>There should be more frequent and vigorous prosecution of restraining order and protective order violations. (Los Angeles Public Hearing, p. 40)</td>
<td>The task force took no action because the suggestion was not within its purview.</td>
</tr>
</table>

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

**CRIMINAL PROCEDURE**
**New Proposals**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Domestic Violence Criminal Procedure New | **Steve Allen** Director of Legal Services Center for Community Solutions San Diego | There should be increased communication between the criminal court and the family and juvenile court especially in the context of restraining orders and criminal protective orders. (Los Angeles Public Hearing, page 41) | This comment is addressed by Proposal #60. |
| Domestic Violence Criminal Procedure New | **Hon. Becky Lynn Dugan** Judge of the Superior Court of California, County of Riverside | Each court should consider creation of a dedicated domestic violence court in both family and criminal. The advantage is that there is a "dedicated judge who knows the facts of the case and who sees the same defendant over and over again." (See also restraining order proposal, #32) (Los Angeles Public Hearing, p. 170) | Agree. See proposal #6 Court Leadership Section. |
| Domestic Violence Criminal Procedure New | **Rosetta Egan** Parent of Victim | The courts need to deal with the problem of rapid escalation of violence so that victims are warned or remedial steps are taken. (San Francisco Public Hearing, p. 197) | Agree. See proposal #66. |
| Domestic Violence Criminal Procedure New | **Rosetta Egan** Parent of Victim | Prosecutors are under-charging domestic violence felonies as misdemeanors. (San Francisco Public Hearing, p. 197) | The task force took no action because the suggestion is not within the purview of the task force or Judicial Council. |
| Domestic Violence Criminal Procedure New | **Arturo Faro** Division Director, Specialized Services Division San Francisco Adult Probation Department | In San Francisco, the probation department conducts a domestic violence probation orientation for each offender on probation and reports offenders' attendance back to the court. (San Francisco Public Hearing, p. 153) | Agree. Language in this regard was added to Proposal #66. |
| Domestic Violence | **Hon. Pamela Iles** | Courts should also hold service | The task force took no action based |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| CRIMINAL PROCEDURE New Proposals | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Criminal Procedure New | Judge of the Superior Court of California, County of Orange | providers and batterers' programs accountable by assessing and monitoring the quality of the services provided. | on this comment and left this issue to local discretion. |
| Domestic Violence Criminal Procedure New | **Kate Killeen** Former Deputy Executive Director California District Attorneys Association Sacramento | I would encourage the courts to orally advise the offenders at sentencing of what the terms are.  I have witnessed courts issue sentences by numbered paragraphs like we're doing here today, but without actually explaining what those are.  Conditions 4,5,10 an 11 are ordered. Well, that's going right over the head of the offender.  It's important for the offenders to know what the terms are. (San Francisco Public Hearing, p. 126) | See proposal #46. |
| Domestic Violence Criminal Procedure New | **Kate Killeen** Former Deputy Executive Director California District Attorneys Association Sacramento | I would also encourage some suggested options that the courts might consider in particular cases that may be applicable when the facts warrant it, such as parenting classes, if children witness domestic violence, and clearly search and seizure is an absolutely essential tool to enforcing your orders.  (San Francisco Public Hearing, p. 127) | Required no action. |
| Domestic Violence Criminal Procedure New | **Alyce LaViolette** Founder, Alternatives Counseling Association Long Beach | The rigidity of the statutory scheme contributes to the likelihood that victims will fail to report or recant.  They do not feel supported.  They may want to reunite with the perpetrator. | The task force did not revise its proposals based on this comment but did discuss the statutory limitations in its report. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| CRIMINAL PROCEDURE | | | |
|---|---|---|---|
| **New Proposals** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | They fear that child protective services will take their children. The task force should think about ways to address this. (Los Angeles Public Hearing, p. 130) | |
| Domestic Violence Criminal Procedure New | **Alyce LaViolette** Founder, Alternatives Counseling Association Long Beach | Criminal domestic violence courts foster accountability and consistency and should be initiated wherever possible. (Los Angeles Public Hearing, p. 130) | Agree. See proposal #6 in Court Leadership section. |
| Domestic Violence Criminal Procedure New | **Alison Merrilees** Deputy Attorney General Legal Counsel, Firearms Division California Department of Justice | The problem is that court orders that allow firearms possession to people who are prohibited from possessing firearms. This happens in a couple different contexts re: storing rights after a conviction. In a restraining order it could be a silent restraining order. There is a written notice, "no firearms restriction." Or after a conviction. This is sort of an extreme example but it does happen—a felony conviction for robbery is reduced to a misdemeanor pursuant to 17.B, which there's no legal authority for but if the basis of a firearms prohibition is a felony conviction. Court orders are valid until they are vacated. And that means that even though an order is issued in excess of a court's jurisdiction, it does have apparently restore rights to people who have no right to have them. | See proposal #46. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| CRIMINAL PROCEDURE | | | |
|---|---|---|---|
| **New Proposals** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | There is no court order that can or should restore firearms rights to a person who's convicted of a misdemeanor crime of domestic violence, because they are federally prohibited from possessing firearms for life.<br>That's something that people should be told right up front at the time when they plead guilty, because that is a lifetime consequence.<br>I hope judges would not make those orders.  I hope that district attorneys would not agree to them.  Because really if the law is that the orders are valid until they're vacated, who's going to vacate them?  Unless there is some case law that says that the Department of Justice has standing, that we're not stopped from going into court and getting those orders revoked, but as a practical matter that's just not going to happen.  (Los Angeles Public Hearing, p. 94) | |
| Domestic Violence Criminal Procedure New | **Gladys Nagy**<br>Supervising Deputy Probation Officer<br>Los Angeles County | The task force should consider a proposal that would direct the batterers' intervention programs to conduct a fee evaluation that the court should consider before permitting a fee waiver for a defendant on probation.  The practice was apparently initiated in response to the | See proposal #47. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| CRIMINAL PROCEDURE New Proposals | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | practice of granting frequent blanket fee waivers in these cases.  (Practice initiated by Judge Anita Dymant, Los Angeles)  (Los Angeles Public Hearing, p. 165) | |
| Domestic Violence Criminal Procedure New | **Gladys Nagy** Supervising Deputy Probation Officer Los Angeles County | The batterers' intervention program should have the discretion to transfer a person in the anger management program to the domestic violence program.  (Los Angeles Public Hearing, p. 165) | Disagree; the program should not have the discretion to do this without a court order. |
