MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

BRADLEY D. PRICE (ILBN 6294571)
Special Assistant United States Attorney

    150 Almaden Boulevard
    San Jose, California 95113
    Telephone: (408) 535-5080
    Facsimile:  (408) 535-5066
    Email: bradley.price@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No.    CR 10-00729 JW |
| | ) | |
|     Plaintiff, | ) | **UNITED STATES' OPPOSITION TO** |
| | ) | **MOTION TO SUPPRESS EVIDENCE** |
|     v. | ) | |
| | ) | |
| STEVEN LEE VARGEM, | ) | Date:    April 25, 2011 |
| | ) | Time:    1:30 p.m. |
|     Defendant. | ) | Court:   Hon. James Ware |
| | ) | |

## INTRODUCTION

The defendant, Steven Lee Vargem, is charged in a two-count indictment with violations of 18 U.S.C. §§ 922(o) and 922(a)(2) (illegal possession of a machinegun), and 26 U.S.C. §§ 5841, 5861(d), and 5871 (possession of an unregistered firearm). *See* Indictment, Dkt. #9.  Both counts arise from the defendant's illegal possession of a fully-automatic Heckler & Koch SP89 firearm that was seized by San Jose Police during execution of a search warrant of the defendant's residence on June 24, 2010.

Defendant claims that facial defects in the standard form California Emergency Protective Restraining Order (hereafter "EPRO") preclude any state magistrate judge in California from

ever finding probable cause sufficient to issue a search warrant. *See* Dkt. # 21 at 3. Defendant appears to argue that because California's EPRO lacks certain admonishments concerning disposing of firearms, it was not valid, and therefore there was no probable cause to issue the warrant that was executed at the defendant's residence. *Id.* He further argues that due to this lack of probable cause, his Fourth Amendment rights were violated, and therefore this Court should suppress the Heckler & Koch SP-89 that is the subject of this federal prosecution. *Id.* Finally, defendant argues that the *Leon* good-faith exception does not apply to this case. *Id.* Defendant makes clear that he is not making a constitutional challenge under the Second Amendment and *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008).

There was probable cause to issue the state search warrant in this case. Law enforcement databases showed that defendant had more than ten firearms registered to him at his residence in San Jose California. As the restrained party in an EPRO, it was unlawful for defendant to possess any firearms. The police had probable cause to believe there were firearms at his residence, which was the scene of a domestic violence incident, based upon (1) defendant's registration of 12 firearms to himself at that address, (2) numerous statements by the victim of the domestic violence assault concerning his ownership and control of the firearms at that residence, and (3) the defendant's own statements to Officer Tuell.  That probable cause existed independently of whether the EPRO advised defendant of every possible way to dispose of his guns. Defendant's claim that the EPRO was unenforceable is not supported by any authority. It would also invalidate every search warrant executed in connection with persons who are the subject of domestic violence EPROs. Even were this Court to find that lack of firearms disposal language in an EPRO somehow vitiates probable cause on these facts, the *Leon* good faith exception applies to this case, and the machine gun should therefore not be suppressed.

## STATEMENT OF FACTS

In the early morning hours of June 19, 2010, the defendant, Steven Lee Vargem, assaulted his wife (hereafter "the victim"), choking her and causing her to fall to the floor. *See* Affidavit in Support of U.S. Opposition, attached as Exhibit 1 (hereafter Tuell Affidavit), at ¶ 3. The victim got dressed, left the residence, and contacted the San Jose Police Department (hereafter "SJPD")

to report the assault. *Id*. at ¶ 4.  On that same date, the SJPD issued the victim an Emergency Protective Restraining Order (hereafter "EPRO") that named Vargem as the restrained party. *Id*. at ¶ 5.  As a restrained party in an EPRO, the defendant was "prohibited from owning, possessing, purchasing, receiving, or attempting to purchase or receive a firearm." *See* attached Exhibit 2; CAL. PENAL CODE § 12021(g) (West 2011).  This fact was known to Officer Duane Tuell, of the San Jose Police Department. *See* Tuell Affidavit at ¶ 5.  Officer Tuell learned through a review of law enforcement databases that the defendant was personally served with the EPRO by Officer Cliff Jepson (SJPD) at approximately 9:00 a.m. on June 22, 2010. *Id*. at ¶ 6; *see also* attached Exhibit 3.

