Donald E. J. Kilmer, Jr. (SBN: 179986)
Law Offices of Donald Kilmer, APC
1645 Willow Street, Suite 150
San Jose, California 95125
Phone: (408) 264-8489
Fax: (408) 264-8487
E-Mail: Don@DKLawOffice.com

Attorney for Defendant:
STEVEN VARGEM

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN LEE VARGEM,<br><br>Defendant. | CASE NO.: CR 10-00729 JW<br><br>DEFENDANT VARGEM'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS<br><br>Date:  April 25, 2011<br>Time:  1:30 p.m.<br>Court: Hon. James Ware |

Defendant VARGEM's Motion to Suppress is premised on attacking the warrant itself, the affidavit supporting the warrant, and the magistrate's unreasonable finding of probable cause to believe a crime had been committed.

The heart of VARGEM's challenge to the warrant is California's criminalization of "ownership" of firearms for persons subject to *ex parte* temporary restraining orders. To the extent that California law criminalizes ownership of ANY property based on *ex parte* orders, that statute is unconstitutional.

Aside from the obvious due process issues of ordering an immediate sale/transfer/divestment of valuable property without a hearing; the requirement – even with notice – of an immediate sale/transfer/divestment is an impossible task given the terms of the Domestic Violence Restraining Order itself. Guns can only

be bought/sold through licensed dealers in California. CA Penal Code § 12072. This means they have to be transported to the dealer to conduct the sale. Imposing that duty on the gun owner in the same restraining order that prohibits possession of guns – and in this case, an order that even prohibits temporal proximity to the guns located in the home – defies logic and reason and violates due process.

Nor could VARGEM phone his wife to conduct the sale, as the *ex parte* order also prohibited VARGEM from contacting his wife by any means.

This is where I would expect the Government to state the obvious and point out that VARGEM was arrested on the day the warrant was issued for violating the restraining order and that he later entered a plea to that violation. But since Fourth Amendment cases are adjudicated under a "totality of the circumstances" regime, it is necessary to delve further into the facts. *Illinois v. Gates*, 462 U.S. 213 (1983).

In his Search Warrant Affidavit, Officer Tuell says that he told VARGEM: "*... he (Vargem) had the responsibility to surrender all firearms*." [page 3, lines 24-25] Why is this relevant?

1. Officer Tuell <u>DOES NOT</u> state in his Search Warrant Affidavit that he had any facts to suggest that VARGEM was in current possession of a firearm or that VARGEM was attempting to purchase or receive a firearm.

2. The whole basis for the probable cause finding is that VARGEM had guns registered to him at his home and that VARGEM had not surrendered (or sold?) those firearms after being served with the EPRO.[1]

3. Even if we assume that VARGEM was properly served on June 22,

[1] The government's position appears to be that evidence of registration of guns (as an indicia of ownership) – plus – evidence of being subject to a restraining order – equals – probable cause to believe a crime has been (or is about to be) committed.

2010 with the EPRO issued on June 19, 2010;

4. We also know that the EPRO form does not comply with California law in that it does not warn the restrained party that they are under an affirmative duty to surrender their firearms (the form only states that the restrained party cannot own, possess, purchase, receive or attempt to purchase or receive a firearm);

5. Nor does the form itself instruct the gun owner how to surrender firearms in a safe and lawful manner (that is why Santa Clara County developed local form FM-1047, which we know was NOT served on VARGEM along with the EPRO);

6. That means that the first and only notice/commandment VARGEM received that he had a duty to surrender his firearms was given to him by Officer Tuell on June 24, 2010 at 1:29 p.m.;

7. By 3:00 p.m. that same day, Officer Tuell was swearing out his warrant;

8. And by 4:00 p.m. Officer Tuell was executing his warrant.

9. But Family Code § 6389(c)(2) gives the restrained gun owner 24 hours to surrender his guns upon being given notice of his duty to surrender them;

10. There is no evidence that the officer who served VARGEM with the EPRO made an immediate request that VARGEM surrender his firearms at the time of service (how could he, VARGEM was served with the EPRO as part of the arrest and booking process at the police station after he surrendered himself to the police);

11. That means that Officer Tuell's June 24, 2010 notice to VARGEM at 1:29 p.m. was the first and only notice that VARGEM was given that he had an affirmative duty to surrender his guns.