| Domestic Violence Criminal Procedure New | **Sharon Panion** Deputy City Prosecutor Long Beach | Currently, there is no provision for a felony filing upon a new crime of domestic violence when a defendant has been previously convicted of multiple misdemeanor domestic violence offenses.  Sequential misdemeanor convictions, when coupled with early release due to jail overcrowding, results in very little accountability or consequences that flow from these violent acts.  (Los Angeles Public Hearing, p. 178) | The task force took no action because the suggestion is not within the Judicial Council purview. |
| Domestic Violence Criminal Procedure New | **Hon. Philip Pennypacker** Supervising Judge of the Superior Court of California,    County of Santa Clara | The court should conduct an "arraignment speech" during which the defendant is advised of all of the terms and conditions set forth in Penal Code section 1203.097.  (San Francisco Public Hearing, p. 145) | The task force took no action but noted that a script arraignment speech may be developed in conjunction with judicial education. |
| Domestic Violence Criminal Procedure New | **James Rowland** Managing Attorney, Domestic Violence Unit | The task force should initiate a study of batterers' intervention models to determine whether there is a better | Refer to AOC Batterer Intervention Program Study that might consider further follow-up research in this |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| CRIMINAL PROCEDURE | | | |
|---|---|---|---|
| New Proposals | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | San Francisco District Attorney's Office | model that can be implemented. (San Francisco Public Hearing, p. 179) | regard. |
| Domestic Violence Criminal Procedure New | **Niki Solis** Managing Attorney, Domestic Violence and Misdemeanor Unit San Francisco Public Defender's Office | The court should not only ensure that criminal protective orders are entered into CLETS but it should also ensure that when an order is terminated, the termination is properly entered into CLETS. (San Francisco Public Hearing, p. 159) | Agree; see proposal # 58. |
| Domestic Violence Criminal Procedure New | **Niki Solis** Managing Attorney, Domestic Violence and Misdemeanor Unit San Francisco Public Defender's Office | The speaker recommends some plan for vertical defense so that the same person deals with the defendant throughout the process.  In San Francisco, there is a paralegal assigned who performs this function. (San Francisco Public Hearing, p. 160) | The task force took no action because the suggestion is not within Judicial Council purview. |
| Domestic Violence Criminal Procedure New | **Karen Staples** Chief Probation Officer, Ventura County | A provision should be added concerning the duty of probation to certify the batterers' intervention programs under Penal Code section 1203.097. The task force should also consider a recommendation that would require probation to have regular communication with Batterers' Intervention Provider programs and to develop a good working relationship with the providers both in general and relating to individual cases (Los Angeles Public Hearing, p. 124) | Agree. See proposals #47 and #66. |
| Domestic Violence Criminal Procedure New | **Hon. Colleen Toy White** Presiding Judge of the Superior Court of California, | Each court should consider whether it should have a dedicated domestic violence criminal court.  Speaker | Agree.  See proposal #6 in Court Leadership section. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**CRIMINAL PROCEDURE**
**New Proposals**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | County of Ventura | recommends consideration of a criminal domestic violence court. In Ventura, the court hears all criminal domestic violence misdemeanor and felony cases for all purposes unless there is a long-cause matter and excluding trials. The court also hears violations of restraining orders. In Ventura, the district attorney vigorously files on restraining order violations. The advantages of the domestic violence court include: uniform practices, consistency in sentencing, consistency in providing services to the victim, reduction of forum shopping since court covers entire jurisdiction both misdemeanor and felony, co-locating services, and proximity to victim-witness. (Los Angeles Public Hearing, p. 102-105) | |
| Domestic Violence Criminal Procedure New | **Hon. Colleen Toy White** Presiding Judge of the Superior Court of California, County of Ventura | At sentencing, probation should provide a formal probation report on both misdemeanors and felonies. The report should summarize the facts of the case, outline the defendant's criminal record, contain a summary of any input from the victim, explain the level of involvement of the children, alert the court if there is a parallel dependency case, and propose a sentencing recommendation. (Los Angeles Public Hearing, p. 107) | Agree but depends on sufficiency of resources. See proposal #66 regarding adequacy of funding for probation services. |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**CRIMINAL PROCEDURE**
**New Proposals**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Domestic Violence Criminal Procedure New | **Hon. Colleen Toy White** Presiding Judge of the Superior Court of California, County of Ventura | The task force should consider placing a special focus on criminal cases where children are involved.  The speaker recommends consideration of a voluntary program in which a public health nurse is available to assist the family if there are children.  (Los Angeles Public Hearing, p. 109) | A description of this practice could be contained in judicial education materials at the implementation phase but the task force did not recommend development of a new proposal. |
| Domestic Violence Criminal Procedure New | **Hon. Colleen Toy White** Presiding Judge of the Superior Court of California, County of Ventura | In Ventura, the staff of the criminal domestic violence court have the ability to refer families to the services of the family law facilitator in cases where dissolution, child support, or child custody services are needed.  The facilitator's office is located in close proximity to the court.  (Written Comment submitted at Los Angeles Public Hearing). | A description of this practice could be contained in judicial education materials at the implementation phase but the task force did not recommend development of a new proposal. |
| Domestic Violence Criminal Procedure New | **Hon. Colleen Toy White** Presiding Judge of the Superior Court of California, County of Ventura | The task force should consider a recommendation that would propose an initial assessment.  In Ventura, the defendant on probation is referred to the "Quick-Start Center."  At the center, health clinicians assess the defendant's needs ranging from mental health to alcohol and other drugs and make appropriate referrals. (Los Angeles Public Hearing, p. 109) | A description of this practice could be contained in judicial education materials at the implementation phase but the task force did not recommend development of a new proposal.  See also proposal # 66. |
| Domestic Violence Criminal Procedure New | **Hon. Colleen Toy White** Presiding Judge of the Superior Court of California, County of Ventura | The task force should consider a recommendation that would propose a separate room for victims where they can see and hear the proceedings but | The task force took no action based on this comment.  A description of this practice could be included in educational materials or publications. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**CRIMINAL PROCEDURE**
**New Proposals**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | cannot be observed by the defendant or anyone else who might want to intimidate the victim.  In Ventura, there is such a room connected to the courtroom and staffed by the district attorney's office advocates.  The room has a computer, and victims receive assistance completing requests for restraining orders or victim-impact statements. | |