On June 24, 2010, Oficer Tuell learned through review of law enforcement databases that the defendant had twelve (12) firearms registered to him at his residence. Tuell Affidavit at ¶ 7. Officer Tuell contacted the victim to discuss those firearms registered to defendant. *Id*. at ¶ 8. The victim stated the defendant was very secretive about his firearms. *Id*.  She further stated that she did not have access to the safes containing his firearms. *Id*.  She advised Officer Tuell that she had observed defendant place a pistol in one of the safes approximately two months ago. *Id*.

At approximately 1:29 p.m. on June 24, 2010, Officer Tuell spoke with the defendant via telephone concerning the firearms Officer Tuell believed were present at his residence. *Id*. at ¶ 10.  Officer Tuell confirmed with the defendant again that he was the subject of an EPRO. *Id*. Office Tuell understood defendant to be representing during that conversation that he had sold or transferred his firearms. *Id*. Upon further questioning about what was in his safes, the defendant stated he wasn't sure what was there. *Id*.  Officer Tuell believed defendant was being deceptive about firearms at his residence. *Id*.

After speaking to defendant, Officer Tuell advised SJPD Seargent Christine Anaya to proceed to Vargem's residence out of concern for the victim's family in case Vargem should return to his residence in violation of the EPRO. *Id*. at ¶11.  A few minutes after Officer Tuell's conversation with defendant, he was advised by SJPD patrol that a white van registered to defendant was in the driveway of defendant's residence.  The defendant was observed loading items into the van. *Id*.  The defendant was arrested for violating the EPRO, and a search of the

van registered to him revealed a Glock 19 semi-automatic pistol. *Id.*

At approximately 3:00 p.m. on June 24, 2010, Officer Tuell swore to a search warrant affidavit before magistrate judge Paul R. Teilh. *Id.* at ¶ 13; attached Exhibit 4.  Based upon the facts stated in that affidavit, he believed then and believes now there was probable cause to believe that firearms would be found at defendant's residence, in violation of California law.

On June 24, 2010, Officer Tuell and Detective Ngyen (SJPD) executed the search warrant obtained pursuant to Judge Teilh's review. *Id.* at ¶ 14.  During that search, more than thirty (30) firearms were seized, including a fully automatic Heckler & Koch SP89 firearm, serial number 21-15341. *See id.* at ¶ 14; attached Exhibit 5.  The defendant was subsequently charged with and convicted of violations of California Penal Code Sections 236 and 166(c)(1).

## ARGUMENT

## I.   THE MACHINE GUN SHOULD NOT BE SUPPRESSED

### A.  The Defendant's Fourth Amendment Rights Were Not Violated

#### i.       The Search Warrant Was Supported By Probable Cause

The Fourth Amendment protects individuals against "unreasonable searches and seizures."  For a search warrant to be valid, it must be "supported by an affidavit establishing probable cause." *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985).  It is well established that "probable cause determinations are to be made by viewing the 'totality of the circumstances' set forth in the affidavit." *Id.* (*quoting Illinois v. Gates*, 462 U.S. 213 (1983)).  A showing of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 245 & n.13.  The Ninth Circuit has further explained that "[w]hether there is [such] a fair probability depends upon the totality of the circumstances, including reasonable inferences." *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (*quoting United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc)). The totality of circumstances inquiry is not "readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232.  Rather, "[i]t simply requires that enough information is presented to the [judicial officer] to enable him to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the

criminal process." *Jaben v. United States*, 381 U.S. 214, 224-25 (1965).

A magistrate's finding of probable cause "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236 (noting that a "'grudging or negative attitude by reviewing courts toward warrants' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant") (*quoting United States v. Ventresca*, 380 U.S. 102, 108 (1965)). A magistrate's decision to issue a warrant should not be disturbed unless "clearly erroneous." *Stanert*, 762 F.2d at 779 (*citing United States v. Estrada*, 773 F.2d 683, 684 (9th Cir. 1984); *United States v. Seybold*, 726 F.2d 502, 503 (9th Cir. 1984)).