12. Which means:

        a. even with unconstitutional state statutes that criminalize "ownership" of firearms after service of an *ex parte* restraining order;

b. even with flawed Judicial Council Forms that omit critical language;

c. and even with constitutionally suspect verbal notice;

d. the 24 hour clock for VARGEM to self-surrender (or sell) his firearms would not expire until 1:29 p.m. on June 25, 2010.

13. Yet Judge Teilh was issuing a warrant, at 3:00 p.m. on June 24, 2010, based on probable cause to believe VARGEM had not surrendered his firearms.

14. In other words, giving the Government every possible benefit of the doubt, it should still be impossible for a judge to make a finding of probable cause that VARGEM had violated his duty to surrender firearms within 24 hours of notice of that duty.

15. It had only been a mere 90 minutes since VARGEM received constructive verbal notice of that duty from Officer Tuell.

Moreover, Officer Tuell does not even allege a violation (or attempted violation) of the prohibited person statute – CA Penal Code § 12021. Instead, the affidavit and warrant cite two statutes which purport to bootstrap a *legislative* finding of probable cause – CA Penal Code § 1524(a)(9) and § 12028.5. These statutes have their own limitations regarding firearms seized (i.e., in plain site or subject to a consensual search) at the scene of a domestic violence incident.

The government's argument that the VARGEM home was still the scene of a domestic violence incident five (5) days after the alleged assault occurred, and after VARGEM was forbidden to return to the house by the EPRO, is not supported by common sense or by a citation to any statute or case law that a scene of domestic violence remains a scene of domestic violence in perpetuity.

The government relies on the case of *People v. Williams*, 170 Cal.App.4th 587 (2009)[2] for two contentions: (1) that VARGEM was in violation of the EPRO even if his wife co-owned the guns and/or (2) that VARGEM was in constructive possession of firearms because he alone had the combination to the safes where the guns were located. This reliance is misplaced.

The whole point of securing firearms at the scene of a domestic violence incident (CA Penal Code § 12028.5) is to keep guns away from the restrained party to insure the safety of the victim and officers present at the scene. If the victim co-owns the guns and needs them to exercise her own right of self-defense, by what power does the government claim it can deprive the victim of that right by taking guns lawfully owned by her? This is where the government's interpretation of CA Penal Code § 1524(a)(9) and § 12028.5 would violate Mrs. Vargem's rights under the Second Amendment. *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008) and *McDonald v. City of Chicago*, 177 L. Ed. 2d 894 (2010).

Furthermore:

1. Even if Mrs. Vargem did not know the combinations to the safes, she had just as much right as Mr. VARGEM to hire a locksmith to open and re-key the safes.
2. There is nothing in the record to indicate that Mrs. Vargem wanted the guns removed from the house.
3. The full quote from *Williams* at 625 is: "*Conviction is not precluded ... if the defendant's right to exercise dominion and control over the place where the contraband was located is shared with another. [Citation.]*" (*People v. Valerio* (1970) 13 Cal.App.3d 912, 921 [92 Cal. Rptr. 82].)
4. VARGEM did not have the **right** to exercise dominion and control over the place where the "contraband" was located. He was subject to an EPRO that

[2] The citation in the Government's brief is wrong in that it fails to identify the Cal.App. Reporter as the 4th Edition.

had temporarily suspended his dominion and control over the house where the guns were located. The fact that he was arrested for violating the EPRO doesn't change the fact that he had no **right** to be there. This is the major distinction between *Williams* and this case. The defendant in *Williams* had the right to occupy the house, common areas and the room where the guns/drugs were located at the time of the search. VARGEM didn't have that right to occupy his home after being served with the (defective) EPRO.