**CRIMINAL PROCEDURE**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Domestic Violence Criminal Procedure #1 Administration of Criminal Domestic Violence Cases p. 32 | **Alicia Cortrite** Prosecutor, Santa Monica City Attorney's Office Santa Monica | The statutory scheme governing criminal misdemeanor domestic violence relies heavily on the sanction of batterer intervention programs and yet there is very little support available to enhance coordination and communication with the individual programs.  The author recommends regularly scheduled meetings with all involved justice system partners regarding the following issues:  1.  Courthouse safety  2.  Domestic Violence dynamics | Agree, the language was modified to ensure adequate coordination and communication with batterer intervention programs. |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**CRIMINAL PROCEDURE**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | including training for bailiffs and clerks<br>3.  Participation of the batterer intervention programs about important issues such as: fees, access to underlying information about the severity of the conduct for BIPs via the police report or an accurate summary, an ongoing communication system between the court and the programs. | |
| Domestic Violence Criminal Procedure<br>#1<br>Administration of Criminal Domestic Violence Cases<br>p. 32 | **Arturo Faro**<br>Division Director, Specialized Services Division<br>San Francisco Adult Probation Department | Probation is part of a collaborative approach in San Francisco that involves all of the relevant justice system partners and that has led to the development of a safer, more accessible, and more expeditious system.  An example is that now police reports are provided to probation, a task that was overlooked prior to the launching of a more collaborative approach.  (San Francisco Public Hearing, p. 155) | Agree but no change required. |
| Domestic Violence Criminal Procedure<br>#1<br>Administration of Criminal Domestic Violence Cases<br>p. 32 | **Alyce LaViolette**<br>Founder,<br>Alternatives Counseling Association Long Beach | Batterers' Intervention Programs are too frequently left out of the loop in court/community communications efforts.  They are an essential voice in ensuring safety and accountability.  (Los Angeles Public Hearing, p. 135) | Agree, the language was modified to ensure adequate coordination and communication with batterer intervention programs. |
| Domestic Violence Criminal | **Hon. Colleen Toy White** | In Ventura, the criminal domestic | Agree, but manner should be left to |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**CRIMINAL PROCEDURE**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Procedure #1 Administration of Criminal Domestic Violence Cases p. 32 | Presiding Judge of the Superior Court of California, County of Ventura | violence court judge conducts regular monthly meetings with all agencies and entities involved in domestic violence cases. (Los Angeles Public Hearing, p. 116) | local discretion. |
| Domestic Violence Criminal Procedure #5 Hearing purposes pp. 32-33 | **Kate Killeen** Former Deputy Executive Director California District Attorneys Association Sacramento | There is a disparity of practice as to when bail hearings happen. To ensure that the prosecutor is able to provide adequate information, the language in 5(a) should be changed from "typically at arraignment" to include that the bail motion may be heard within 35 days of arraignment. (SF Public hearing, page 122) | The language of the proposal was modified to address this concern. |
| Domestic Violence Criminal Procedure #9 Procedures p. 33 | **Hon. Philip Pennypacker** Supervising Judge of the Superior Court of California, County of Santa Clara | Pretrial services conducts knowledgeable pretrial screenings and provides the court with vital information that assists in setting bail, determining issuance of a criminal protective order, and assessing the likelihood of early disposition. (San Francisco Public Hearing, p. 145) | The task force took no action based on this comment. This local practice could be described in educational materials or publications. |
| Domestic Violence Criminal Procedure #11 Notice to prosecutor p. 34 | **Kate Killeen** Former Deputy Executive Director California District Attorneys Association Sacramento | The courts can ask the prosecutor, have you notified the victim? And that is a question that could be asked in court. (San Francisco Public Hearing, p. 123) | See proposal # 12. |
| Domestic Violence Criminal Procedure #13 | **Niki Solis** Managing Attorney, Domestic Violence and | Imposing firearms restrictions as a condition of OR may be unconstitutional because it creates a | The task force took no action based on this comment. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**CRIMINAL PROCEDURE**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Additional conditions<br>p. 34 | Misdemeanor Unit<br>San Francisco Public Defender's Office | forced choice between exercising a constitutional right or pretrial release. (San Francisco Public Hearing, p. 163) | |
| Domestic Violence Criminal Procedure<br>#14<br>Factors in setting, modifying, or denying bail<br>p. 34 | **Kate Killeen**<br>Former Deputy Executive Director<br>California District Attorneys Association<br>Sacramento | After bail has been set and an offender has been released from custody, a prosecutor may return to court for reconsideration of bail because of escalating violent behavior. The court should be aware of this possibility. The language should be changed from "alleged threats" to "alleged threats posed." (San Francisco Public hearing, page 123) | The task force took no action based on this comment. The language of the proposals adequately address this concern. |
| Domestic Violence Criminal Procedure<br>#15<br>Relevant information<br>p. 35 | **Kate Killeen**<br>Former Deputy Executive Director<br>California District Attorneys Association<br>Sacramento | As far as unintended consequences, when the court is looking at the status of the other court orders in play, that they carefully look at the terms of those orders and work to avoid conflict with their orders, or, if they do issue a new order that does conflict, that that's a conscious decision, and it's a well-thought-through decision that does not have unintended consequences. (San Francisco Public Hearing, p. 124) | See proposal #60 |
| Domestic Violence Criminal Procedure<br>#18<br>Grounds for Order<br>p. 35<br><br>Domestic Violence Criminal | **Alicia Garcia**<br>Parent of Victim<br>Modesto, CA | It is difficult to determine which agency, if any, will prosecute violations of criminal protective orders. This has a negative impact on safety for the victim. | The task force took no action because the suggestion is not within Judicial Council purview. |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**CRIMINAL PROCEDURE**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Procedure #19 Reasonable Restrictions p. 35 <br><br> Domestic Violence Criminal Procedure #44 Probation p. 39 | | | |
| Domestic Violence Criminal Procedure #18 Grounds for order p. 35 <br><br> Domestic Violence Criminal Procedure #20 No-contact orders p. 35 <br><br> Domestic Violence Criminal Procedure #48 Protective orders p. 40 | **Hon. Mary Ann Grilli** Judge of the Superior Court of California, County of Santa Clara | Judges who issue criminal protective orders, even if they are peaceful contact orders under Penal Code section 136.2, should use the appropriate Judicial Council form to ensure that the orders are duly entered into DVROS. Some judges are using probation orders which are not entered into CLETS, and this constitutes a huge gap in the system. | Agree. The language of the proposal was changed to reflect this comment. |
| Domestic Violence Criminal Procedure #18 | **Hon. Elisabeth Krant** Judge of the Superior Court of California, | The Task Force should recommend legislation that would permit the court to read and consider the crime report | The task force took no action based on this comment. The task force is informed that CJA is seeking |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| CRIMINAL PROCEDURE Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Grounds for order p. 35 | County of Tulare | in conjunction with ruling on a criminal protective order, particularly a stay-away provision, under Penal Code section 136.2(e)(1). | legislation to address this concern. |
| Domestic Violence Criminal Procedure #18 Grounds for order p. 35 | **Thomas Alvina** Chief Deputy Public Defender Orange County | The speaker is in accord with the suggestion that a stay-away provision in a criminal protective order should be modified at the victim's request and asserts that victims frequently contact the public defender's office for assistance in accomplishing this. (Los Angeles Public Hearing, p. 182) | See proposal #58. |
| Domestic Violence Criminal Procedure #19 Reasonable restrictions p. 35 | **Thomas Alvina** Chief Deputy Public Defender Orange County | *New provisions should be added as follows*. A way for defendants to recover property after issuance of a stay-away and residence exclusion order should be developed. (Los Angeles Public Hearing, p. 185) | Agree.   See proposal # 57. |
| Domestic Violence Criminal Procedure #20 No-contact Orders p. 35  Domestic Violence Criminal Procedure #48 Protective orders | **Hon. Becky Lynn Dugan** Judge of the Superior Court of California, County of Riverside | *New provision should be added as follows*. Existing law provides that the criminal protective order prevails over any other orders.  This can lead to a very dangerous situation if the order is not a kick-out order and the family law judge finds a basis to issue a residence exclusion.  The law should be changed to provide that the most restrictive orders should prevail. (Los Angeles Public Hearing, p. 174) | Disagree.  Criminal law judge should check the box on the CPO that provides for a custody/visitation determination by the family law judge. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| CRIMINAL PROCEDURE Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| p. 40<br><br>Domestic Violence<br>Criminal Procedure<br>#49<br>Protective order provisions and procedures<br>p. 40 | **Hon. Becky Lynn Dugan**<br>Judge of the<br>Superior Court of California,<br>  County of Riverside | Penal Code section 136.2 should be rewritten so that the order can be effective until the expiration date regardless of the outcome of the criminal cases and due process safeguards such as those that exist under the DVPA should be inserted. | Disagree.  See *People v. Stone*, (2004) 123 Cal. App. 4th 153. |
| | **Rick Layon**<br>Criminal Defense Attorney<br>San Diego | *New provision should be added as follows.*  A criminal protective order should not be automatically issued at the pre-disposition stage, and especially not over the victim's objection.  Once a protective order is issued, it should be terminated by the court at the request of the victim unless the court finds there is a risk of future harm or the victim is under duress resulting from the alleged perpetrator's conduct. (Los Angeles Public Hearing, p. 154, 159) | Issuance of a CPO at predisposition stage is discretionary.  Whether to terminate at the request of the victim is likewise discretionary.  See proposal #57. |
| | **Hon. Colleen Toy White**<br>Presiding Judge of the<br>Superior Court of California,<br>  County of Ventura | *New provisions should be added as follows.*  Criminal protective orders should be served on the defendant by the bailiff in the courtroom before the defendant leaves the courtroom.  The court should advise the defendant on the record of the terms and conditions of the protective order.  A copy of the order should be provided to the victim if the victim is present.  If the victim is not present, the district attorney should | Agree.  See proposal #50. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| CRIMINAL PROCEDURE | | | |
|---|---|---|---|
| **Specific Comments** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | provide a copy of the order to the victim. (Los Angeles Public Hearing, p. 113) | |
| | **Hon. Colleen Toy White** Presiding Judge of the Superior Court of California, County of Ventura | *New provisions should be added as follows.* Before a criminal protective order is modified or terminated, a victim advocate should interview the victim to ensure that the request is voluntary. If necessary, the court should conduct an additional inquiry and the court should determine if good cause exists to modify or terminate the order. If a modification is granted, the new order should be prepared, served on the defendant if he or she is present, and provided to the victim if he or she is present before the parties leave the courtroom. (Los Angeles Public Hearing, p. 114) | Agree. See proposal #58. |
| Domestic Violence Criminal Procedure #18 Grounds for order p. 35  Domestic Violence Criminal Procedure #19 Reasonable restrictions p. 35  Domestic Violence Criminal | **Hon. Mary Carolyn Morgan** Judge of the Superior Court of California, County of San Francisco | In San Francisco, the judge in the criminal domestic violence court encourages the parties to go to the family law department to obtain a visitation order if they have children. The judge also checks the box on the criminal protective order form that refers to subsequent custody or visitation orders that may be issued. (San Francisco Public Hearing, p. 185) | Agree. See proposal #54. |
| | **Hon. Mary Carolyn Morgan** Judge of the Superior Court of California, | The criminal protective order should be issued at the time of arraignment or pretrial. If there is good conduct, the | The task force took no action based on this comment. The proposals adequately address the basis for |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