For this warrant to be valid, it had to be supported by probable cause to believe there were firearms at defendant's residence. *Stanert*, 762 F.2d at 778. There was ample such probable cause on these facts, and that probable cause was detailed in Officer Tuell's original affidavit. *See* attached Exhibit 4. First, defendant was subject to an EPRO that prohibited him from owning or possessing firearms. *Id*. Second, Officer Tuell learned through law enforcement database searches that defendant had twelve firearms registered to him at his residence. *Id*. Third, the victim of defendant's domestic violence assault stated that the assault occurred at defendant's residence. Fourth, that victim told law enforcement that (a) she had observed defendant place a pistol in the locked gun safe in the family room approximately two months ago; (b) she did not have access to the safes containing the firearms; (c) defendant is very secretive about his firearms; and (d) defendant would become very angry and yell at the victim if she came into a room when the guns safes were unlocked. *Id*. Finally, the defendant himself acknowledged, at least implicitly, that there may still be guns in his safes when he stated essentially that he was not sure what was in them. *Id*. Moreover, Officer Tuell advised judge Teilh that based upon his training and experience, people who own firearms continue to retain them as assets for a long period of time, and that he believed therefore defendant was still in possession of the firearms registered to him. *Id*. Defendant's claim that the Vargem home was no longer the scene of a domestic violence incident, *see* Dkt. # 21 at 13, is unpersuasive. The victim advised Officer Tuell she thought defendant would "finish" her. *See* Exhibit 4 at VAR-000109. Additionally, Vargem, the restrained party, had returned to and was present at his

residence in violation of the EPRO when he was arrested. *Id*. at VAR-000109.

The facts above show that defendant possessed and owned the firearms, at his residence, in violation of California law.  It makes no difference that defendant was not supposed to be at or near his residence under the terms of the EPRO.  Possession may be constructive or actual in the context of Penal Code 12021. *See People v. Williams*, 170 Cal. App. 587 (4th Dist. 2009). Moreover, Officer Tuell was advised by the victim that Vargem had exclusive control over the firearms, as they were locked in a safe and she did not have a key.  Tuell Affidavit at ¶ 8.  That fact alone established probable cause to believe Vargem possessed the firearms.  Even if the victim did have some technical right to "own" the property as defendant argues, *see* Dkt. # 21 at 7 & n.2, such joint ownership has no effect on whether defendant possessed the contraband under California law. *See Williams*, 170 Cal. App. at 625.  Officer Tuell also had reason to believe that at least the 12 firearms registered to defendant in CLETS were owned by defendant based upon the fact that he registered them to his home address.

Defendant makes conclusory allegations that the warrant violated the "Second, Fourth, Fifth, and Fourteenth Amendments." *See* Dkt. 21 at 8.  However, those arguments are not developed in any meaningful way, and he explicitly denies raising a Second Amendment challenge to any California law as a ground for suppression of the machine gun.  Based on the totality of the circumstances, there was sufficient probable cause to believe that firearms illegally owned and possessed by defendant were present at the scene of a domestic violence incident, specifically defendant's residence.  The warrant was therefore supported by sufficient probable cause. *See Gates*, 462 U.S. at 245 & n.13; *Kelley*, 482 F.3d at 1050.

ii.     *The Alleged Defects In The EPRO Do Not Vitiate Probable Cause*

Defendant conflates his claims about due process and notice concerning the face of the EPRO with an argument that his Fourth Amendment rights were violated, thus requiring suppression of the machine gun.  The warrant, however, was not based upon any facts related to the disposal of firearms.  Indeed, defendant had no right ever to dispose of the firearm at issue in this case, a fully automatic machine gun that was illegal for him to possess or transfer even prior to issuance of the EPRO. *See* 18 U.S.C. § 922(o).  The warrant was based, as noted above, on

6

facts and circumstances tending to show that firearms were owned and possessed by the defendant in violation of California law, and that those firearms were in locked safes at his residence.  On those grounds, articulated in the warrant affidavit, the magistrate judge signed the warrant.

Defendant is foreclosed from arguing that he was denied due process based on the circumstances surrounding notice of the EPRO in this case.  The EPRO was issued against the defendant on June 19, 2010 at the request of the victim. Tuell Affidavit at ¶ 5.  That EPRO was evident in CLETS. *Id*.  That EPRO was served on defendant personally on June 22, 2010 at 9:00 a.m. *Id*. at ¶ 6; *see also* attached Exhibit 3.  That service was sufficient as a matter of law, and it alone forecloses any arguments defendant makes concerning due process.  In addition, Officer Tuell advised defendant via the telephone that he was subject to the EPRO again on June 24, 2010. Tuell Affidavit at ¶ 10. Such verbal notice, even in the absence of the formal service that was effected in this case, would have been sufficient as a matter of law to establish notice of the EPRO. *See* CAL. FAM. CODE §6383(e) (West 2011).