5. Furthermore, the *Williams* Court's analysis of possession offenses dealt with possession of guns (by a convicted felon) and possession of illegal drugs. See *Williams*' reference to *People v. Montero*, 155 Cal.App.4th 1170 (2007).

   a. First, VARGEM was not a convicted felon. The prohibition on him controlling firearms was based on an *ex parte* order that was defective regarding notice of his duties to surrender the firearms at this house.

   b. Second, firearms are not contraband in the same way illegal drugs are. The illegal conduct associated with possession of a firearm is predicated on the status of the convict (or restrained party), not on the status of the gun.

To be clear (again), VARGEM does not challenge the power of California to suspend his right to possess or purchase firearms on the basis of an *ex parte* restraining order. Separating a gun owner from his guns while an allegation of domestic violence is pending – to protect spouses, children and domestic partners – probably meets any test of constitutional scrutiny, especially since the suspension of rights is temporary and provisions are made for expedited hearings.

Furthermore, after a hearing, and if a permanent restraining order is issued, an order to sell the guns, in a manner intended to preserve their economic value, also probably passes constitutional muster. The Government is correct when they

point out that this is NOT a Second Amendment case[3]. But firearms enjoy constitutional status as both the means of exercising the "right to keep and bear arms" under the Second Amendment; and for purposes of this motion, they enjoy a status as property – subject to due process considerations – under the Fifth and Fourteenth Amendments.

To the extent that VARGEM's firearms were located at his home, and to the extent that the *ex parte* order prohibited him from entering that home and/or approaching within 300 yards of that home – the public safety objective of separating a gun owner from his guns while a domestic violence allegation is pending is met.

Criminalizing "ownership" while an *ex parte* temporary restraining order is pending is both irrational and unconstitutional. And since that is what formed basis of the warrant's finding of probable cause to believe a crime had been committed, the warrant is invalid.

Finally, the government's argument that the defective EPRO does not vitiate probable cause is without merit. VARGEM is not contending that he was not subject to an order that he stay away from his wife, or stay 300 yards away from his own home. There is no ambiguity or lack of notice regarding the "kick-out" and "stay-away" orders. The ambiguity in the EPRO – which rises to the level of an unconstitutional due process violation – is solely with respect to the lack of notice that VARGEM was under an affirmative "duty to surrender" firearms, rather than a duty to merely refrain from possessing, purchasing and/or receiving firearms.

## CONCLUSION

Officer Tuell's mis-statements about VARGEM's violation of a known duty to surrender firearms, that were made to the magistrate in his effort to secure a

---

[3] Except to the extent that VARGEM's wife had both a Second Amendment right to these community property firearms for her own protection in addition to her own proprietary interest in the guns as community property.

warrant, were reckless and careless because they were so easily verified as false by merely reading the standard form (Judicial Council) EPRO.

Furthermore, the magistrate failed in his duty of due diligence by neglecting to inquire about the nature of the EPRO and its notices (or lack thereof) regarding firearm relinquishment.

Furthermore, the deficiencies on the face of the EPRO and the interplay of impossible duties (even if the EPRO contained the legally required notices to surrender) imposed upon a restrained gun owner were easily ascertained facts known to both Officer Tuell and the magistrate. It should have been readily apparent to Judge Teilh and Officer Tuell that an EPRO (even one that complies with the law) that imposes simultaneous, mutually exclusive, legally impossible, conflicting duties on someone cannot support a finding of probable cause to believe the EPRO has been violated. These conflicting duties only arise within the context of the criminalization of "ownership" of firearms[4] for someone subject to *ex parte* restraining orders. And since Officer Tuell did not allege in his Warrant Affidavit that VARGEM was in possession or attempting to gain possession, was purchasing or attempting to purchase or was receiving or attempting to receive firearms, the warrant was improperly issued and the *U.S. v. Leon*, 468 U.S. 897 (1983) exceptions do not apply.

The government's failure to rebut these arguments dooms their opposition, leaving this Court free to order the suppression of the weapon at issue due to violations of the Defendant's Fourth Amendment right to be free from unreasonable search and seizure.

Respectfully Submitted on April 13, 2011.

 /s/ Donald Kilmer
Attorney for Defendant VARGEM

---

[4] Which VARGEM contends is unconstitutional on its face.