**CRIMINAL PROCEDURE**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Procedure<br>#20<br>No-contact orders<br>p. 35 | County of San Francisco | judge considers modification (no stay-away order) at the time of sentencing. (San Francisco Public Hearing, p. 186) | issuance of a CPO pretrial. |
| Domestic Violence Criminal Procedure<br>#48<br>Protective orders<br>p. 40<br><br>Domestic Violence Criminal Procedure<br>#49<br>Protective order provisions and procedures<br>p. 40 | **James Rowland**<br>Managing Attorney,<br>Domestic Violence Unit<br>San Francisco District Attorney's Office | Orders that are not suitable for entry into CLET or are not entered are equally problematic in criminal proceedings.  For example, some orders may have a visitation provision written into the order or are not on Judicial Council forms.  (San Francisco Public Hearing, p. 175) | This comment supports Restraining Orders Proposal #37.  No action required. |
| Domestic Violence Criminal Procedure<br>#18<br>Grounds for order<br>p. 35<br>Domestic Violence Criminal Procedure<br>#19<br>Reasonable restrictions<br>p. 35 | **Hon. Arlan Harrell**<br>Judge of the<br>Superior Court of California,<br>   County of Fresno | Seek legislation to allow the court to consider the police report in determining whether to issue a criminal protective order under Penal Code section 136.2(e)(1). | The task force took no action based on this comment.  The task force is informed that CJA is seeking legislation to address this concern. |
| Domestic Violence Criminal Procedure<br>#27<br>Confidential communications<br>p. 37 | **Kate Killeen**<br>Former Deputy Executive Director<br>California District Attorneys Association<br>Sacramento | There is legislation pending to change the definition of the victim advocates that are protected by the victim advocate privilege.  So by the end of the year when you're finalizing your | See SB 407 (ch. 206), No action required. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