Defendant's attempt to link a due process argument concerning disposal or transfer of firearms to the probable cause relied upon for issuance of the warrant is not persuasive.  He argues that the EPRO's failure to outline on its face all Vargem's choices for firearm surrender renders the EPRO invalid and unenforceable.  That claim is unsupported by any authority.  He cites not one case for the proposition that a detailed description of possible firearm disposal is necessary for a valid and enforceable EPRO.  Moreover, California Penal Code Section 136.2, which governs emergency protective orders, explicitly states that "the fact that an order issued by a court pursuant to this section as not issued on forms adopted by the Judicial Council and approved by the Department of Justice shall not, in and of itself, make the order unenforceable." CAL. PENAL CODE § 136.2 (West 2011).  This statute counsels against precisely the type of invalidation of the EPRO defendant seeks.

Further, to the extent that defendant is claiming a violation of due process, that claim would need to be based upon a prosecution for something related to his ability to dispose of firearms.  This prosecution is unrelated to firearm disposal.  Even had he disposed of the machine

gun at issue, he would have still been subject to prosecution for possessing it. In any event, the immunity clause of California Family Code section 6389(d) is permissive, not compulsory. *See* CAL. FAM. CODE § 6389(d) (West 2011) (noting that a court "may grant use immunity for the act of relinquishing the firearm required under this section"). Even if a state court could grant use immunity to defendant for relinquishing a fully automatic machine gun (which it cannot), such a grant would not automatically be afforded to the defendant under § 6389.

Finally, the judicial council references attached to defendant's motion do not support his position. To the extent counsel for defendant has been involved in discussions concerning what California's policies and procedures should be regarding firearm disposal or possession, that involvement has no bearing on this case. Even had the council taken a position on this issue, *see* Dkt. # 21 at 8, it would certainly not be binding on this Court.

B.  The *Leon* Good Faith Exception Applies To This Case

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court created a good faith exception to the exclusionary rule. *Id.* The warrant in this case was supported by sufficient probable cause, as demonstrated above. But even if this Court finds the warrant lacked probable cause, it should still deny defendant's motion to suppress because Officer Tuell had a reasonable belief in the validity of the warrant. The Supreme Court has made clear that "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 921 (noting the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity").

There is no evidence that Officer Tuell acted in any way that was not objectively reasonable in this case when he submitted the original warrant to judge Teilh and relied upon it. As discussed above, there is sufficient detail in the affidavit to suggest the executing agents had valid reasons to believe that the warrant was valid. Under a reasonable, common-sense reading of the affidavit, the warrant provides ample reason to believe that firearms illegally possessed and owned would be found in possession of defendant at his residence. This Court should reject defendant's invitation to find that all such EPROs are by definition invalid and unenforceable on

8

their face, as the facts and law above make clear that Officer Tuell provided adequate facts in support of the search warrant, and that he justifiably relied upon the judicial approval for the warrant in proceeding with the search of defendant's residence.  It cannot be said that "a reasonably well trained officer would have known that the search was illegal despite the magistrate's legal authorization." *Leon*, 468 U.S. at 922 & n.3.

Defendant's reliance on *United States v. Vasey*, 834 F.2d 782 (9t Cir. 1987), *see* Dkt. # 21 at 19, is misplaced.  *Vasey* involved facts distinguishable from this case, where police first conducted a warrantless search of a defendant's automobile. *Vasey*, 834 F.3d at 784.  They then applied for a warrant based upon evidence obtained without a warrant. *Id*. at 784-85.  Finding that suppression of evidence would tend to deter the type of warrantless search executed by police, the *Vasey* court declined to apply the *Leon* good faith exception. *Id*. at 789.  No such facts are present in this case, where the original search was done pursuant to a valid and enforceable search warrant, as described above.

Finally, defendant cannot meet his burden of a "substantial preliminary" showing that any omission was improperly excluded from the warrant. *See United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000).  His claims that Officer Tuell incorrectly stated that he had to "surrender all firearms" is not material.  As a restrained party, defendant was prohibited from lawfully possessing or owning any firearm.  He was prohibited from possessing the machine gun even in the absence of the EPRO.  Advisement that he had to surrender firearms is not meaningfully different than being prohibited from possessing them.  Defendant cannot show that this language's presence in the warrant affidavit had any effect on the issuing judge's decision that the evidence constituted sufficient probable cause.  Therefore, this claimed "omission and commission" as it is phrased by defendant cannot possible qualify as the type of

//

//

//

//

//

misrepresentation which justifies suppression, or even an evidentiary hearing. *See Reeves*, 210 F.3d at 1044.

## <u>CONCLUSION</u>

For the foregoing reasons, the defendant's motion to suppress should be denied.

Dated: April 11, 2011

<div style="margin-left:50%">

Respectfully submitted,

MELINDA HAAG
United States Attorney


_____
    /s/
BRADLEY D. PRICE
Special Assistant U.S. Attorney

</div>