**CRIMINAL PROCEDURE**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | report; that language may need to be adjusted if that legislation goes through. (San Francisco Public Hearing, p. 124) | |
| Domestic Violence Criminal Procedure #33 Protocols for access to information pp. 37-38 | **Kate Killeen** Former Deputy Executive Director California District Attorneys Association Sacramento | In those cases where an offender represents himself or herself, the court should appoint a criminal investigator to receive confidential information and the information should not be provided directly to the offender. (San Francisco Pubic hearing, page 125) | The task force took no action based on this comment. The issue should be handled locally. |
| Domestic Violence Criminal Procedure #33 Protocols for access to information p. 37 | **Emberly Cross** Coordinating Attorney Cooperative Restraining Order Clinic San Francisco | The task force should be aware of legislation pending (SB 407) that would modify the definition of whether a person qualifies as domestic violence counselor under Evidence Code section 1037–1037.5. | See SB 407 (ch. 206). No action required. |
| Domestic Violence Criminal Procedure #42 Fines p. 39 | **Thomas Alvina** Chief Deputy Public Defender Orange County | Many defendants are indigent, and the imposition of fees and fines is a severe hardship that can also lead to more family strife. (Los Angeles Public Hearing, p. 185) | The task force took no action based on this comment. The issues are adequately handled by existing procedures. |
| Domestic Violence Criminal Procedure #44 Probation p. 39 | **Tara L. Borelli** Staff Attorney Lambda Legal Defense and Education Fund Los Angeles | The classification of victims listed in these practices should be augmented by the words "registered domestic partner or former registered domestic partner" pursuant to Family Code section 297.5 which generally extended the applicability to domestic partners of the rights, responsibilities, and presumptions that the law affords to spouses. This is particularly | Agree. The language of the proposal was revised accordingly. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

**CRIMINAL PROCEDURE**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | necessary to educate the courts and counsel about the rights of domestic partners and to ensure that they obtain the equal access that the law affords them. | |
| Domestic Violence Criminal Procedure #44 Probation p. 39 | **Hon. Becky Lynn Dugan** Judge of the Superior Court of California, County of Riverside | The mandatory terms and conditions of probation are triggered when the relationship requirements of Family Code 6211 are met. However, the relationship requirement is too broad and can create an anomalous effect. Examples are brothers, grandfather and grandson. The statute should be amended to narrow the relationship requirement. | The task force took no action based on this comment. Legislative revision of the relationship requirement is not within the Judicial Council's purview. |
| Domestic Violence Criminal Procedure #44 Probation p. 39 | **Hon. Becky Lynn Dugan** Judge of the Superior Court of California, County of Riverside | There should be move flexibility in the requirement that all domestic violence offenders on probation must attend a 52-week batterers' intervention program. It is not suitable for every offender and a cookie-cutter approach is ill-advised. We do not have any evidence in the research that the programs are effective. The 52-week program should be discretionary. | The task force determined that this issue is properly resolved by the Legislature, but it directed staff to include the issue in the report to the Judicial Council. |
| Domestic Violence Criminal Procedure #44 Probation p. 39 | **Hon. Peggy Hora (Ret.)** Judge of the Superior Court of California, County of Alameda | Recommend that judges should add a "no alcohol and other drugs" clause to the terms and conditions of probation. | The task force modified its proposals in response to this comment. See proposal #45. |
| Domestic Violence | **Kate Killeen** | Mandates under Penal Code Section | The task force determined that this |

122

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**CRIMINAL PROCEDURE**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Criminal Procedure #44 Probation p. 39 | Former Deputy Executive Director California District Attorneys Association Sacramento | 1203.097 remove all discretion from the courts in imposing tailored sentences, where in fact a one-year treatment program is not the most appropriate sanction. And those kind of situations come up in adult relationships, on certain stalking kind of cases, on certain cases where the offender is not a batterer as one commonly understands, but engaged in violence on a particular situation that fell within the victim/offender relationship but is not someone for whom the batterer treatment program is designed to treat. (San Francisco Public Hearing, p. 125) | issue is properly resolved by the Legislature, but it directed staff to include the issue in the report to the Judicial Council. |
| Domestic Violence Criminal Procedure #44 Probation p. 39 | **Kate Killeen** Former Deputy Executive Director California District Attorneys Association Sacramento | Formal probation should be ordered rather than informal probation during the time an offender is required to attend a batterer's intervention program. After completion of the program, the probation can be informal. (San Francisco Public hearing, page 125) | These comments are reflected in the task force proposals. See Proposals #61-66. |
| | | At the time a sentence of probation is ordered, the court should orally advise the defendant of the terms and conditions of probation so that the person understands his or her obligations rather than informally refer | See Proposal #46. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**CRIMINAL PROCEDURE**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| | | to the conditions using a shorthand reference (e.g. 4, 6, 10, etc.)  (San Francisco public hearing, page 126)<br><br>The court might wish to consider ordering parenting classes as a term and condition of probation when children have been present at the time of the violence.  (San Francisco Public hearing page 127) | <br><br><br><br>See Proposal #45. |
| Domestic Violence Criminal Procedure #44 Probation p. 39 and Domestic Violence Criminal Procedure #47 Batterer's intervention programs p. 40 | **Hon. Thomas Trent Lewis** Judge of the Superior Court of California,    County of Los Angeles | Develop and authorize a 26-week batterer's intervention program to afford more discretion for use in a family law matter. | The task force took no action on this suggestion.  More research is needed on the effectiveness of batterer intervention programs. |
| Domestic Violence Criminal Procedure #44 Probation p. 39 | **Hon. Mary Carolyn Morgan** Judge of the Superior Court of California,    County of San Francisco | Pleading to a lesser included offense is only permissible if there is insufficient evidence of the requisite relationship. Then, if an offender is directed to an anger management program and there is a need the program should be infused with the accountability factor necessary in domestic violence cases. (San Francisco Public Hearing, p. 184) | No action required. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| CRIMINAL PROCEDURE<br>Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| Domestic Violence Criminal Procedure<br>#44<br>Probation<br>p. 39 | **Gladys Nagy**<br>Supervising Deputy Probation Officer<br>Los Angeles County | *New provision should be added as follows.* When ordering probation, each judicial officer should order the right to search and seize firearms in addition to the firearms prohibition as a condition of probation. Then probation would have the ability to search and seize any weapon found. (Los Angeles Public Hearing, p. 168) | Agree. See Proposal #45. |
| Domestic Violence Criminal Procedure<br>#44<br>Probation<br>p. 39 | **Hon. Philip Pennypacker**<br>Supervising Judge of the Superior Court of California,<br>  County of Santa Clara | The existence of a dedicated criminal domestic violence court has resulted in consistent sentencing practices and policies. (San Francisco Public Hearing, p. 146) | See Proposal #6, Court Leadership. |
| Domestic Violence Criminal Procedure<br>#44<br>Probation<br>p. 39 | **Eve Sheedy**<br>Deputy City Attorney<br>Los Angeles | From the prosecution's point of view, compliance with the mandatory terms and conditions of probation outlined in this proposal should receive the highest priority. (Los Angeles Public Hearing, p. 147) | No action required. |
| Domestic Violence Criminal Procedure<br>#47<br>Batterer's intervention programs<br>p. 40 | **Rosetta Egan**<br>Parent of Victim | There should be a differential assessment conducted at some point in the process. Not all offenders are the same; some are much more dangerous. (San Francisco Public Hearing, p. 195) | The task force revised Proposal #66 to reflect this comment. |
| Domestic Violence Criminal Procedure<br>#47 | **Hon. Peggy Hora (Ret.)**<br>Judge of the<br>Superior Court of California, | Each program is required to conduct an AOD (alcohol and other drugs) assessment and refer for treatment if | The task force revised Proposal #66 to reflect this comment. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

**CRIMINAL PROCEDURE**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Batterer's intervention programs p. 40 | County of Alameda | indicated and this requirement is not followed. | |
| Domestic Violence Criminal Procedure #47 Batterer's intervention programs p. 40 | **Alyce LaViolette** Founder, Alternatives Counseling Association Long Beach | A 52-week batterers' intervention program, at a minimum, is essential. (Los Angeles Public Hearing, p. 128) | No action required. |
| Domestic Violence Criminal Procedure #47 Batterer's intervention programs p. 40 | **Alyce LaViolette** Founder, Alternatives Counseling Association Long Beach | An 18-month batterers' intervention program is ideal. (Los Angeles Public hearing, p. 136) | The task force took no action based on this comment. There is insufficient research on the length of time needed in batterers intervention programs. |
| Domestic Violence Criminal Procedure #47 Batterer's intervention programs p. 40 | **Gladys Nagy** Supervising Deputy Probation Officer Los Angeles County | Judicial officers should not issue orders for accelerated programs (52 sessions but in a shorter period) because others in the group want them as well and it destabilizes the group. In addition, the shortened time is insufficient to correct the violence problem. (Los Angeles Public Hearing, p. 166) | The task force took no action based on this comment. There is insufficient research on the length of time needed in batterers intervention programs. |
| Domestic Violence Criminal Procedure #47 Batterer's intervention programs p. 40 | **Hon. Philip Pennypacker** Supervising Judge of the Superior Court of California, County of Santa Clara | Regular communication and good relationships between the court and the batterers' intervention programs are essential. (San Francisco Public Hearing, p. 146) | Agree. See Proposal #62. |
| Domestic Violence Criminal Procedure #47 | **Hon. Philip Pennypacker** Supervising Judge of the Superior Court of California, | Communication between the criminal domestic violence court and the family court is essential to avoid inconsistent | Agree. See Proposal #60. |

# Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

**CRIMINAL PROCEDURE**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Batterer's intervention programs<br>p. 40 | County of Santa Clara | orders. A criminal case manager has the responsibility of ensuring that copies of the family court orders are placed in the criminal court file. (San Francisco Public Hearing, p. 147) | |
| Domestic Violence Criminal Procedure<br>#47<br>Batterer's intervention programs<br>p. 40 | **James Rowland**<br>Managing Attorney,<br>Domestic Violence Unit<br>San Francisco District Attorney's Office | A 52-week batterer intervention program may not be the best solution for every offender. We need to have more flexible options. (San Francisco Public Hearing, p. 178) | The task force took no action based on this comment. There is insufficient research on the length of time needed in batterers intervention programs. |
| Domestic Violence Criminal Procedure<br>#52<br>Review of other orders<br>p. 40 | **Hon. Laura Halgren**<br>Judge of the Superior Court of California,<br>County of San Diego | The speaker agrees with the underlying concept of reviewing all orders but raises questions regarding implementation. Who should have the responsibility of gathering these records. Since sentencing is often immediate, will there be sufficient time to accomplish this? The proposal should designate the entity with responsibility for gathering the information. | The task force took no action based on this comment. Court personnel should handle per local discretion. |
| Domestic Violence Criminal Procedure<br># 55<br>Entry into DVROS<br>p. 41 | **Valerie Fercho-Tillery**<br>Program Manager<br>Department of Justice, Domestic Violence<br>Restraining Order System | The DVROS unit supports this recommendation but would add orders that have been "modified, extended, or terminated" to the language and include a reference to the proof of service. See Family Code section 6380(d)(2). | The task force modified the language of the proposal to reflect this comment. |
| Domestic Violence Criminal Procedure<br>#59 | **Valerie Fercho-Tillery**<br>Program Manager<br>Department of Justice, Domestic | Language should be added to this recommendation reiterating the requirement that if criminal | The task force modified the language of the proposal to reflect this comment. |

**Domestic Violence Practice and Procedure Task Force
Draft Guideline Comments**

**CRIMINAL PROCEDURE
Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Expiration<br>p. 40 | Violence<br>Restraining Order System | jurisdiction over the defendant terminates early, a Notice of Termination of Protective Order in Criminal Proceedings (CR-165) must be entered into DVROS. | |
| Domestic Violence Criminal Procedure<br>#59<br>Expiration<br>p. 41 | **Kate Killeen**<br>Former Deputy Executive Director California District Attorneys Association<br>Sacramento | New legislation provides for ten-year protective orders that can be issued under stalking and also intimidation of witness provisions Penal Code Sections 636.9 and 636.2. And that legislation would deal with the current issue where protective orders are often due to terminate at the end of probation, and this would allow the order to last up to ten years regardless of whether the individual restrained is at the state prison, county jail, put on probation or not on probation or put on parole or not on parole.  (San Francisco Public Hearing, p. 217) | No action required.  See AB 289 (ch. 582). |
| Domestic Violence Criminal Procedure<br>#62<br>Progress reports<br>p. 42 | **Frank Del Fiugo**<br>A Turning Point<br>Santa Clara | Progress reports from the batterers' intervention program should be submitted to probation every 8 weeks and a full report should be submitted to the judicial officer at the review hearing.  (San Francisco Public Hearing, p. 174) | The task force took no action.  A judge can order more frequent reports in an appropriate case. |
| Domestic Violence Criminal Procedure<br>#63<br>Final evaluation<br>p. 42 | **Alyce LaViolette**<br>Founder,<br>Alternatives Counseling Association<br>Long Beach | The court should require the payment of all batterer intervention program fees before probation is terminated. (Los Angeles Public Hearing, p. 133) | Agree, and add any restitution.  Already required. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

**CRIMINAL PROCEDURE**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Domestic Violence Criminal Procedure #63 Final evaluation p. 42 | **Eve Sheedy** Deputy City Attorney Los Angeles | Probation should not be terminated prior to the three-year period because the protective order is also terminated and the victim may not realize this. (Los Angeles Public Hearing, p. 143) | This is adequately covered, no change needed. |
| Domestic Violence Criminal Procedure #64 Defendant's appearance during probation p. 42 | **Hon. Mary Carolyn Morgan** Judge of the Superior Court of California,   County of San Francisco | The judge should conduct review hearings to determine whether the defendant has attended the orientation (conducted by probation in San Francisco), shown proof of enrollment (required at two weeks after probation is ordered), after one month to determine that the defendant has attended four sessions, and then after two, four, and six month intervals. If the defendant is not in compliance, review hearings should be conducted every week. (San Francisco Public Hearing, p. 187) | This is adequately covered in Proposal # 64. Details may be left to local discretion. |
| Domestic Violence Criminal Procedure #64 Defendant's appearance during probation p. 42 | **Hon. Mary Carolyn Morgan** Judge of the Superior Court of California,   County of San Francisco | The court should endeavor to find out why a defendant on probation is not complying with the terms and conditions such as attending the batterer intervention program sessions. The court may be able to ensure that the defendant receives appropriate referrals or interventions whether the issue is, for example, financial, child care, literacy, or mental health. (San Francisco Public Hearing, p. 188) | Agree. See Proposal #65. |
| Domestic Violence Criminal Procedure | **Hon. Colleen Toy White** Presiding Judge of the | The court should conduct face-to-face review hearings to monitor probation | Agree. See Proposals #61-66. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

**CRIMINAL PROCEDURE**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| #64<br>Defendant's appearance during probation<br>p. 42 | Superior Court of California,<br>    County of Ventura | and to receive the required progress reports. The hearings in front of the judge establish that the defendant's behavior is being scrutinized and that he or she is accountable. Probation should play an integral role at the hearing and should provide information on the record as to the status of the defendant's probation. (Los Angeles Public Hearing, p. 108) | |
| Domestic Violence Criminal Procedure<br>#65<br>Graduated sanctions<br>p. 42 | **Hon. Becky Lynn Dugan**<br>Judge of the<br>Superior Court of California,<br>    County of Riverside | The author supports the graduated sanctions concept especially when applied to sanctions for failure to attend batterers' intervention program sessions. | No action required. |
| Domestic Violence Criminal Procedure<br>#65<br>Graduated sanctions<br>p. 42 | **Alyce LaViolette**<br>Founder,<br>Alternatives Counseling Association<br>Long Beach | The speaker recommends more flexibility in terms of permissible absences from batterer intervention program sessions and the nature of the program. (Los Angeles Public Hearing, p. 132, 137) | The task force took no action on this comment since the permissible absences are set by statute. Penal Code Section 1203.097 (a)(6). |
| Domestic Violence Criminal Procedure<br>#65<br>Graduated sanctions<br>p. 42 | **Hon. Mary Carolyn Morgan**<br>Judge of the Superior Court of California,<br>    County of San Francisco | If the offender simply fails to attend and is out of compliance with the terms and conditions of probation, there is a great alternative – incarceration. In San Francisco, the county jail has a batterer intervention program. (San Francisco Public Hearing, p. 188) | No action required. |
| Domestic Violence Criminal Procedure<br>#65 | **Hon. Philip Pennypacker**<br>Supervising Judge of the Superior Court of California, | In Santa Clara, the court sentences on violations of probation which is essential to building safe families. | No action required. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

**CRIMINAL PROCEDURE**
**Specific Comments**

| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
|---|---|---|---|
| Graduated sanctions p. 42 | County of Santa Clara | (San Francisco Public Hearing, p. 148) | |
| Domestic Violence Criminal Procedure #65 Graduated sanctions p. 42 | **Niki Solis** Managing Attorney, Domestic Violence and Misdemeanor Unit San Francisco Public Defender's Office | The speaker asserts that many defendants do not have the ability to pay the fees for batterers' intervention programs and that probation should not be continued on the basis of failure to pay the fees. (San Francisco Public Hearing, p. 161) | The task force took no action based on this comment. See Proposal #66 which provides that the probation department may determine defendant's ability to pay these fees. |
| Domestic Violence Criminal Procedure #65 Graduated sanctions p. 42 | **Niki Solis** Managing Attorney, Domestic Violence and Misdemeanor Unit San Francisco Public Defender's Office | Criminal protective orders should not be issued unless the restrained person has counsel present or has had an opportunity to obtain counsel. (San Francisco Public Hearing, p. 161) | This comment is adequately covered. See Proposal #9a. |
| Domestic Violence Criminal Procedure #65 Graduated sanctions p. 42 | **Niki Solis** Managing Attorney, Domestic Violence and Misdemeanor Unit San Francisco Public Defender's Office | Some way of providing counseling for victims in criminal cases should be devised because so many victims want to back out of the proceeding. (San Francisco Public Hearing, p. 162) | The task force took no action based on this comment. Mandating counseling for victims in a criminal proceeding is not appropriate. |
| Domestic Violence Criminal Procedure #66 Role of probation p. 43 | **Frank Del Fiugo** A Turning Point Santa Clara | Collaboration between probation and the batterers' intervention programs is essential; sometimes the caseload overwhelms probation and this becomes difficult to accomplish. (San Francisco Public Hearing, p. 167) | No action required. |
| Domestic Violence Criminal Procedure #66 Role of probation p. 43 | **Frank Del Fiugo** A Turning Point Santa Clara | If a defendant is referred to anger management conducted by a program that also does a 52-week batterers' intervention program, a Santa Clara program tries to infuse the anger | No action required. |

131

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| CRIMINAL PROCEDURE Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | management program with domestic violence issues.  This can happen when a defendant pleads to a lesser included offense and it becomes clear in the course of the anger management program that a domestic violence issue is present.  (San Francisco Public Hearing, p. 170) | |
| Domestic Violence Criminal Procedure #66 Role of probation p. 43 | **Frank Del Fiugo** A Turning Point Santa Clara | Careful review and certification of batterers' intervention programs is essential to support safety and accountability.  (San Francisco Public Hearing, p. 172) | No action required. |
| Domestic Violence Criminal Procedure #66 Role of probation p. 43 | **Frank Del Fiugo** A Turning Point Santa Clara | Batterers' intervention programs should have some flexibility as to the type of treatment modality they use and they should have a licensed mental health professional on-site. Domestic violence offenders may also have co-occurring issues such as mood disorders, depression, personality disorders, PTSD, effects of abuse they may have experienced as a child, and the effects of military service.  (San Francisco Public Hearing, p. 173) | No action required. |
| Domestic Violence Criminal Procedure #66 Role of probation p. 43 | **Arturo Faro** Division Directior, Specialized Services Division San Francisco Adult Probation Department | In San Francisco, the probation department supervises both felony and misdemeanor domestic violence offenders.  (San Francisco Public Hearing, p. 151) | No action required. |
| Domestic Violence Criminal Procedure | **Arturo Faro** Division Directior, Specialized | In San Francisco, the probation department conducts site visits and | No action required.  Proposal #66 adequately covers this issue. |

## Domestic Violence Practice and Procedure Task Force
## Draft Guideline Comments

| CRIMINAL PROCEDURE Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| #66 Role of probation p. 43 | Services Division San Francisco Adult Probation Department | supervises programs to ensure compliance with the requirements under Penal Code section 1203.097. The speaker recommends a much more collaborative community approach beyond the monitoring of probation so that the programs can improve.  (San Francisco Public Hearing, p. 152, 156) | |
| Domestic Violence Criminal Procedure #66 Role of probation p. 43 | **Kate Killeen** Former Deputy Executive Director California District Attorneys Association Sacramento | Adequate funding for probation is absolutely essential especially in high risk cases.  (San Francisco Public Hearing, p. 120) | No action required.  Proposal #66 adequately covers this issue. |
| Domestic Violence Criminal Procedure #66 Role of probation p. 43 | **Alyce LaViolette** Founder, Alternatives Counseling Association Long Beach | Probation officers handling domestic violence cases should receive regular training involving presentations by justice system partners (not just the in-house type of training).  (Los Angeles Public Hearing, p. 134) | The task force took no action based on this comment.  Training for probation is not within the purview of the Judicial Council. |
| Domestic Violence Criminal Procedure #66 Role of probation p. 43 | **Gladys Nagy** Supervising Deputy Probation Officer Los Angeles County | At the present time in Los Angeles, each probation officer monitors 65 batterers' intervention programs on his or her caseload.  The speaker thinks the number of officers should quadruple which would result in 16 programs on each caseload.  (Los Angeles Public Hearing, p. 163) | No action required. |
| Domestic Violence Criminal Procedure | **Gladys Nagy** Supervising Deputy Probation | Probation's role in monitoring batterer intervention programs is made more | No action required. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| CRIMINAL PROCEDURE | | | |
|---|---|---|---|
| **Specific Comments** | | | |
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| #66<br>Role of probation<br>p. 43 | Officer<br>Los Angeles County | difficult due to the many languages spoken by probationers and the lack of programs conducted in these languages.  (Los Angeles Public Hearing, p. 163) | |
| Domestic Violence Criminal Procedure<br>#66<br>Role of probation<br>p. 43 | **Gladys Nagy**<br>Supervising Deputy Probation Officer<br>Los Angeles County | It would cost $25 million dollars in Los Angeles to supervise misdemeanor domestic violence probationers.  (Los Angeles Public Hearing, p. 168) | No action required. |
| Domestic Violence Criminal Procedure<br>#66<br>Role of probation<br>p. 43 | **Hon. Philip Pennypacker**<br>Supervising Judge of the Superior Court of California,<br>   County of Santa Clara | Santa Clara has misdemeanor probation officers in domestic violence which is essential.  The court communicates with the probation officers, and probation provides reports to the court that outline the details of defendant's performance on probation.  (San Francisco Public Hearing, p. 148) | No action required.  Proposal #66 adequately covers this issue. |
| Domestic Violence Criminal Procedure<br>#66<br>Role of probation<br>p. 43 | **Karen Staples**<br>Chief Probation Officer,<br>Ventura County | In Ventura, there is a fully funded probation office that supervises misdemeanors as well as felonies.  Supervision is organized pursuant to a classification system according to severity with the more severe cases receiving intensive supervision.  (Los Angeles Public Hearing, p. 120, 123) | No action required.  Proposal #66 adequately covers this issue. |
| Domestic Violence Criminal Procedure<br>#66<br>Role of probation<br>p. 43 | **Hon. Colleen Toy White**<br>Presiding Judge of the Superior Court of California,<br>   County of Ventura | The role of probation in post-conviction proceedings is essential.  Formal supervision of offenders is necessary.  The court needs an experienced probation officer in the | No action required.  Proposal #66 adequately covers this issue. |

**Domestic Violence Practice and Procedure Task Force**
**Draft Guideline Comments**

| CRIMINAL PROCEDURE<br>Specific Comments | | | |
|---|---|---|---|
| Guideline/Practice | Commentator | Comment Excerpt or Summary: | Task Force Response |
| | | courtroom.  (Los Angeles Public Hearing, p. 106) | |